IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS

FILED
September 28, 2021 03:04 PM
SX-2021-CV-00700
TAMARA CHARLES
CLERK OF THE COURT

(CIVIL ACTION – ORIGINAL)

# SUMMONS

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),

Plaintiff,

v.

ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), VITOL HOLDING, CO., VITOL VI and ANDREW CANNING,

Defendants.

CIVIL NO. SX-2021-CV-700

**BREACH OF CONTRACT**

JURY TRIAL DEMANDED

TO: Charlotte Pratt Horowitz, VITOL Holding Co.
ADDRESS: 2925 Richmond Ave., Ste. 11, Houston, Texas 77098

Within the time limited by law (see note below) you are hereby required to appear before this Court and answer to a complaint filed against you in this action and in case of your failure to appear or answer, judgment by default will be taken against you as demanded in the complaint for damages.

Witness my hand and the Seal of the Court this 28th day of September, 2021.

/s/ Lee J. Rohn
Lee J. Rohn, Esquire
VI Bar No. 52
Lee J. Rohn and Associates, LLC
1108 King Street, Suite 3 (mailing)
56 King Street, Third Floor (physical)
Christiansted, VI 00820
Telephone: (340) 778-8855
Facsimile: (340) 773-2954

Ms. Tamara Charles,
Clerk of the Court

By: [signature]
Court Clerk X Supervisor

Note: The defendant, if served personally, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the plaintiff's attorney within twenty (20) days after service of this summons, excluding the date of service. The defendant, if served by publication or by personal service outside the jurisdiction, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the attorney for the plaintiff within thirty (30) days after the completion of the period of publication or personal service outside of the jurisdiction.

10/27/2021 at 10:30 AM
Ewanshia J. Graham
PSC-8625
Exp 06/30/2022

AGA 5000 8/85

EXHIBIT C

(See Reverse)

GOTC 624

(CIVIL ACTION – ORIGINAL)

## RETURN OF SERVICE

I hereby certify that I received this summons on the _____ day of _________________, 2021, and that thereafter, on the ____ day of _________________, 2021, I did serve the same on the above-named defendant, ______________________________________________ by showing h _____ this original and by then delivering to h ____ a copy of the complaint and of the summons which were forwarded to me attached thereto.

_____________________________
Process Server

_____________________________
Deputy

## RETURN OF NON-SERVICE

I hereby certify that I received this summons on the ______ day of ____________________, 2021, and that after making a careful, diligent search, the Defendant cannot be found in this jurisdiction.

_____________________________
Process Server

_____________________________
Deputy

IN THE SUPERIOR COURT
OF THE VIRGIN ISLANDS
FILED
eptember 28, 2021 03:04 PM
SX-2021-CV-00700
TAMARA CHARLES
CLERK OF THE COURT

(CIVIL ACTION – ORIGINAL)

# SUMMONS

## IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
## DIVISION OF ST. CROIX

PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),

Plaintiff,

v.

ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), VITOL HOLDING, CO., VITOL VI and ANDREW CANNING,

Defendants.

CIVIL NO. SX-2021-CV-700

**BREACH OF CONTRACT**

JURY TRIAL DEMANDED

TO: Charlotte Pratt Horowitz, VITOL Holding Co.
ADDRESS: 2925 Richmond Ave., Ste. 11, Houston, Texas 77098

Within the time limited by law (see note below) you are hereby required to appear before this Court and answer to a complaint filed against you in this action and in case of your failure to appear or answer, judgment by default will be taken against you as demanded in the complaint for damages.

Witness my hand and the Seal of the Court this 28th day of September, 2021.

/s/ Lee J. Rohn
Lee J. Rohn, Esquire
VI Bar No. 52
Lee J. Rohn and Associates, LLC
1108 King Street, Suite 3 (mailing)
56 King Street, Third Floor (physical)
Christiansted, VI 00820
Telephone: (340) 778-8855
Facsimile: (340) 773-2954

Ms. Tamara Charles,
Clerk of the Court

By: [signature]
Court Clerk X Supervisor

Note: The defendant, if served personally, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the plaintiff's attorney within twenty (20) days after service of this summons, excluding the date of service. The defendant, if served by publication or by personal service outside the jurisdiction, is required to file his answer or other defense with the Clerk of this Court, and to serve a copy thereof upon the attorney for the plaintiff within thirty (30) days after the completion of the period of publication or personal service outside of the jurisdiction.

