*Lee J. Rohn*
(Lic. Texas and U.S.V.I.)
lee@rohnlaw.com
_____

*Mary Faith Carpenter*
(Lic. New Jersey and U.S.V.I.)
maryfaith@rohnlaw.com
_____

*Rhea R. Lawrence*
(Lic. U.S.V.I.)
rhea@rohnlaw.com

**Lee J. Rohn and Associates, LLC**

Mailing:  1108 King Street, Suite 3
Physical:  56 King Street, Third Floor
Christiansted, **St. Croix** VI  00820
340.778.8855 ·  *Fax* 340.773.2954

Mailing:  1026 Norre Gade, K.Q.
Physical: 24B/24BA/24BB Norre Gade, K.Q.
Charlotte Amalie, **St. Thomas** VI  00802
340.774.8558

TOLL FREE
866.778.0044 ·  *Fax*  866.778.0055

*Jennifer S. Koockogey-LaJoie*
(Lic. Minnesota and U.S.V.I.)
jennifer@rohnlaw.com
_____

*Blake M. Feamster*
(Lic. Oklahoma, Colorado* and U.S.V.I.)
blake@rohnlaw.com
_____

*Natalie Nelson Tang How*
Of Counsel
(Lic. U.S.V.I.)
natalie@rohnlaw.com

September 20, 2022

**VIA ELECTRONIC MAIL**
Andrew   C. Simpson, Esq.
Andrew C. Simpson, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820

      RE:    Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312

Dear Attorney Simpson:

I have reviewed the Defendant Canning's responses to discovery, and they are insufficient as follows:

**Canning's Answers to Interrogatories**

**Interrogatory No. 1**: Plaintiff is entitled to the date of birth, social security and drivers license as Plaintiff is entitled to conduct an investigation concerning Defendant Canning.

    **Interrogatory No. 1**: Please identify yourself, to include your full legal name and any other name by which you have been known, your present residence and/or current address (physical and mailing) and telephone numbers, educational background, including highest level of education, your place and date of birth, social security number, and driver's license number.

    **Response to Interrogatory No. 1**: This interrogatory consists of two separate lines of inquiry (identification and educational background) and thus counts as two interrogatories. See LRCI 33.1(b).

    Part 1 (identification)





Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 2 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 2

    Andrew David Canning
Oak House, Fairview Close, Hythe, Hampshire. SO45 5EX
+44 796 7126557, +1 340 513 3293
Place of birth: Portsmouth, England

Canning objects to providing a date of birth, social security number and driver's license number as this information is not related to the claim or defense of any party.

Part 2 (educational background)
i. Time served mechanical technician apprentice (indentured 1973)
ii. Post-graduation award UK MOD Professional & Technological Officer IV
iii. Mechanical Engineering HND (Portsmouth University)
iv. UKOOA certified Offshore Installation Manager
v. UKOOA certified OIM regulations
vi. UKOOA certified competent in Management of Major Emergencies

    Parties are obligated pursuant to Federal Rules of Civil Procedure 26(e) to "reasonably amend prior responses" to discovery, if the disclosure is incomplete or incorrect. Fed. R. Civ. P. 26(e)(2). "Under Fed. R. Civ. P. 26(e)(2), a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information." Williams v. Morton, 343 F.3d 212, 222 (3d Cir. 2003). Further, Fed. R. Civ. P. 37(c)(1) provides that if a party without substantial justification fails to amend a prior discovery response, it may not use that evidence unless the failure is harmless.

    **Interrogatory No. 2**: You failed to provide the physical address for each entity, failed to provide the name of his supervisor for the 2005 – 2006 position. You failed to provide any assignments etc. after 2016.

    **Interrogatory No. 2**: Please identify each and every place of employment where you have been employed for the last fifteen (15) years, and provide the physical address for each entity named, state the time period of your employment, job title, name of your supervisor, and the reason why you left said employment.

    **Response to Interrogatory No. 2**:
OPTIS Europe Limited, Technical Director 2000 to date

i.    Assignment 2005 – 2006 Centrica Storage, Dimlington Road, Dimlington, Hull. NE Yorkshire. Maintenance Coordinator. Supervisor Tariq Mirza. Reason for leaving; work scope completion through maintenance backlog reduction.




