**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS**
**DIVISION OF ST. CROIX**

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>Plaintiffs,<br><br>vs.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC, VITOL US HOLDING II CO., VITOL VIRGIN ISLANDS CORP, ANDREW CANNING and OPTIS EUROPE, LTD.,<br><br>Defendants. | CASE NO. 1:21-CV-00312<br><br>**BREACH OF CONTRACT**<br><br><u>JURY TRIAL DEMANDED</u> |

**<u>NOTICE OF 30(B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)</u>**

TO:    Glenda L. Lake, Clerk of the Court
         District Court of the V.I.

         Alex Kaplan, Esq.
         Y. Gloria Park, Esq.
         Susman Godfrey
         1000 Louisiana St., Suite 5100
         Houston, TX 77002
         Email Address: akaplan@susmangodfrey.com; GPark@susmangodfrey.com
         Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

         Andrew C. Simpson, Esq.
         Andrew C. Simpson, P.C.
         2191 Church Street, Suite 5
         Christiansted, VI 00820
         Email Address: asimpson@coralbrief.com
         Attorney For: Andrew Canning

         Carl A. Beckstedt, III, Esq.
         Beckstedt & Kuczynski LLP
         2162 Church Street
         Christiansted, USVI 00820
         Email Address: carl@beckstedtlaw.com; tarsha@beckstedtlaw.com;
         gpark@susmanodfrey.com; akaplan@susmangodrfey.com
         Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

**LEE J. ROHN AND ASSOCIATES, LLC**
1108 King St, Ste 3
Christiansted VI
00820
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 2 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 2

Simone Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
The Tunick Building, Suite 201
1336 Beltjen Road
St. Thomas, VI  00802
Email Address: simone.francis@ogletreedeakins.com
Attorney For: Island Project and Operating Services, LLC
Attorney For: Andrew Canning

Yvonne Setorie
Elite Reporting Services, Inc.
P.O. Box 5619
Christiansted, VI  00823
Email Address: elitereportingsvcs@gmail.com

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff **PETRO INDUSTRIAL SOLUTIONS, LLC**, by and through undersigned counsel, will take the oral examination of **Island Project and Operating Services, LLC (IPOS).** Defendant shall designate one or more officers, directors or managing agents who are competent to testify on the company's behalf.

That person(s) who is designated to testify on Defendant's behalf should have knowledge of, but not be limited to, the following:

1. The content of all responses to written discovery and documents produced by Defendant subject to this lawsuit.

2. The facts to support the Defendant's denial of Plaintiff's allegations and which substantiate each of its affirmative defenses.

3. The content of all documents, correspondence, notes, memoranda and any other writing of or concerning the incident that is the subject matter of this lawsuit.

4. Any tests or investigations to determine the cause of the incident referred to in Plaintiff's complaint and the results thereof.

5. Any communication by or between Defendant and Plaintiff subsequent to the

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 3 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 3

incident that is the subject matter of this lawsuit.

6. The content of all correspondence, letters, notes, summaries, complaints, memos, and telephone logs pertaining to the termination or allegations referred to in Plaintiff's Complaint.

7. The makeup of IPOS., including where it is incorporated, who were its incorporators or members, when it was formed, whether there were changes in its stockholders or members, and, if so, what, what work it currently performs, and where it has done business for the last five years.

8. What are the parents, affiliates, or subsidiaries of IPOS in the last ten (10) years, and what is the relationship as to functions and activities between them?

9. Whether IPOS is a member or participant of any service agreements with any other companies and, if so, who, and the nature and scope of those service agreements

10. Whether this Defendant or any of its affiliates or parent companies has ever entered into any consent judgments related to any allegations of illegal activities, bribery, or fraud in the last ten (10) years, and the allegations and circumstances.

11. The relationship between IPOS and OPTIS, and IPOS and VTTI, or any affiliates in the last five (5) years, what personnel from IPOS have been involved in those relationships, and the scope of those relationships.

