**IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX**

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>Plaintiff,<br><br>vs.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC, VITOL US HOLDING II CO., VITOL VIRGIN ISLANDS CORP, ANDREW CANNING and OPTIS EUROPE, LTD.,<br><br>Defendants. | CASE NO. 1:21-CV-00312<br><br>**BREACH OF CONTRACT**<br><br><u>JURY TRIAL DEMANDED</u> |

**<u>NOTICE OF 30(B)(6) DEPOSITION OF OPTIS EUROPE, LTD.</u>**

TO:  Glenda L. Lake, Clerk of the Court
District Court of the V.I.

Alex Kaplan, Esq.
Y. Gloria Park, Esq.
Susman Godfrey
1000 Louisiana St., Suite 5100
Houston, TX 77002
Email Address: akaplan@susmangodfrey.com; GPark@susmangodfrey.com
Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

Andrew C. Simpson, Esq.
Andrew C. Simpson, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Email Address: asimpson@coralbrief.com
Attorney For: Andrew Canning

Carl A. Beckstedt, III, Esq.
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, USVI 00820
Email Address: carl@beckstedtlaw.com; tarsha@beckstedtlaw.com; gpark@susmanodfrey.com; akaplan@susmangodrfey.com
Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

**LEE J. ROHN AND ASSOCIATES, LLC**
1108 King St, Ste 3
Christiansted VI 00820
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 2

Simone Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
The Tunick Building, Suite 201
1336 Beltjen Road
St. Thomas, VI 00802
Email Address: simone.francis@ogletreedeakins.com
Attorney For: Island Project and Operating Services, LLC
Attorney For: Andrew Canning

Susan C. Nissman-Coursey
Caribbean Scribes, Inc.,
1244 Queen Cross Street, Suite 1A,
Christiansted, VI 00820
Email Address: scoursey27@gmail.com; susan@caribbeanscribes.com

**PLEASE TAKE NOTICE** that pursuant to Federal Rule of Civil Procedure 30(b)(6), Plaintiff **PETRO INDUSTRIAL SOLUTIONS, LLC**, by and through undersigned counsel, will take the oral examination of **OPTIS EUROPE, LTD.** Defendant shall designate one or more officers, directors or managing agents who are competent to testify on the company's behalf.

That person(s) who is designated to testify on Defendant's behalf should have knowledge of, but not be limited to, the following:

1. The content of all responses to written discovery and documents produced by Defendant subject to this lawsuit.

2. The facts to support the Defendant's denial of Plaintiff's allegations and which substantiate each of its affirmative defenses.

3. The content of all documents, correspondence, notes, memoranda, and any other writing of or concerning the incident that is the subject matter of this lawsuit.

4. Any tests or investigations to determine the cause of the incident referred to in Plaintiff's complaint and the results thereof.

5. Any communication by or between Defendant and Plaintiff subsequent to the

incident that is the subject matter of this lawsuit.

6.  The content of all correspondence, letters, notes, summaries, complaints, memos, and telephone logs pertaining to the termination or allegations referred to in Plaintiff's Complaint.

7.  The makeup of OPTIS Europe, Ltd., including where it is incorporated, who were its incorporator or members, when it was formed, for what purpose it was formed, whether there have been changes in its stockholders or members, and, if so, what changes, whether it still exists, what work it currently performs, and where it has worked for the last five years.

8.  What are the parents, affiliates, or subsidiaries of OPTIS Europe, Ltd in the last ten (10) years, and what is the relationship as to functions and activities between them?

9.  Whether OPTIS Europe, Ltd is a member or participant of any service agreements with any other companies and, if so, who, and the nature and scope of those service agreements.

10.  Whether this Defendant or any of its affiliates or parent companies has ever entered into any consent judgments related to any allegations of illegal activities, bribery, or fraud in the last ten (10) years, and the allegations and circumstances.

11. The factual bases for the denial of allegation 6 in Plaintiff's Amended Complaint, describe who and what VTTI is or was, what consulting work Andrew Canning did for VTTI from 2016+ to November 2020, how that consulting work ended, and how the consulting work changes the type of consulting services provided.

12. The factual basis for the denial of allegation 10 of Plaintiff's First Amended Complaint and where OPTIS Europe, Ltd.'s is established and where its principle place of business is.