(CIVIL ACTION – ORIGINAL)

**RETURN OF SERVICE**

I hereby certify that I received this summons on the _____ day of ________________, 2021, and that thereafter, on the ____ day of ________________, 2021, I did serve the same on the above-named defendant, ____________________________________________ by showing h _____ this original and by then delivering to h ____ a copy of the complaint and of the summons which were forwarded to me attached thereto.

____________________________
Process Server

____________________________
Deputy

**RETURN OF NON-SERVICE**

I hereby certify that I received this summons on the ______ day of ____________________, 2021, and that after making a careful, diligent search, the Defendant cannot be found in this jurisdiction.

____________________________
Process Server

____________________________
Deputy


IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS
FILED
eptember 28, 2021 07:06 AM
SX-2021-CV-00700
TAMARA CHARLES
CLERK OF THE COURT

**IN THE SUPERIOR COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

PETRO INDUSTRIAL SOLUTIONS, LLC, (PETRO),

Plaintiffs,

v.

ISLAND PROJECT AND OPERATING SERVICES, LLC, (IPOS), VITOL HOLDING CO., VITOL VI and ANDREW CANNING,

Defendants.

CIVIL NO. __________

**BREACH OF CONTRACT**

JURY TRIAL DEMANDED

**COMPLAINT**

**COMES NOW** Plaintiff, **PETRO INDUSTRIAL SOLUTIONS, LLC, (PETRO)**, by and through undersigned counsel, and files its Complaint against Defendants **ISLAND PROJECT AND OPERATING SERVICES, LLC, (IPOS), VITOL HOLDING CO., VITOL VI and ANDREW CANNING**, and alleges the following:

1. This Court has jurisdiction over this matter pursuant to 4 V.I.C. § 76.
2. Plaintiff. Petro Industrial Solutions, LLC, (Petro), is a Virgin Islands limited liability corporation.
3. Defendant, Island Project and Operating Services, LLC, (IPOS), is a Virgin Islands limited liability corporation.
4. Defendant, VITOL Holding Co., (VITOL), is, upon information, incorporated in Texas, and does business in the U.S. Virgin Islands.
5. IPOS is the company operating the propane facility in the Virgin Islands for WAPA,

**LEE J. ROHN AND ASSOCIATES, LLC**
1108 King St, Ste 3
Christiansted, VI 00820
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

at St. Croix and St. Thomas.

6. Defendant, Andrew Canning, is a Canadian citizen, and is a consulting engineer for VITOL Defendants, and, upon information reports to Defendant VITOL Holding.

7. VITOL VI, is, upon information, a Virgin Islands corporation, and one of the wholly own and controlled subsidiaries of VITOL Holding.

8. VITOL VI is, upon information, the owner of both propane facilities for WAPA.

9. VITOL Holding Co. has 99 companies that do work for this parent company.

10. Petro Industrial Solutions, LLC, does maintenance and construction, and other services.

11. Petro is a company made up of all local West Indian or local Hispanic employees, as are its management team and owners.

12. Petro and IPOS discussed Petro doing business for IPOS, and Petro informed IPOS that, because Petro wanted a chance to do the business and show IPOS what it could do, it gave IPOS reduced rates on the initial contract in exchange for a minimum five-year contract.

13. In April 2018, Petro began doing business with IPOS.

14. On September 10, 2019, Petro and IPOS entered into a contract for Petro to perform preventive maintenance, remedial maintenance, scheduled projects, and provide equipment rentals, and material procurement.

15. The term of the contract was to commence on September 1, 2019, and could be terminated by either party giving sixty-days written notice to the other party after the

first five-years.

16. Otherwise, the contract could only be cancelled for cause after one-year.

17. While Plaintiff's contract was with IPOS, Andrew Canning, of VITOL, had to approve all budgets, and actions of Plaintiff.

18. Andrew Canning has a racist attitude toward Petro because its workers are of color, and predominantly West Indian, and he has the belief that as a result of their race, and national origin, they are less qualified, experienced and knowledgeable then stateside white employees, and companies that employed the same.