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 3 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
**Letter regarding Defendant Canning's insufficient discovery responses**
Page 3

  ii. Assignment 2006 – 2007 Centrica Storage, Unit One, St Augustine's Park, Hedon, Hull. Catastrophic failure investigation team engineer (mechanical). Supervisor Don Reid. Reason for leaving: completion of work scope through clear definition of failure mechanisms with implementation of facility, and national corrective measures through the issuance of safety notices under the UK Health and Safety Executive.

  iii. Assignment 2007 – 2008 Centrica Storage, Unit One, St Augustine's Park, Hedon, Hull. Rotating Machinery. Reliability and Integrity Engineer. Supervisor: Tariq Mirza. Reason for leaving: Progression of work scope into facility lifecycle extension program.

  iv. Assignment 2008 -2009 Centrica Storage, Unit One, St Augustine's Park, Hedon, Hull. Gas Storage Facility Lifecyle Extension Engineer. Supervisor: Don Reid. Reason for leaving: clear definition of lifecycle degradation mechanisms for a facility operating beyond design life and the identification of mitigating measure options.

  v. Assignment 2009 -2010 Centrica Storage, Unit One, St Augustine's Park, Hedon, Hull. Maintenance Manager. Supervisor: Mike Benson. Reason for leaving: Transition to a full time Centrica company replacement.

  vi. vi. Assignment 2010 - 2011 Centrica Energy, Centrica House, Staines, Middlesex. Condition and Integrity Assessment Engineer. Supervisor: Glenn Sibbick. Reason for leaving: completion of equipment remnant life assessments and completion of preparations for depleted gas well site facilities for future storage utilization.

  vii. Assignment 2011-2012 Leni Oil & Gas. Compania Petrolifera de Sedano S.L., No35 la Planta, Madrid 28002. Spain. Operations & Maintenance Engineer. Supervisor: Garry Stoker. Reason for leaving: Completion of equipment integrity assessments and operational risk assessments for the facilities and operation.

  viii. Assignment 2012 & 2014 Baker Hughes Inc. Middle East – UAE /Kuwait. Operation & Maintenance Engineer. Supervisor Charles Goedhals. Reason for leaving: Delivery of advance integrated digital field technology solutions to West Kuwait oil field operations.

  ix. Assignment 2014 - 2015. Tullow Ghana Limited Plot No. 71 Off George Walker Bush Highway, North Dzorwulu Accra, Ghana. Operations & Maintenance Engineer. Supervisor: Peter O'Toole.




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 4 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
**Letter regarding Defendant Canning's insufficient discovery responses**
Page 4

        Reason for leaving: Delivery of maintenance program and population of the CMMS for two FPSO's

x.    Assignment 2016 – 2016. Caracal Energy Chad Africa, communications through Upstream Advisors, Bowman House, 29 Wilson Street, London EC2M 2SJ. Maintenance and Operations Engineer. Supervisor Hiren Sanghrajka. Reason for leaving: Completion of operations support including operating procedures & maintenance program.

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.

**Interrogatory No. 3**: In the instructions Plaintiff cited to Webster dictionary for the definitions of words.

    **Interrogatory No. 3**: Please describe in detail all relationships that exist or existed between you and Co-Defendants IPOS, Vitol Virgin Islands Corp., and/or Vitol US Holding Co., and provide all applicable dates.

    **Response to Interrogatory No. 3**: Canning objects to this interrogatory as the term "relationships" is vague and the definition of "relationships" in the interrogatories is circular. Further, the definition includes "legal relationships" which is also vague. Without waiving this objection, Canning responds:

    I had no direct relationship between IPOS, Vitol Virgin Islands Corp. and/or Vitol US Holding Co. I was not a party to a contract with any of those companies. I had no ownership interest in those companies. I was not an employee of any of those companies. I do not understand what you mean by "legal" relationship or "business" relationship.

    From September 2016 until November 30, 2020, on behalf of my employer, I provided consulting services to IPOS to advise as to the installation, commissioning and operation of the plants on St. Thomas and St. Croix.

    Commencing on December 1, 2020, to the present, on behalf of my employer, I provided consulting services to Vitol Virgin Islands Corporation. See my response to Interrogatory No. 5 for a more detailed explanation of my role.