12. Any involvement of Vitol Defendants in the selection negotiation, or decision, or discussion as to IPOS hiring Petro. What that involvement was and who participated?

13. Any direct or indirect ownership interest or affiliate interest of the Vitol Defendants in IPOS, including, but not limited to common shareholders, or members, ownership of stock or membership in common officers and, if so, the nature of the same.

14. The factual basis of the denial of paragraphs 15 of Plaintiff's First Amended Complaint, who negotiated the contract with Plaintiff, over what period of time, what were the discussions as to Plaintiff's changes and rates by whom, how was an agreement reached as to Plaintiff's rates and charges, what were the discussions and by whom as to the length of the agreement.

15. The factual basis of the claim that an agreement with Plaintiff was reached in April of 2018, what was the form of the agreement, who participated in the agreement, was it in writing, what were the terms and conditions.

16. The factual basis for the denial of paragraph 17 of Plaintiff's First Amended Complaint, who negotiated the written agreement, who drafted it, the specifics as to the

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 4 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 4

negotiations as to rates, terms and what services would be provided.

17. The factual basis for the denial of paragraph 18 of the First Amended Complaint.

18. The factual basis for the denial of paragraph 19 of the First Amended Complaint and persons with knowledge and the factual claims as to when, and how the contract between IPOS and Petro could be cancelled.

19. What was Andrew Canning's involvement with the Plaintiff's contract or the work to be done pursuant to the contract, to include, but not limited to, participation of bid decisions, invoice approval, work approval, monitoring of Plaintiff's workers or times worked, and the like?

20. What was the Vitol Defendants involvement in the work Plaintiff had contracted to do or did, to include, but not be limited to, participation in what work needed to be done, bid decisions, invoice approvals, work approval, monitoring Plaintiff's work, welding certifications, or any other aspect of Plaintiff's work?

21. What complaints or observations did Plaintiff, or its employees make to IPOS as to Andrew Canning and his abilities or lack of knowledge, when and to whom, and what were Andrew Canning's responses or actions when the learned of such statements by Plaintiff.

22. What complaints did Andrew Canning make to IPOS as to Plaintiff's employees time records, working ability, knowledge, when and to whom?

23. The procedure as to how work times were kept as to Plaintiff's workers, the involvement of security guards in such time keeping, whether there were punch machines or some electronic means of documenting times in and out of Plaintiff's workers, and what means were available for determining the times in and out of Plaintiff's workers.

24. IPOS's knowledge as to whether in 2020 a project for a one-inch vent line was put out for bid, and what was Vitol Defendant's involvement in that bid process, and who was involved in the drafting of the bid, as well as the bid process, and decision as to who would be involved in doing the work, and the basis of those decisions.

25. Was a similar project as the 2020 one-inch vent line project contemplated in 2019 and, if so, by whom? What involvement did Andrew Canning or OPTIS have in that project? What information was requested from Plaintiff, and what information did Plaintiff provide as to that project, and why did that project not go forward, and whether that information provided by Plaintiff in 2019 was considered in regard to the 2020 inch project and was there any initial refusal to consider it, and why?

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 5 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 5

26. As a result of the 2019 bid information for the 2020 one-inch project vent line, were there any discussions as to Traeger Brother's involvement in that bid, or the provision of 2019 bid numbers, and what were the nature of those discussions, and by whom.

27. What other companies bid on the 2020 one-inch vent line project, who was the bid ultimately awarded to, when was the bid awarded, and why was Plaintiff not awarded the bid?

28. Defendants' knowledge of the Traeger Brothers Company, and what work it did for each of the Defendants from 2018 through 2021, and what products it supplied to Defendants.

29. Any complaints or observations by anyone at Traeger Brothers concerning Andrew Canning or OPTIS, including when, to whom, and the substance and name of the person making those complaints.