13. The scope of OPTIS Europe, Ltd consulting agreement with Vitol Virgin Islands Corp. and where that consulting agreement is supposed to be executed whether that consulting agreement is still in effect and, if not, when it was terminated and why, and where else OPTIS Europe, Ltd. did business in the last ten (10) years besides with Vitol Virgin Islands Corp.

14. The factual basis for the denial of paragraph 20 of Plaintiff's First Amended Complaint and what control OPTIS Europe, Ltd. or Andrew Canning had over actions taken by Petro and amounts expended by Petro.

15. OPTIS policies and procedures, training as to prevent racial and national origin

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 4

discrimination and how it was supervised and enforced.

16. The manner, in which, Andrew Canning was supervised at OPTIS Europe, Ltd., who he reported to, what information he reported to OPTIS Europe, Ltd.

17. What amount OPTIS Europe, Ltd. was paid under the contract with Vitol Virgin Islands Corp. and in what manner, and basis for payment and of those funds, what amount was paid to Andrew Canning, and the basis for such payments?

18. The factual basis for the denial of paragraphs 23 of Plaintiff's First Amended Complaint, the basis Andrew Canning had a duty or right to monitor Petro's employees time sheets, had the ability to remove Petro's employees' abilities to enter IPOS work cite.

19. Who was David Nagle and what was his relationship with Andrew Canning and OPTIS Europe, Ltd., and what work did he do in connection with VI Vitol.

20. The factual basis for the denial of paragraph 26 of Plaintiff's First Amended Complaint.

21. The factual basis of allegations that Andrew Canning's fall through the grate was caused by Plaintiff's poor workmanship and what statements Andrew Canning made when he fell thought he grates as to Plaintiff and its workers, to whom and why.

22. What was OPTIS Europe, Ltd. understanding of VTTI's welding certificate procedures, and welding test procedures, and the basis of that understanding?

23. What work had OPTIS Europe, Ltd done with or for VTTI and when in the past ten (10) years?

24. The factual basis for the denial of paragraph 46 of Plaintiff's First Amended Complaint, what OPTIS Europe, Ltd. contends Plaintiff provided and what OPTIS contends was improper about what was provided, and why.

25. What questions in and around March or April of 2021, did OPTIS Europe, Ltd. have as to Plaintiff's welding methods and the basis of those questions and to whom OPTIS Europe, Ltd. discussed those questions with and when?

26. The factual basis for the denial of paragraph 48 of Plaintiff's First Amended Complaint.

27. The reasons for the termination of Plaintiff's contract with IPOS, the persons involved in that decision, any consultations or discussions with Andrew Canning or Vitol

Case: 1:21-cv-00312-WAL-EAH   Document #: 184   Filed: 04/21/23   Page 5 of 13

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 5

Virgin Islands Corp. persons regarding the same, the reason Plaintiff was not allowed to recertify its welders or remedy any problem welds, and why the maintenance portions of the contract were also terminated.

28. Who was hired or contracted to do the same or similar work as Plaintiff after its termination, the methodology used to hire those persons or companies, the qualifications of the company or companies that took over the work, whether bids were submitted to obtain the right to do the work, if so, who bid and what were the bids, the financial arrangements as to the companies taking over the work, what work has been done since the termination that would have come under Plaintiff's contracts, and the amount paid for each such work since Plaintiff's termination?

29. Who does OPTIS Europe, Ltd. contend was Plaintiff's Site Supervisor and how often does Plaintiff contend he was onsite and what OPTIS observed were his duties, and what OPTIS Europe, Ltd. observed as to Plaintiff making weld inspections in 2021?

30. Whether prior employees of Plaintiff were hired by subsequent companies to do the work Plaintiff had done prior to termination, what work they did, and why.

31. All discussions as to the refusal to pay Plaintiff for outstanding invoices, who participated in those discussions, the reason for not paying those invoices, the basis for requesting documents or information to pay those invoices. What documents or information was requested, and why?

32. What additional information was requested by IPOS after the initial information request, who participated in the decision to request additional information, why was the information requested, and if anything was received from Petro, was it provided, if there were inadequacies, what were they, and who participated in the decisions as to adequacy and why?

33. What additional information was requested on July 27, 2021, why, and who participated in the decision to request that information?