19. In addition, when experienced employees of Plaintiff would point out to Andrew Canning that his decisions as to operations were in error, or improper, Canning would become enraged and retaliatory against Petro, and make false allegations against Petro to attempt to get IPOS to cancel the contract.

20. Beginning in 2018, even before the contract negotiations were completed between Petro and IPOS, Canning would take innocent scriber errors as to times signed in by Plaintiff's employees, which VITOL had independent documents as to actual start times which it relied on, and falsely accuse Plaintiff and its employees of engaging in forgeries.

21. Andrew Canning clearly had it in for Plaintiff and would constantly make false criticisms, and comments.

22. In June 2020, a project for a one-inch vent line was put out for bid by VITOL, through Canning and David Nagle.

23. Petro had previously provided VITOL Defendants, through Canning, a budgetary estimate to do the work in late 2019, for the same project. At VITOL Defendants request, that estimate included from "hell to dime", and construction that would minimize facility downtime.

24. Plaintiff reminded Canning that Petro had already bid the job earlier. The VITOL Defendants, through Canning, took the position that the estimate was not an "official" bid and Plaintiff was too late to bid.

25. Plaintiff convinced Merlin Figueroa, the then general manager of IPOS, that it would be in everyone's economic interest to allow IPOS to bid the project. Finally, the bid package, previously withheld by Canning, was given to IPOS.

26. Plaintiff submitted a bid that Canning admitted was competitive, but Canning then attempted to prevent Plaintiff from receiving the bid, by falsely claiming Plaintiff had stolen valuable information from Plaintiff's supplier, Traeger Brother.

27. Plaintiff was able to prove that Traeger Brothers had given Plaintiff the pricing on a bill of materials to be used for the bid.

28. Ultimately, the VITOL Defendants, through Canning, at IPOS's encouragement, agreed Plaintiff had not done anything wrong in using the Traeger Brothers numbers.

29. Ultimately, Canning still prohibited Plaintiff from getting the bid, claiming a Florida company had already been awarded the bid, when in fact, no bid was awarded, and no money was exchanged until the end of 2020.

30. On June 22, 2021, representative of Traeger Brothers contacted Plaintiff to see if Plaintiff could provide it direct access to IPOS.

31. Traeger Brothers is a supplying company that both IPOS (through Canning), and Plaintiff use for various materials and supplies.

32. IPOS authorized Plaintiff to bring in Traeger Brothers to meet and discuss business directly with IPOS.

33. During Traeger Brothers' meeting with IPOS, it informed IPOS that as a result of the VITOL Defendants, through Canning, IPOS was missing critical information to move forward on projects that had been delayed for four month and years, because Canning was the problem.

34. Starting on January 15, 2021, the VITOL Defendants, through Canning, began to hold payments on Plaintiff's accounts receivables, and kept invoices from being paid for months.

35. On January 21, 2021, Plaintiff's crew was working on a job that Canning and engineer David Nagle were in charge of. The VITOL Defendants, through Canning purposefully delayed Plaintiff's crew from promptly doing the work, and then falsely blamed the delay on Plaintiff.

36. On that same job in January 2021, VITOL Defendants, through Canning, again falsely accused Plaintiff and its men to forging time sheets, and deliberately attempting to give false times. In fact, Plaintiff had called Canning that morning to confirm his crew would arrive two hours late.

37. On February 11, 2021, Canning fell through a platform. He then confronted one of Plaintiff's employees called Plaintiff's work "bull shit", and their welding "substandard", and he intended to sue Plaintiff and IPOS.

38. An investigation into the cause of the platform giving way was made, and found it had nothing to do with any welding, but rather the platform needed additional fastener clips.

39. When the employee and Plaintiff's safety man on the job went to explain to Andrew Canning what had occurred, Canning verbally attacked them, by calling the safety man over, and saying, "Hey you, safety guy, I fell through a platform because of a bullshit work that Petro did. How could you guys consider yourself a welding company, when all your work is substandard". At one point, Canning was yelling at the safety man so loudly that the safety man told Canning, "I don't need this shit", and walked away to avoid a confrontation.

40. Further investigation revealed that when Canning fell through the platform it had been because he was jumping on the platform up and down to "check its integrity".

41. In the beginning of the work, Plaintiff provided IPOS with its Welder's Certificates (WPS and WPQ), which were proper and correct, and industry standard.