**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
**Letter regarding Defendant Canning's insufficient discovery responses**
Page 5

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.

**Interrogatory No. 10**: Please identify who VTTI is.

**Interrogatory No. 10**: Please identify by date and describe in detail all complaints, criticisms, and negative or unfavorable remarks you made about Plaintiff, including, but not limited to, remarks that Plaintiff did shabby work, caused incidents, forged time sheets, recorded false times worked, provided false welders' certificates, or did improper welds, identify the forum in which each remark was made, identify by name, employer, and job title all persons to whom these complaints, criticisms, and remarks were made, describe all facts which support each remark you made about Plaintiff, identify all persons with knowledge and provide all relevant dates.

**Interrogatory No. 10**: See my email of January 22, 2021, sent at 2:44 (UTC) to David Smith and Merlin Figueira in which I described PIS workers as "struggling for many reasons to make what I consider to be reasonable progress." In that email, I noted that there had been numerous occasions over the previous two weeks that "would appear to have been instigated intentionally to stall the progress of the installation" and then described those occurrences under the categories of "poor timekeeping"; "apparent loss of materials"; "poor workmanship"; and "Apparent lack of tools and or the ability to use them." I concluded by stating,

As far as I am concerned the performance, timekeeping, quality of work and overall abilities / objectives of the following individuals has been unacceptable on a number of levels both in the RIO shade installation on St Croix and during the previous Reverse Flow installation work on St Thomas. If this is not the case then I can only assume that they are complicit with PIS in an objective of maximising the earnings for PIS from time and materials activities.

PIS welding team individuals involved in the underperforming installation activities are:

• Elias Rivera
• Ricardo Velazquez
• Juan Guigliotty

My recommendation is that these individuals be removed / barred from attending the site in future and classified as 'Not Required Back' for any current or future VITOL project work and also any work that PIS may want




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 6 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 6

to engage them for IPOS operations activities associated with VITOL assets.

In a January 28, 2021, email to Figueira and Smith, with a blind copy to Garry Stoker, I contrasted this work with the work of three other PIS employees who I described as having done "excellent work" and described the progress they had made in contrast to the "unacceptable underperformance of the original PIS crew."

Although not a "complaint, criticism or negative or unfavorable comment" by me, on August 31, 2018, David Smith informed me in an email that Kenia Johny (last known contact information: 91 Cane Carlton, Frederiksted, VI 00840) had been terminated by PIS and that she alleged she was terminated for refusing "to pay Brian for work he didn't perform at IPOS" and that PIS had told her to charge IPOS "for 3 folks that didn't show up 'because we [IPOS] wouldn't know.'

Although not a "complaint, criticism or negative or unfavorable comment," based upon what appeared to me to be anomalies in the evidence of welder performance qualification provided by PIS, I requested from IPOS in an email to Figueira and Smith dated April 13, 2021, sent at 9:42 p.m. (UTC) welder qualification records for the PIS welders working on the WAPA vent line and the IPOS vent and drain systems.

Similarly, in an email from me to Garry Stoker copied David Smith and blind copied to David Nagle dated 20th July 2021 at 8:09 p.m. (UTC) with the subject IPOS Welders Certification, I stated:
Further to our conversation this morning, I am now as certain as I can be that the welders certification (WPQ) presented by Petro Industrial Services are not genuine:

• The WPQ documents for the welders (attached) have been edited (you can clearly see the font difference and clarity change if you zoom in this looks to be a basic PDF edit of a PDF scan):

○ Welders name
○ Stamp number
○ Laboratory test number
○ Signature date
○ Signature description (PM was the grade for one of the company owners Adrian Melendez when he worked at Lime tree – where I suspect these forms came from)
○ Misplaced name typed in the remarks section for Bernardo Cruz (PDF editor cursor error)




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 7 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 7

• Mechanical test conducted by:

○ Welding test conducted by Guillermo Castro LIII (I spoke with the manager of Acuren Inspection Services today in Louisiana who was very helpful):

▪ There is no record of Guillermo Castro within their current or recent employee roll (LinkedIn has him in Japan for over 2 years)

▪ Acuren did not have any inspectors on the island in 2021 the company having left in 2020 when the NDT contract moved to Versa

○ Mechanical test conducted by: Acuren Inspection Services:

▪ Even if they had inspectors they did not have the equipment to perform the referenced bend test or pull test

▪ Laboratory test number starts with a PAUT which suggests that it was a phase array examination not a mechanical test as referenced – I left the manager with the number to see if he could find any reference.
• The welding procedure qualification procedure for the asset is very clear (document 1309-M03-403-104 section 2.12 and subsections 2.12.2 and 2.12.3) on the processes that should be followed for welding (see document attachment).