30. Whether, in January 2021, there began to be holdbacks of payments to Plaintiff on accounts receivable and, if so, which payments, why, when each held back payment was finally paid, who was involved in the decision to do so, and what was Andrew Canning's or OPTIS's involvement in the same.

31. What work Defendants' claim Plaintiff was engaged in January 2021, and whether Plaintiff made any complaints as to Andrew Canning of OPTIS or Vitol preventing them from timely performing the work, whether Andrew Canning or OPTIS made any complaints as to the work performed by Plaintiff, whether anyone else complained about the work performed by Plaintiff, and, if so, who, and the nature of the complaints?

32. Whether, in January 2021, any members of Plaintiff's crew were barred from the job site, if so, who, the basis for the removal, who participated in the decision for the removal and the dates, and the races of the persons removed and how the time for those employees were reported by various time reports.

33. The circumstances of Andrew Canning's alleged incident with a grate on or about February 11, 2021, when the grate was installed, whether there was any documentation indicating that the work in the grate had not been completed, why it had not been completed, had the area been restricted from access, what Andrew Canning claimed had occurred, what had actually occurred, statements made by Andrew Canning as to Plaintiff or the work done by Plaintiff, about suing Plaintiff, what activity was Andrew Canning doing at the time he claimed to fall through the grate.

34. When Plaintiff was first requested to provide IPOS with welder certificates for its employees, what type of certificates did it provide, to whom, and were there any objections to those certificates at that time, and how many times thereafter were they requested and the results, and if there were ever any problems voiced as to the

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 6 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 6

certificates, and if so, when, and the nature of the problems, and by whom.

35. What does Defendant contend are the correct ways to certify employees as welders, and what is the basis for that claim?

36. What is VTTI, who are its owners or members, what is its affiliation, if any, with IPOS, what work has it done at WAPA from 2017 to the present, what work, if any, has it done with OPTIS or Andrew Canning in the past six (6) years, and what relationship, if any, has it had with Andrew Canning or OPTIS?

37. Did IPOS ever use VTTI standards or procedures during Plaintiff's contract with IPOS to the present and, if so, what were those procedures or policies as to welding testing welds, and certifying welders? Were IPOS procedures or policies the same as VTTI and, if not, how were they different?

38. What complaints Andrew Canning started making of Plaintiff's welds in March 2021, had there been any complaints prior to that, if so, when and what were the complaints, and what actions were taken as a result of all such complaints.

39. What was Versa Inspections responsibilities as far as testing welds done by the Plaintiff, what was the procedure as to the percentage of welds tested and the percentage of passing, and what constituted a passing weld?

40. What does the Defendant contend is the industry standard as to how final weld inspections should be conducted and what percentage of welds are to be inspected, and what percentage must pass, and what is the basis of that contention?

41. When and how did you determine that there were problems with the welds Plaintiff has been responsible for, what welds were those, what promoted the additional testing of Plaintiff's welds, or retesting of Plaintiff's welds, who participated in the decision to retest or do additional testing, and what were the results of the retesting or additional testing?

42. Whether anyone had come to the conclusion or voiced the belief that Plaintiff's welder certificates were forged or illegitimate, if so, who, how, and to whom that belief was communicated, and what was the response as a result of those allegations.

43. What comments were made as to Guillermo Castor's letter recertifying the occurrences of the weld tests, who made them, what were the results of those statements, and what was done to investigate those allegations?

44. Whether anyone then asked for the "actual test results" of the welding tests, if so, who, why, and when?

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 7 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 7

45. Did anyone agree to have Guillermo Castro come to St. Croix and personally retest Plaintiff's welders and, if so, who, when and how and, if not, why not?

46. Who was involved in the decision to request additional welding records, what was the basis for the request, on what prior occasions had such a request been made of Plaintiff before, and based on what circumstances?

47. What was the purpose of requesting a full inspection and test plan, daily records for welding filling, and field inspections' welding and mechanical tests of WPQs from the Plaintiff, and who participated in the decision to make those requests and when, and why?