34. Whether Plaintiff offered to repair the welds and at what cost, if any, and who was involved in the decision not to allow Plaintiff to do so and why.

35. The relationship between OPTIS and VI VIC, or any affiliates in the last five (5) years, what personnel from OPTIS have been involved in those relationships, and the scope of those relationships.

36. Any involvement of OPTIS Europe, Ltd. in the selection negotiation, or decision, or discussion as to IPOS hiring Petro. What that involvement was and who participated?

Case: 1:21-cv-00312-WAL-EAH   Document #: 184   Filed: 04/21/23   Page 6 of 13

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 6

37. The factual basis for the denial of paragraph 20 of Plaintiff's First Amended Complaint and what involvement, if any, Andrew Canning of OPTIS had in determining budgets, expenditures, and actions of Plaintiff, and of the projects Plaintiff bid on or worked on.

38. The procedure as to how work times were kept as to Plaintiff's workers, the involvement of security guards in such time keeping, whether there were punch machines or some electronic means of documenting times in and out of Plaintiff's workers, and what means were available for determining the times in and out of Plaintiff's workers.

39. OPTIS Europe, Ltd.'s knowledge as to whether in 2020 a project for a one-inch vent line was put out for bid, and what was OPTIS Europe, Ltd.'s involvement in that bid process, and who was involved in the drafting of the bid, as well as the bid process, and decision as to who would be involved in doing the work, and the basis of those decisions.

40. Was a similar project as the 2020 one-inch vent line project contemplated in 2019 and, if so, by whom? What involvement did Andrew Canning or OPTIS have in that project? What information was requested from Plaintiff, and what information did Plaintiff provide as to that project, and why did that project not go forward, and whether that information provided by Plaintiff in 2019 was considered in regard to the 2020 inch project and was there any initial refusal to consider it, and why?

41. As a result of the 2019 bid information for the 2020 one-inch project vent line, were there any discussions as to Traeger Brother's involvement in that bid, or the provision of 2019 bid numbers, and what were the nature of those discussions, and by whom.

42. What other companies bid on the 2020 one-inch vent line project, who was the bid ultimately awarded to, when was the bid awarded, and why was Plaintiff not awarded the bid?

43. Defendants' knowledge of the Traeger Brothers Company, and what work it did for each of the Defendants from 2018 through 2021, and what products it supplied to Defendants.

44. Any complaints or observations by anyone at Traeger Brothers concerning Andrew Canning or OPTIS, including when, to whom, and the substance and name of the person making those complaints.

45. Whether, in January 2021, there began to be holdbacks of payments to Plaintiff on accounts receivable and, if so, which payments, why, when each held back payment was finally paid, who was involved in the decision to do so, and what was Andrew

Case: 1:21-cv-00312-WAL-EAH   Document #: 184   Filed: 04/21/23   Page 7 of 13

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 7

Canning's or OPTIS's involvement in the same.

46. What work Defendants' claim Plaintiff was engaged in January 2021, and whether Plaintiff made any complaints as to Andrew Canning of OPTIS or Vitol preventing them from timely performing the work, whether Andrew Canning or OPTIS made any complaints as to the work performed by Plaintiff, whether anyone else complained about the work performed by Plaintiff, and, if so, who, and the nature of the complaints?

47. Whether, in January 2021, any members of Plaintiff's crew were barred from the job site, if so, who, the basis for the removal, who participated in the decision for the removal and the dates, and the races of the persons removed and how the time for those employees were reported by various time reports.

48. The circumstances of Andrew Canning's alleged incident with a grate on or about February 11, 2021, when the grate was installed, whether there was any documentation indicating that the work in the grate had not been completed, why it had not been completed, had the area been restricted from access, what Andrew Canning claimed had occurred, what had actually occurred, statements made by Andrew Canning as to Plaintiff or the work done by Plaintiff, about suing Plaintiff, what activity was Andrew Canning doing at the time he claimed to fall through the grate.

49. When Plaintiff was first requested to provide IPOS with welder certificates for its employees, what type of certificates did it provide, to whom, and were there any objections to those certificates at that time, and how many times thereafter, when were they requested and the results, and if there were ever any problems voiced as to the certificates, and if so, when, and the nature of the problems, and by whom.

50. What does Defendant contend are the correct ways to certify employees as welders, and what is the basis for that claim?