42. On March 31, 2021, Canning questioned Plaintiff as to welding procedures, stating he believed they would be VTTI procedures.

43. Plaintiff promptly responded and again attached the WPS for all types of welding for VTTI and IPOS, and reminded him, he already had those procedures.

44. Andrew Canning also questioned the method of welding on some pipes.

45. Plaintiff explained that the cable wrapping Canning was referring to was most likely done in the fitting and tacking phase of the weld, so no purge was needed. Once the root is started, the line is purged, and the ground clamp is attached directly to the pipe.

46. Plaintiff further reminded Canning that Site Supervisor, Javier Vazquez, is on site every minute of every day, and could answer his questions about the welding questions Canning had on site.

47. Canning also falsely claimed that he could find no evidence that the root welds were being inspected.

48. Plaintiff promptly responded that at 2:00 p.m. that day, (Cannings' email was sent at 4:33 p.m. that same day), the PT technician from Versa Inspection had been on site, performed the NDT inspection on all sixteen completed welds, and marked each of those welds as, "PT OK", with his initials. He further advised Canning that a NDT report would be prepared by Versa and provided once all the welds were completed.

49. Canning also inquired, at that time, how final weld inspection would be undertaken, and what percentage of welds would be inspected.

50. Plaintiff promptly explained to him that Versa Inspections, per industry standards, will perform PAUT, (Phase Array Ultrasound), on 10% of all welds.

51. IPOS confirmed that it had received all of Plaintiff's welders' certificates on April 15, 2021, but inquired where the Data Sheets on the welding consumables were.

52. On April 19, 2021, Plaintiff provided IPOS the MTR for the welding rods, and pictures of the labels as requested.

53. On April 15, 2021, Andrew Canning, on behalf of VITOL Defendants, sent an email to IPOS acknowledging that he did not want to have any direct communications with Plaintiff.

54. VITOL Defendants, through Canning, became even further enraged and determined to get rid of Plaintiff for having participated in IPOS speaking to Traeger Brothers directly.

55. At that point Merlin Figueroa, General Manager of IPOS, set a meeting for a week later to meet with Plaintiff, as to how to move forward with projects without impediment of VITOL Defendants and Canning.

56. There are multiple other examples of Canning taking unreasonable false positions against Plaintiff, in order to try and get IPOS to withdraw the contract, and not give the bid work to Plaintiff. For example, VITOL Defendants still had an old rule that certain materials could not be manufactured in China, however, several years ago that industry standard changed, and currently the majority of those materials in the industry come from China, as the preferred source. Plaintiff obtained materials from China on a project for IPOS, which was fine with IPOS. Canning, on behalf of VITOL Defendants, required Plaintiff to replace all those materials, at great expense for no reason.

57. VITOL Defendants, through Canning, consistently interjected itself between Plaintiff

and IPOS, who it had actually contracted with, on Plaintiff's work, Martin Figueroa, General Manager for IPOS instructed Canning to allow Plaintiff to work directly with IPOS on two projects of (1) inspecting propane vessels and (2) a critical well tie into an existing propane piping.

58. Canning, on behalf of VITOL Defendants, was enraged and angry, and attempted to impair that work, and relationship.

59. As part of his racial discrimination, Canning on behalf of VITOL Defendants, demanded Plaintiff's two local employees who had mistakenly put down the wrong time on a sign in sheet be terminated by Plaintiff.

60. On July 5, 2021, IPOS and VITOL Defendants again requested, and Plaintiff provided them the Welder Certificates, or and WPS and WPQ, which are Industry Standard Certificates were given.

61. The VITOL Defendants, through Canning, falsely informed IPOS that the Welder Certificates were" forged".

62. In response, on July 29, 2021, Plaintiff provided Defendants with the letter from the certifier of the welders, that the welders were properly certified, and that if it was requested, he would come to St. Croix to personally retest them, and recertify them, if necessary, and verified that the listing certifications attached to his letter were valid and not forged.

63. Defendants, through Canning, then made the ridiculous request for the actual test results. But those tests are done in-person by the applicant as to actual welds that

are then certified as properly done, and then a certification given listing what testing was done.