• What started me looking into the certification was the number of defects in the welds for the replacement 3inch stainless steel vent lines from the WAPA gas turbines:

○ GT17 shows x-ray defects in 63% of the weld shots taken (across all welders) – these files are too large to attach
○ GT20 shows x-ray defects in 52% of the weld shots taken (across all welders) – these files are too large to attach

At best this falsification puts VTTI in a very embarrassing position with VITOL and WAPA at worst it compromises the lack of quality assurance compromises the integrity of the asset not only for this work but all other fabrication undertaken by this particular team and possibly other previous fabrications undertaken by PIS 'certified welders'. Even worse is the potential affect on the supply of propane to WAPA which could require a full stoppage during the replacement of the compromised systems.
I hope the foregoing summarises my concerns adequately and the findings of a brief review of the facts.




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 8 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 8

In follow up to that email, I sent an email on July 22, 2021 at 6:30 p.m. (UTC) to Andreas Constantinou, David Smith, Merlin Figueira, and Terence Keogh, stating:

Andreas, Thank you for the documentation summary which will provide a good basis to form an assessment from.

One of the big document anomalies is with the attached WPQ documents which are on close inspection are obviously PDF edits of someone else's original certification (if you zoom in you can see the print clarity and font changes in certain fields) and while it clearly states the assessment was based on acceptance of guide bend test they are now telling us that the test were done by phase array for which I suspect (conveniently) no hard copy test results are available. You did say that phase array testing could be done using specialist software – can you provide details, and we can check if this software was used? Other original certificate anomalies exist such as stating that the welds were completed on 1" pipe whereas the actual welds were to be made on 3" 304 stainless steel pipework. I am not sure whether it was intended to provide the same certificates (perhaps 'edited' further) for each welder for each pipe system they have worked on within the recent period but this includes 1" & 2" 3BIL LTCS, and 1" 1A1 carbon steel as well as the 304 stainless steel, I guess one of the questions should be what materials have the welders actually been tested for and certified to work on? One worrying aspect that was evident during the 304-system fabrication job was the lack of understanding of the need to segregate carbon steel and stainless steel fabrication jobs, wire brushes, grinders etc. which makes me wonder how qualified the welders really are. Finally, the number of defects identified by the 10% radiography on the stainless line is something I find quite worrying (up to 63% of the radiography images showed defects), despite the acceptance by the NDT company, however it is unclear who set the acceptance criteria limits (some of the defect sizes are quite large and the defect densities high on the x-ray images).

Thanks again for your insight, I am sure we will come back for further clarification, comment and your teams' views over the next couple of days if that would be acceptable?
I also raised concerns with Merlin Figueira and David Smith, with a blind copy to David Nagle, in an email sent on April 24, 2021, at 2:21 p.m. (UTC) in which I stated:

It is apparent that PIS are not following good practice in the fabrication of the stainless-steel turbine cavity vent system. They clearly do not recognise the need to segregate stainless and carbon steel materials in the handling, preparation and welding process. On Thursday I observed




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 9 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 9

what appeared to be a carbon steel fabrication being finished adjacent to the stainless-steel pipework on stands within the fabrication tent on the WAPA site, this is troubling as tools such as grinders, wire brushes (stainless for stainless materials) pipe stands etc. should not be shared between ferrous and stainless fabrication. Further, today on a quick walk through the fabrication area at WAPA I observed a length of partially fabricated stainless vent pipework adjacent to a carbon steel I beam section that had, as far as I can tell, been cut with an angle grinder from which the cutting has heavily contaminated the surface of the stainless steel pipe in several areas. Such contamination is impossible to remove mechanically (wire brushing will only spread it) and failure to do so (chemically) will initiate and sustain surface corrosion which will negate the purpose of using stainless steel. Similarly, if tools such as wire brushes, and grinding wheels are shared between carbon steel and stainless-steel fabrication, iron particle contamination will be present in the weld which lead metallic granular corrosion.