48. What discussions were had concerning Andrew Canning ceasing to have conversations with Plaintiff or its employee, by whom, and the reason for those conversations?

49. What rules or procedures existed regarding not purchasing or using materials manufactured in China, the reason for that rule, when it was adopted, who participated in the adoption of that rule, how it was conveyed to Plaintiff, what types of materials did it apply to, whether industry standards, as to such rules, changed after the adoption of that rule, if so, when, did Defendant also make those changes at that time, if not, whether any materials obtained by Plaintiff for IPOS were rejected, because Chinese made, by whom they were rejected, why, and whether Plaintiff was required to replace the same and at whose cost?

50. Whether IPOS and Plaintiff worked directly on (1) inspecting propane vessels and; (2) a well tie into an existing propane pipe without the involvement of Andrew Canning, the reason for that, who made the decision for that to occur, and if not, what involvement do you claim Andrew Canning had in those projects.

51. The reasons for the termination of Plaintiff's contract with IPOS, the persons involved in that decision, any consultations or discussions with Andrew Canning or Vitol persons regarding the same, the reason Plaintiff was not allowed to recertify its welders or remedy any problem welds, and why the maintenance portions of the contract were also terminated.

52. Who was hired or contacted to do the same or similar work as Plaintiff after its termination, the methodology used to hire those persons or companies, the qualifications of the company or companies that took over the work, whether bids were submitted to obtain the right to do the work, if so, who bid and what were the bids, the financial arrangements as to the companies taking over the work, what work has been done since the termination that would have come under Plaintiff's contracts, and the amount paid for each such work since Plaintiff's termination?

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 8 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 8

53. Whether prior employees of Plaintiff were hired by subsequent companies to do the work Plaintiff had done prior to termination, what work they did, and why.

54. Who made the decision to cancel Plaintiff's equipment rental contract, why and what company(ies) replaced Plaintiff's company in that regard, and how much they have been paid since then, and the amount of time Plaintiff was allotted to get his equipment off the site, why that amount of time was selected, and who participated in that decision?

55. All discussions as to the refusal to pay Plaintiff for outstanding invoices, who participated in those discussions, the reason for not paying those invoices, the basis for requesting documents or information to pay those invoices. What documents or information was requested, and why?

56. What discrimination training has been provided to your employees in the last ten (10) years, by whom, and what are your policies and procedures to prevent discrimination?

57. What information did IPOS request from Plaintiff upon completion of the three-inch line improvement, who participated in the decision to request that information, why that information was requested, how that documentation would verify workmanship, and what was provided by Plaintiff, and if any information was insufficient or incorrect, in what manner was that, and who participated in the decisions as to the inadequacy?

58. What additional information was requested by IPOS after the initial information request, who participated in the decision to request additional information, why was the information requested, and if anything was received from Petro, was it provided, if there were inadequacies, what were they, and who participated in the decisions as to adequacy and why?

59. What additional information was requested on July 27, 2021, why, and who participated in the decision to request that information?

60. What were the discussions as to the inadequacies of the letter from Guillermo Castro, and who participated in them?

61. What documentation to put the three-inch vent line project into service was not provided by Plaintiff, and who determined that, who participated in that determination, and why, and how that information prevented the acceptance of the vent line into service?

62. The basis for selecting Versa Integrity Group to inspect Plaintiff's welding, whether the work was put out for bid, and what efforts were made to determine the reasonableness of the costs, and who participated in these decisions, and actions, and

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 9 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 9

why.

63. After the termination of Plaintiff's contract, what additional documentation was requested of Plaintiff, by whom, who participated in the decision to request that documentation, and the basis for the determination Plaintiff had refused to provide documentation, and who determined that.

64. Whether Plaintiff offered to repair the welds and at what cost, if any, and who was involved in the decision not to allow Plaintiff to do so and why.