51. What is VTTI, who are its owners or members, what is its affiliation, if any, with IPOS, what work has it done at WAPA from 2017 to the present, what work, if any, has it done with OPTIS or Andrew Canning in the past six (6) years, and what relationship, if any, has it had with Andrew Canning or OPTIS?

52. Did IPOS ever use VTTI standards or procedures during Plaintiff's contract with IPOS to the present and, if so, what were those procedures or policies as to welding testing welds and certifying welders? Were IPOS procedures or policies the same as VTTI and, if not, how were they different?

53. What complaints Andrew Canning started making of Plaintiff's welds in March 2021, had there been any complaints prior to that, if so, when and what were the complaints, and what actions were taken as a result of all such complaints.

54. What was Versa Inspections responsibilities as far as testing welds done by the Plaintiff, what was the procedure as to the percentage of welds testing and the percentage of passing, and what constituted a passing weld?

55. What does the Defendant contend is the industry standard as to how final weld inspections should be conducted and what percentage of welds are to be inspected, and what percentage must pass, and what is the basis of that contention?

56. When and how did you determine that there were problems with the welds Plaintiff had been responsible for, what welds were those, what prompted the additional testing of Plaintiff's welds, or retesting of Plaintiff's welds, who participated in the decision to retest or do additional testing, and what were the results of the retesting or additional testing?

57. Whether anyone had come to the conclusion or voiced the belief that Plaintiff's welder certificates were forged or illegitimate, if so, who, how, and to whom that belief was communicated, and what was the response as a result of those allegations.

58. What comments were made as to Guillermo Castor's letter recertifying the occurrences of the weld tests, who made them, what were the results of those statements, and what was done to investigate those allegations?

59. Whether anyone then asked for the "actual test results" of the welding tests, if so, who, why, and when?

60. Did anyone agree to have Guillermo Castro come to St. Croix and personally retest Plaintiff's welders and, if so, who, when and how and, if not, why not?

61. Who was involved in the decision to request additional welding records from Plaintiff, what was the basis for the request, on what prior occasions had such a request been made of Plaintiff before, and based on what circumstances?

62. What was the purpose of requesting a full inspection and test plan, daily records for welding filing, and field inspections' welding and mechanical tests of WPQs from the Plaintiff, and who participated in the decision to make those requests and when, and why?

63. What discussions were had in 2021 concerning Andrew Canning ceasing to have conversations with Plaintiff or its employee, by whom, and the reason for those conversations?

64. What rules or procedures existed regarding not purchasing or using materials

Case: 1:21-cv-00312-WAL-EAH   Document #: 184   Filed: 04/21/23   Page 9 of 13

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 9

manufactured in China, the reason for that rule, when it was adopted, who participated in the adoption of that rule, how it was conveyed to Plaintiff, what types of materials did it apply to, whether industry standards, as to such rules, changed after the adoption of that rule, if so, when, did Defendant also make those changes at that time, if not, whether any materials obtained by Plaintiff for IPOS were rejected, because Chinese by whom they were rejected, why, and whether Plaintiff was required to replace the same and at whose cost?

65. Whether IPOS and Plaintiff worked directly on (1) inspecting propane vessels and; (2) a well tie into an existing propane pipe without the involvement of Andrew Canning, the reason for that, who made the decision for that to occur, and if not, what involvement do you claim Andrew Canning had in those projects.

66. Who made the decision to cancel Plaintiff's equipment rental contract, why and what company(ies) replaced Plaintiff's company in that regard, and how much they have been paid since then, and the amount of time Plaintiff was allotted to get his equipment off the site, why that amount of time was selected, and who participated in that decision?

67. What discrimination training has been provided to your employees in the last ten (10) years, by whom, and what are your policies and procedures to prevent discrimination?

68. What information did IPOS request from Plaintiff upon completion of the three-inch line improvement, who participated in the decision to request that information, why that information was requested, how that documentation would verify workmanship, and what was provided by Plaintiff, and if any information was insufficient or incorrect, in what manner was that, and who participated in the decisions as to the inadequacy?

69. What were the discussions as to the inadequacies of the letter from Guillermo Castro, and who participated in them?

70. What documentation to put the three-inch vent line project into service was not provided by Plaintiff, and who determined that, who participated in that determination, and why, and how that information prevented the acceptance of the vent line into service?