64. In addition, after the fact, Defendants began requesting welding records, which were responded to, as follows:

   a. Full inspection and test plan. Plaintiff pointed out that no such reports had been required by Defendants in the job specifications, and, therefore, they did not exist.

   b. Daily records (for welding fitting, visual inspection). No such records had been specified in the job specifications, but Plaintiff provided weld logs with all NDT, which includes VT on all welds done by a third-party certifier.

   c. Welding and mechanical tests of WPQ's. Plaintiff explained that the actual welder's qualification certificate was given to Plaintiff in lieu of a PAUT report. Each welder was tested on four different positioned coupons, which were phase arrayed, inspected, and passed. Certification was then approved, accepted, and signed by Petro.

65. In response, IPOS requested the following:

   a. In place of the ITP and daily records that Plaintiff share the internal welding procedures. Plaintiff applied for GT17 and GT20.

   b. As to the PAUT report, it needed a report/certificate/document from Acuren Castro for Plaintiff to sign the WPQ.

66. The same day, July 27, 2021, Plaintiff provided the welding procedures, confirmed

they were ASME approved, and that those procedures were used at Limetree Bay, IPOS, Diageo and Cruzan Rum since 2018. In response to the second issue, Plaintiff provided the report from Mr. Castro confirming the independent testing.

67. On July 28, 2021, Plaintiff received a certified letter from IPOS wrongfully cancelling the Plaintiff's service contract with IPOS, upon information, at the insistence of the VITOL Defendants and Canning. Defendants did so without providing Plaintiff any opportunity to recertify the welders, or take any other reasonable actions.

68. Defendants have failed to approve past due invoices for work done prior to the cancellation of the contract. As of August 24, 2021, the amount is $213,379.90.

69. Even if Defendants were correct on the Welder Certificates, which they are not, there was no basis to cancel the maintenance portion of the contract.

70. Defendants then contracted with Tampa Tank to do the same work out of Florida, and they hired the same employees, including maintenance and boilermakers that Plaintiff had used.

71. In August, IPOS at the instigation of VITOL Defendants, and Andrew Canning cancelled Plaintiff's equipment rental contract, and requested Plaintiff get an enormous amount of equipment off site.

72. Defendants has now made a demand for records never required, and documents that do not exist, or they will not pay Plaintiff.

73. Plaintiff made over a million dollars doing projects for IPOS and VITOL in the past year that Plaintiff has lost the opportunity to continue to do.

74. Plaintiff has lost funds, the ability to invest those funds, loss of opportunity, suffered loss of reputation and business opportunities.

**COUNT I**

**(Breach of Contract as to IPOS)**

75. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 above and incorporate same as if more fully set out herein.

76. Defendant IPOS breached its contract with Plaintiff.

77. As a result, Plaintiff suffered damages.

**COUNT II**

**(Violation of the Discrimination Statutes of the Virgin Islands as to all Defendants)**

78. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 77 above and incorporate same as if more fully set out herein.

79. VITOL Defendants, and Andrew Canning violated the discrimination statutes of the U.S. Virgin Islands.

80. As a result, Plaintiff suffered damages.

**COUNT III**

**(Tortious Interference and with Contract as to Canning and VITOL Defendants)**

81. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 80 above and incorporate same as if more fully set out herein.

82. VITOL Defendants, and Andrew Canning, tortiously interfered with Plaintiff's contract with IPOS.

83. As a result, Plaintiff suffered damages.

**COUNT V**

**(Defamation as to Canning and VITOL Defendants)**

84. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 83 above and incorporate same as if more fully set out herein.

85. VITOL Defendants and Andrew Canning defamed Plaintiff to IPOS and others as to forging documents, causing incidents, doing shabby work, all of which are not true.

86. As a result, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff prays for damages as they may appear, and for pre and post judgment interest, and for costs and fees, and for such other relief as this court deems fair and just

LEE J. ROHN AND ASSOCIATES, LLC
Attorneys for Plaintiff

DATED: September 28, 2021

BY: */s/ Lee J. Rohn*

Lee J. Rohn, Esq.
VI Bar No. 52
1108 King Street, Suite 3 (mailing)
56 King Street, Third Floor (physical)
Christiansted, St. Croix
U.S. Virgin Islands 00820
Telephone: (340) 778-8855
lee@rohnlaw.com