This observation may appear on first read as 'petty' however the quality, strength and integrity of the final fabrication of stainless materials requires meticulous segregation, handling, preparation and welding in a contamination controlled environment, this does not appear to be happening.

Given the concerns over direct (potentially controversial) communication with contractors including the general contractor PIS, I wonder if you could highlight the poor practice concerns summarised above and ask what they plan to do to mitigate the issues to date and going forward?

In an email sent on May 31, 2021, at 10:44 p.m. (UTC) to Tim Kologinczak, with a cc to Charlotte Pratt Horowitz, I stated:

On a side note, I walked through the mound top task and stages in detail with Adrian, Chetrum and Merlin last week so that PIS could assess what works needed to be done to stabilise the mounds (excavate to install sumps & pumps [for which I have generated a bench mark estimate of the manhours required], run low voltage pump power supplies, and install pump drainage pipework, then also the requirements to reinstate the existing supports (which is likely to be an ongoing requirement) with an expectation of PIS providing an estimate with tasks breakdown (against a general outline of requirement which they requested and I am in the process of generating) in the next week or so. I must admit that I was rather surprised that they never took a single measurement or surveyed a single pipe support to enable them to put together a meaningful estimate, instead they choose to leave to mound top along with Merlin and myself. I suspect that we are at best likely to get a general manpower time and




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 10 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
**Letter regarding Defendant Canning's insufficient discovery responses**
Page 10

> materials estimated cost from them, which based on their performance of work undertaken under similar arrangements in recent weeks would not, in my opinion, be acceptable because of the inefficiencies that encourages. Rather than continue to single source work to PIS without them providing adequate details on cost breakdown against which we can assess their value, I would like to look at engaging other competent companies with motivated workers who are now becoming available as the rundown of Lime Tree reconstruction project progresses, as I believe that it would be prudent to obtain alternative comparative quotations to assess the competitiveness of the expected PIS bid, and thereafter the possibility of awarding work to more specialised contractors.
>
> Do you Charlotte or Sebastian foresee any problems or have a view on the alternative contracting strategy proposed?

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.

**Interrogatory No. 18**: You failed to identify who at IPOS instructed him not to communicate directly with Plaintiffs.

> **Interrogatory No. 18**: Please provide the factual basis for your denial of paragraph 53 of Plaintiff's Complaint that, "On April 15, 2021, Andrew Canning, on behalf of VITOL Defendants, sent an email to IPOS acknowledging that he did not want to have any direct communications with Plaintiff."
>
> **Response to Interrogatory No. 18**: I denied the allegation because I have no recollection of sending such an email and after searching my emails could not find any such email.
> Separate and apart from any email in which I allegedly said that I did not want to have direct communications with PIS, I had been instructed by IPOS that I should not communicate directly with PIS and that I should direct any communications regarding PIS to IPOS.

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 11 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 11

## **Canning's Responses to Demand for Production of Document**

**Demand for Production No. 12**: Defendant has already admitted in answers to Interrogatories that he reported on the lack of quality of Plaintiff's work. Please produce.

> **Demand for Production No. 12**: Please produce copies of all reports prepared or obtained by you concerning any work performed by Plaintiff under the contract.
>
> **Response to Demand for Production No. 12**: Canning possesses no documents responsive to this request.

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.

**Demand for Production No. 13**: You failed to use the search words "grate, fill"

> **Demand for Production No. 13**: Please produce copies of all emails, text messages, letters, statements, reports, and other documents or communications prepared by you or received by you concerning the incident where you fell through a platform on or about February 11, 2021.
>
> **Response to Demand for Production No. 13**: The documents coded RFP013 on the attached spreadsheet were identified as responsive to this request by searching all of the documents produced (Bates Nos. CANNING-000001 - CANNING-018368) using the following Boolean search terms:
>
> (incident OR fall) AND (Canning OR Andrew) Family Date "is after Feb 10, 2021"

See above contention at Interrogatory No. 1 regarding a party is required to supplement its discovery responses if it learns that its initial response is incomplete in a material way and the opposing party does not have the new information.