65. Whether the work to "repair" the welds and work done by IPOS was put out for bid, if not, why not, and who participated in that decision; whether WAPA was informed that Plaintiff's offered to repair the welds, and what information Vitol Defendants and WAPA were given in this regard; what efforts were made to obtain cheaper repairs; why the work was expedited; and who participated in the decision to expedite work.

66. What amount was paid to Plaintiff for the work on the 3-inch vent line, and when?

67. What is the nature and scope of the contract between you and WAPA or Vitol, the terms of the agreement, how it is determined what work you will do for WAPA or Vitol, is there an approval process, if so, what is it, who at WAPA did you interface with for the last five (5) years, what types of information as to your work is disclosed to WAPA or Vitol, in what manner, and by whom?

68. The factual basis for the denial of paragraph 29 of Plaintiff's First Amended Complaint and the person with knowledge of those facts.

69. What statements did Adrian Melendez inform IPOS that Andrew Canning had made to Plaintiff as a result of his supposed fall with the grating?

70. What was the result of the investigation as to the cause of the grating fall?

71. The factual basis for the denial of paragraph 53 of Plaintiff's First Amended Complaint, what facts dispute that the PAUT that Versa was to do was not in keeping with industry standards.

72. The factual basis for the denials of paragraphs 53, 54, 55, and 56 of Plaintiff's First Amended Complaint.

73. The factual basis for the denials in paragraph 58 of Plaintiff's First Amended Complaint.

74. The factual knowledge as to allegations made by of paragraphs 60 and 61 of Plaintiff's First Amended Complaint.

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 10 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 10

75. The factual denial of paragraphs 65 and 66 of Plaintiff's First Amended Complaint.

76. What was the factual basis for requesting the records set out in paragraph 67 of Plaintiff's First Amended Complaint? Who participated in the decision to request such records, what information was being sought as a result of those records, whether a full inspection and test plan had ever been requested from any company performing welding prior to July of 2021, if so, from who and when, and, if not, why not, and why was it being requested of Plaintiff.

77. Had such records ever been previously listed in any job specifications given to the plaintiff? Had any company ever requested daily records for welding, fitting, and visual inspections prior to July 2021? If so, who and why? If not, why were they requested of Plaintiff? Were those records included in the job specifications? Were the weld logs with all NSDT done by a third party sufficient, and, if not, why not? Had welding and mechanical tests of WPQs ever been requested of any company in the previous ten (10) years; if not, why not, and, if so, who and when? Was the information provided by the plaintiff in response sufficient, and, if not, why, and how not?

78. What was the reason for requesting from Plaintiff that its internal welding procedures apply to GT 17 and GT 20, and had that ever been requested by any company or welders for the ten (10) years prior? If so, who, when, and why? Why was this being requested of Plaintiff, and who participated in the decision to request the same from Plaintiff?

79. What was the purpose of the request for a report or certification from Accuren or Castro that allowed Plaintiff to sign the certificate, who participated in the decision to make such a request, what was the purpose of the request?

80. The basis of the denial to the allegation is that on July 27, 2021, Plaintiff provided its welding procedures and confirmed that they were ASME approved, and what was deficient about Plaintiff's welding procedures by name, job position, and when.

81. The factual basis of the denial that Plaintiff provided IPOS with a report from Castro as requested and what was deficient about that report.

82. The factual basis for the denial of paragraphs 70 of Plaintiff's First Amended Complaint, what was the basis for IPOS refusing to allow Plaintiff to recertify its welders, and who participated in that decision.

83. The factual basis of the denial of paragraph 71 of Plaintiff's First Amended Complaint and the factual basis as to what invoices were outstanding at the time of the termination of the contract, whether any have any been paid in whole or in part, if so, when and why, and as to those not fully paid, why they were not paid and who participated in the decision not to pay them.