71. The basis for selecting Versa Integrity Group to inspect Plaintiff's welding, whether the work was put out for bid, and what efforts were made to determine the reasonableness of the costs, and who participated in these decisions, and actions, and why.

72. After the termination of Plaintiff's contract, what additional documentation was requested of Plaintiff, by whom, who participated in the decision to request that

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 10

documentation, and the basis for the determination Plaintiff had refused to provide documentation, and who determined that.

73. Whether the work to "repair" the welds and work done by IPOS was put out for bid, if not, why not, and who participated in that decision; whether WAPA was informed what Plaintiff's offered to repair had been, and what information Vitol Defendants and WAPA were given in this regard; what efforts were made to obtain cheaper repairs; why the work was expedited; and who participated in the decision to expedite work.

This deposition will take place on **June 16, 2023, at 1:00 PM,** at **via Zoom** before any Notary Public commissioned by the Territory of the US Virgin Islands or other person qualified to administer the oath and take deposition.  **This deposition will be conducted via Zoom meeting and pursuant to rules cited above and the standing orders of the Court during the pendency of the COVID-19 pandemic.  The Parties stipulate that the witness will be remotely sworn to testify under oath and that the deposition testimony will be treated as if the deponent was personally sworn.  No later than twenty-four (24) hours prior to the date of the deposition, the Court Reporter will provide the zoom address and IP link.**

This deposition is being taken for use as evidence and/or trial purposes and may be continued from day to day until completed.

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 11

                                                                                                   RESPECTFULLY SUBMITTED
                                                                                                   LEE J. ROHN AND ASSOCIATES, LLC
                                                                                                   Attorneys for Plaintiff

DATED:  April 21, 2023                BY:   /s/ *Lee J. Rohn*
                                                                                              Lee J. Rohn, Esquire
                                                                                               VI Bar No. 52
                                                                                               1108 King Street, Suite 3 (mailing)
                                                                                               56 King Street, Third Floor (physical)
                                                                                               Christiansted, St. Croix
                                                                                               U.S. Virgin Islands 00820
                                                                                               Telephone: (340) 778-8855
                                                                                               lee@rohnlaw.com

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 12

## CERTIFICATE OF SERVICE

**THIS IS TO CERTIFY** that on April 21, 2023, I electronically filed the foregoing with the Clerk of the Court using the electronic filing system, which will send a notification of such filing to the following:

Alex Kaplan, Esq.
Y.  Gloria Park, Esq.
Susman Godfrey
1000 Louisiana St., Suite 5100
Houston, TX  77002
Email Address: akaplan@susmangodfrey.com; GPark@susmangodfrey.com
 Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

Andrew   C. Simpson, Esq.
Andrew C. Simpson, P.C.
2191 Church Street, Suite 5
Christiansted, VI  00820
Email Address: asimpson@coralbrief.com
Attorney For: Andrew Canning and OPTIS Europe, Ltd.

Carl A. Beckstedt, III, Esq.
Beckstedt & Kuczynski LLP
2162 Church Street
Christiansted, USVI  00820
Email     Address:     carl@beckstedtlaw.com;     tarsha@beckstedtlaw.com; gpark@susmanodfrey.com; akaplan@susmangodrfey.com
 Attorney For: Vitol Virgin Islands Corp. and VITOL US Holding II Co.

Simone Francis, Esquire
Ogletree, Deakins, Nash, Smoak & Stewart, LLC
The Tunick Building,  Suite 201
1336 Beltjen Road
St. Thomas, VI  00802
Email Address: simone.francis@ogletreedeakins.com
Attorney For: Island Project and Operating Services, LLC

Petro Industrial Solutions, LLC v. Island Project and Operating Service, LLC, et. al., Case No. 1:21-CV-00312
NOTICE OF 30 (B)(6) DEPOSITION OF OPTIS EUROPE. LTD.
Page 13

      I also caused a true and correct copy of the foregoing to be served via electronic mail upon the following:

Susan C. Nissman-Coursey
Caribbean Scribes, Inc.,
1244 Queen Cross Street, Suite 1A,
Christiansted, VI  00820
Email Address: scoursey27@gmail.com; susan@caribbeanscribes.com


BY:   /s/ *Lee J. Rohn*  (kj)