**Demand for Production No. 37**: Plaintiff is entitled to discover from Canning's employees if there were other incidents of racism or improper activities.

> **Demand for Production No. 37**: Please produce a signed original of the attached Employment Records Authorization form.




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 12 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 12

**Response to Demand for Production No. 37**: Canning objects to this request as it is not related to the claim or defense of any party and therefore is not within the scope of permitted discovery.

Rule 26(b)(1) of the Federal Rules of Civil Procedure states in pertinent part that:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

Where there is any doubt as to relevance, the court should be permissive in allowing discovery. *Yang v. Reno*, 157 F.R.D. 625, 631 (M.D. Pa. 1994) (citing *Heat and Control, Inc. v. Hester Industries, Inc.*, 785 F.2d 1017, 1024 (Fed. Cir. 1986) (citing *Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556, 556 (7th Cir. 1984)); *Stabilus v. Haynsworth, Baldwin, Johnson & Greaves*, 144 F.R.D. 258, 265 (E.D. Pa. 1992).

Full and fair discovery is the very foundation of the litigation system. Under Rule 26, the scope of discovery is liberal and broad, and covers any matter not privileged which is relevant to a claim or a defense, regardless of whether the information sought would be admissible at trial, as long as the discovery appears reasonably calculated to lead to the discovery of admissible evidence. Fed. R. Civ. P. 26(b)(1); *see also Pacitti v. Macy's,* 193 F.3d 766, 777-78 (3d Cir. 1999); *In re Madden,* 151 F.3d 125, 128 (3d Cir. 1998) (pretrial discovery accorded "broad and liberal treatment").

**Demand for Production No. 41**: Rule 26 requires the production of these documents.

**Demand for Production No. 41**: Please produce copies of all documents, communications, and demonstrative evidence which support your denial of any of the allegations in Plaintiff's Complaint.

**Response to Demand for Production No. 41**: Canning objects to this contention request as premature, as a party may not be compelled to respond to such contention interrogatories at the early stages of discovery, when written discovery is ongoing and depositions have not yet been taken. See, e.g., Wood for use & benefit of Johnson v. Northwest




Case: 1:21-cv-00312-WAL-EAH   Document #: 162-2   Filed: 03/31/23   Page 13 of 13

**Petro Industrial Solutions, LLC v. IPOS, et. al., Case No. 1:21-CV-00312**
Letter regarding Defendant Canning's insufficient discovery responses
Page 13

Airlines, Inc., No. 209CV02317BBDDKV, 2010 WL 11598163, at *4 (W.D. Tenn. Mar. 16, 2010); B. Braun Medical, Inc. v. Abbot Laboratories, 155 F.R.D. 525, (E.D. Pa. 1994); Everett v. US Air Group, Inc., 165 F.R.D. 1, 3 (D.D.C. 1995). Canning further objects on the grounds that plaintiff is attempting to gain the benefit of Canning's counsel's evaluation of documents and such evaluation is privileged work product. Without waiving these objections, any document Canning has produced as part of his disclosures or in response to any discovery request, are potentially supportive of his denials of the allegations of the complaint and are equally available to plaintiff and its counsel for them to make their own assessment of the evidentiary value of each document.

Fed. R. Civ. P. 26(a)(I)(A)(ii) requires parties provide "a copy of, or a description by category and location of, all documents, data compilations, and tangible things that are in the possession, custody or control of the party and that the disclosing party may use to support its claims or defenses, unless solely for impeachment." Additionally, the Superior Court has ruled that Plaintiff is entitled to the documents listed in a Defendant's Rule 26 disclosures. See Scofield v Industrial Safety and Health Inc. et.al. Civil No. 7/02 (Terr. Ct. Dec. 3, 2003) (unpublished).

Please provide this information within the next ten (10) days. If you are unable to, or you have reason to believe this request is made in error, pursuant to LRCi 37.1 and in order to amicably resolve this discovery dispute, please contact my office within the next five (5) days and provide a date wherein you are available to meet and confer regarding these discovery issues.

Cordially,

Lee J. Rohn

LJR/rn