Case: 1:21-cv-00312-WAL-EAH   Document #: 183   Filed: 04/18/23   Page 11 of 14

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 11

84. The factual basis to deny paragraph 72 of Plaintiff's First Amended Complaint, including the factual basis to also cancel the maintenance contract and who participated in that decision.

85. The factual basis to deny paragraph 73 of Plaintiff's First Amended Complaint, including why Plaintiff's equipment contract was cancelled, how many days were given to get his equipment off Defendants' premises, and why, who participated in those decisions.

86. What documents were requested as referenced in Defendant's response to paragraph 75 of Plaintiff's First Amended Complaint, why each document was requested, had similar documents ever been made to other companies in the past ten (10) years and, if so, why, and if not, why were they requested of Plaintiff, and who participated in the decision to request those documents?

87. What has IPOS paid to whom for equipment rentals since the cancellation of Plaintiff's equipment rental contract?

88. What has Defendant paid for maintenance and to whom since the cancellation of Plaintiff's maintenance contract?

89. What work that would have been done pursuant to Plaintiff's contract with Defendant, what has been done since the termination of Plaintiff's contract, as to type of work, who did the work, and who was paid for the work and h amount paid?

This deposition will take place on **June 21, 2023, at 9:00 AM,** at **via Zoom** before any Notary Public commissioned by the Territory of the US Virgin Islands or other person qualified to administer the oath and take deposition. **This deposition will be conducted via Zoom meeting and pursuant to rules cited above and the standing orders of the Court during the pendency of the COVID-19 pandemic.  The Parties stipulate that the witness will be remotely sworn to testify under oath and that the deposition testimony will be treated as if the deponent was personally sworn.  No later than twenty-four (24) hours prior to the date of the deposition, the Court Reporter will provide the zoom address and IP link.**

Join Zoom Meeting
https://us02web.zoom.us/j/84865108891?pwd=dVg0aEw1czAwNER0L2VHQXBBSWhSQT09
Meeting ID: 848 6510 8891
Passcode: 776244

    This deposition is being taken for use as evidence and/or trial purposes and may be continued from day to day until completed.

                                        RESPECTFULLY SUBMITTED
                                        LEE J. ROHN AND ASSOCIATES, LLC
                                        Attorneys for Plaintiff

DATED: April 18, 2023                BY:   /s/ *Lee J. Rohn*
                                                Lee J. Rohn, Esquire
                                                VI Bar No. 52
                                                1108 King Street, Suite 3 (mailing)
                                                56 King Street, Third Floor (physical)
                                                Christiansted, St. Croix
                                                U.S. Virgin Islands 00820
                                                Telephone: (340) 778-8855
                                                lee@rohnlaw.com

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on April 18, 2023, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:

Alex Kaplan, Esq.
Y. Gloria Park, Esq.
Sarah Hannigan, Esq.
Susman Godfrey
1000 Louisiana St., Suite 5100
Houston, TX 77002
Email Address: akaplan@susmangodfrey.com; GPark@susmangodfrey.com; shannigan@susmangodfrey.com
Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

Andrew C. Simpson, Esq.
Andrew C. Simpson, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Email Address: asimpson@coralbrief.com
Attorney For: Andrew Canning

Carl A. Beckstedt, III, Esq.
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, USVI 00820
Email Address: carl@beckstedtlaw.com; tarsha@beckstedtlaw.com; gpark@susmanodfrey.com; akaplan@susmangodrfey.com
Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

Simone Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
The Tunick Building, Suite 201
1336 Beltjen Road
St. Thomas, VI 00802
Email Address: simone.francis@ogletreedeakins.com
Attorney For: Island Project and Operating Services, LLC

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS)
Page 14

   I also caused a true and correct copy of the foregoing to be served via electronic mail upon the following:

Yvonne Setorie
Elite Reporting Services, Inc.
P.O. Box 5619
Christiansted, VI  00823
Email Address: elitereportingsvcs@gmail.com


          BY: /s/ *Lee J. Rohn* (kj)