IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>PLAINTIFF,<br><br>V.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), ET AL.<br><br>DEFENDANTS. | CASE NO. 1:21-CV-00312 |

**OPTIS' OPPOSITION TO PLAINTIFF'S MOTION TO COMPEL**

OPTIS Europe. Ltd. opposes plaintiffs motion to compel for the reasons set forth below.

The Court should deny plaintiff's motion. Plaintiff fails to provide case law showing that the material sought is discoverable and generally relies upon catchall averments that it is "entitled" to the discovery without offering an analysis based upon the Federal Rules of Civil Procedure as to why it is entitled to the information. Each of plaintiff's arguments regarding the specific discovery requests in dispute is addressed in the paragraphs that follow.

1

**THE SCOPE OF DISCOVERY IS LIMITED BY RULE TO NONPRIVILEGED MATTER RELEVANT TO A PARTY'S CLAIM OR DEFENSE AND MUST BE PROPORTIONAL TO THE NEEDS OF THE CASE.**

Fed. R. Civ. P. 26(b)(1) provides that parties "may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." "Courts look to Federal Rule of Evidence 401 in determining relevance, which states that information is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence; and, the fact is of consequence in determining the action.' Fed. R. Evid. 401." *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2023 WL 424186, at *3 (W.D. Pa. Jan. 26, 2023) (using Fed. R. Evid. 401 to define "relevant" for purposes of Fed. R. Civ. P. 26(b)(1).

The burden of demonstrating relevance is on the party seeking the discovery. *Katz v. Batavia Marine & Sporting Supplies*, 984 F.2d 422, 424-25 (Fed. Cir. 1993). *Accord Atkinson v. Luitpold Pharms., Inc.*, 414 F. Supp. 3d 742, 744 (E.D. Pa. 2019) (explaining that the party moving to compel bears the initial burden of proving that the requested discovery falls with the scope of discovery as defined by Rule 26(b)(1)). If the moving party meets its initial burden, the burden shifts to the opposing party to demonstrate that the requested discovery "(i) does not fall with the scope of discovery contemplated by Rule 26(b)(1) or (ii) is not sufficiently relevant to justify the burden of producing the information." *Id.* "Generally, the purpose of discovery is to remove surprise from trial preparation so the parties can obtain evidence *necessary to evaluate*

2

*and resolve their dispute.*" *Duran v. Cisco Sys., Inc.*, 258 F.R.D. 375, 378 (C.D. Cal. 2009) (emphasis added, citations omitted).

"When determining whether a discovery request is proportional to the needs of the case, courts consider the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Fed. R. Civ. P. 26(b)(1)." *In re Diisocyanates Antitrust Litig.*, 2023 WL 424186, at *4.

## SPECIFIC DISCOVERY REQUESTS

**Interrogatory No. 2:** Plaintiff originally sought the identity of all owners, members, executive officers, directors, board members, the date and place of OPTIS' formation and a description of the nature of the business it conducts. In its motion to compel, plaintiff argues only that it is "clearly entitled to learn who owns OPTIS and who manages OPTIS." Thus, plaintiff has waived any argument that it is entitled to the remainder of what is requested. However, even with that waiver, the information plaintiff seeks is still not discoverable in this case.

Plaintiff does not even assert that the identity of owners and managers is relevant to the claims or defenses of a party. Instead, it argues that (1) it needs the information to understand "who owns and controls a Defendant"; (2) "the organizational structure is relevant to understand the party and its potential relationship to other Defendants and to witnesses in the case" and (3) "to identify a potential decision" [sic]. None of this is relevant to a claim or defense of the case.

3

There are no allegations in the amended complaint or the answer that makes the identity of the owners and managers of OPTIS relevant in this litigation. Consequently, plaintiff has failed to meet its burden of establishing relevance and the Court should not compel further response to Interrogatory No. 2.

**Interrogatory No. 3:** Plaintiff seeks information about Canning's relationship with OPTIS. Plaintiff apparently overlooks the introduction to OPTIS's response to this interrogatory, which states that Canning is employed as a Technical Director and has been from "2000 *to present*." (Emphasis added.) It then gives a detailed description of his job assignments with OPTIS. Thus, OPTIS has not "failed to answer as to post December 2022, relationship if any Canning had with OPTIS." Plaintiff objects that OPTIS did not provide the terms and conditions of his employment but again makes no effort to establish the relevancy of same to the claims or defenses in this case. This case does not involve the terms and conditions of Canning's employment. It involves the termination of Plaintiff's maintenance and operating contract with IPOS and, what if any, role Canning (or OPTIS as Canning's employer) played in that decision or what actions Canning (or OPTIS as Canning's employer) took or failed to take that affected plaintiffs' relationship with IPOS. The terms and conditions of Canning's employment do not make it more or less probable that any claim or defense will succeed or fail. Thus the Court should not compel further response to Interrogatory No. 3.

**Interrogatory No. 18:** In this interrogatory, plaintiff seeks information about past work done between OPTIS and "any VITOL company from 2018 to the present, including the type of work, the amount of payment for the work, the scope of any such

4

contract, and if any such contract or work has been terminated, the date of the termination of the work and what you believe is the reason for the termination and the names and address of persons with knowledge as to the reasons for termination. The asserted bases for allowing such discovery is that it "goes to the issue of bias and motive for testimony." Plaintiff thus makes clear that it is seeking the information not because it is relevant to a claim or defense but because it is seeking impeachment evidence. As a general matter, the Federal Rules of Civil Procedure distinguish between discovery of impeachment materials and other discovery. *See, e.g.*, Fed. R. Civ. P. 26(a)(1)(A)(I) (exempting matters to be solely used for impeachment from initial disclosure requirements). As this Court held in *Bass v. Fed. Express Corp.*, 2018 WL 1354125, *1 (D.V.I. Mar. 15, 2018), "Trial tactics such as impeachment, however, do not meet the scope of discovery under the Federal Rules."[1]

Even if bias for impeachment purposes were deemed to be relevant to a claim or defense, the proportionality requirement of Rule 26(b)(1) would still apply. If the discovery sought "is not sufficiently relevant to justify the burden of producing the information," it is still not discoverable. *Atkinson*, 414 F. Supp. 3d at 744. Here, there is no allegation or suggestion that Canning or OPTIS took any action to curry favor with the Vitol defendants (indeed, plaintiff instead alleges that Canning (and thus

---

[1] This case is not one where bias is an *issue* in the case. For example, where a conflict of interest in the administration of an insurance claim is alleged in a case, bias due to the alleged conflict is relevant to the claim or defense. *See, e.g.*, *Owens v. Liberty Life Assurance Co. of Bos.*, No. 4:15CV-00071-JHM, 2016 WL 6156182, at *3 (W.D. Ky. Oct. 21, 2016).

OPTIS) took actions out of racial or national origin animus rather than out of any desire to curry favor with Vitol defendants). The discovery is simply not proportional to the needs of the case even if it is deemed relevant to a claim or defense.

**Interrogatory No. 20:** In the final paragraph of its response to this interrogatory, OPTIS explains that *its* understanding is that it enjoys a qualified privilege to communicate observations and concerns to the party employing it without being subject to a claim of defamation. The operative fact here is that OPTIS was employed as a consultant to IPOS and all of its communications with IPOS that are alleged to be defamatory or covered by the privilege to communicate with the company that engaged it as a consultant. OPTIS has identified the facts with sufficient particularity in that it alleges that the privilege exists over its communications with the party employing it.

Plaintiff disputes that this privilege exists under Virgin Islands law. But the fact that the parties disagree as to the state of the law does not mean that OPTIS has not sufficiently explained to plaintiff the basis for the affirmative defense. Obviously, since plaintiff is putting forward counter-arguments to that explanation, the response to the interrogatory was sufficient to allow plaintiff to understand the basis for the affirmative defense. There is nothing to compel here; plaintiff is free to move for summary judgment based upon its understanding of the law. When plaintiff does so, OPTIS will rely upon the Virgin Islands Supreme Court decisions recognizing privileges in defamation cases that go beyond those listed in 5 V.I.C. §§ 851–863. *See, e.g.*, *Atl. Hum. Res. Advisors, LLC v. Espersen*, 2022 VI 11, ¶ 45 (2022) (recognizing as

defenses to a defamation claim the privileges identified in the RESTATEMENT (SECOND) OF TORTS).

**Interrogatory Nos. 21 and 22:** In the final paragraph of its responses to these interrogatories, OPTIS states that the discovery in the case "has indicated that plaintiff submitted fraudulent documentation to support the work it did on the 3-inch vent line project and overbilled IPOS for work performed." Plaintiff has equal access to the discovery in the case (for example, IPOS's response to interrogatory Nos. 24 and 25 directed to IPOS which describe plaintiff's forging of welding qualification certifications) and there is nothing to be gained by OPTIS simply regurgitating what discovery has disclosed. OPTIS specifically mentions the 3-inch vent line (which is where the subject of the forged welding qualifications arose) and plaintiff is hard pressed to claim that it does not know the basis for the claim.

**REQUEST FOR PRODUCTION NO. 2:** As plaintiff did with its objection to OPTIS' response to Interrogatory No. 2 (seeking the identity of the owners and managers of OPTIS), plaintiff fails to cite any case law to support its claim that OPTIS' organization chart is relevant to a claim or defense of the parties. Plaintiff again asserts that it is "entitled" to this information but other than this naked assertion, fails to show *why* it is entitled to it. OPTIS incorporates its discussion of the response to interrogatory no. 2 (above) in response to plaintiff's objection relating to Request for Production No. 2 and will not belabor the point further.

**Request for Production No. 6:** Here again, plaintiff relies upon *ipse dixit* rather than legal analysis to assert that any contract between OPTIS and Canning is

"relevant and discoverable." In moving to compel a further response to OPTIS"s response to Interrogatory No. 3 (discussed above) plaintiff quoted OPTIS's response to Interrogatory No. 3, which acknowledged that Canning has been employed by OPTIS as a Technical Director from 2000 to the present and that in that capacity, he provided consulting services to the IPOS General Manager and later to Vitol Virgin Islands Corp. Thus, there is no issue in this case in dispute as to Canning's ability to act for OPTIS or OPTIS' responsibility for Canning's alleged actions. To the extent that plaintiff argues that the lack of a dispute over a claim or defense does not make the evidence related to such claim or defense less relevant, then the proportionality rules take over—nothing is served, and Fed. R. Civ. P. 1 is violated, by compelling a party to respond to discovery on an issue that is not in dispute in a case.

**Request for Production No. 7:** Plaintiff seeks a copy of Canning's personnel file but fails to meet its burden of showing that the personnel file is relevant to the claim or defense of a party. Plaintiff apparently believes that it is sufficient to invoke the word "clearly" to render information discoverable. But as noted above, plaintiff must *prove* that the information sought is relevant to a claim or defense. Here, plaintiff alleges that Canning took actions against it out of racial animus but does not sue OPTIS on a discrimination theory. Plaintiff *does* assert interference with contract and defamation theories against OPTIS but fails to show how Canning's personnel file is relevant to those claims, particularly given the privacy concerns that relate to personnel files. For example, a typical personnel file will contain an employment application, health insurance information, tax withholding information; doctor's notes

8

justifying absences, vacation requests, etc. How is any of this relevant to the claims or defenses of any party?

Perhaps plaintiff could have tailored a more narrow request to identify specific documents or categories of documents in Canning's personnel file that it believes are relevant to a claim or defense. But it is neither OPTIS' nor the Court's obligation to rewrite plaintiff's discovery requests so as to render them unobjectionable. A court is not required to rewrite discovery requests. *See Armour v. Santos*, 19-cv-678-RJD, 2022 WL 16572006, at *2 (S.D. Ill. Nov. 1, 2022) ("[C]ourts are not required to rewrite discovery requests, and frequently decline to do so."); *Sanchez Ritchie v. Energy*, Case No. 10cv1513-CAB(KSC), 2015 WL 12914435, at *3 (S.D. Cal. Mar. 30, 2015) ("Particularly when a party stands on an overly broad request and does not make a reasonable attempt to narrow it or to explain the need for such a broad range of documents and/or information, the Court will not rewrite a party's discovery request to obtain the optimum result for that party. That is counsel's job." (internal quotation marks omitted)); *Settlemyer v. Borg-Warner Morse TEC, LLC*, 1:19 CV 344 MR WCM, 2021 WL 66411, at *3 (W.D.N.C. Jan. 7, 2021) (where plaintiffs requested the court to compel responses to discovery requests as written rather than narrowing them, court declined to narrow them for plaintiff); *Ye v. Cliff Veissman, Inc.*, 14-CV-01531, 2016 WL 950948, at *4 (N.D. Ill. Mar. 7, 2016) (observing that "[i]t is possible to imagine a request more narrowly tailored . . . [p]erhaps one that is limited to a reasonable period of time and to specific content that bears on the issues of liability and damages in this case" but concluding that "it is not the Court's role to tailor or re-write the discovery

9

request for Defendants"); *Annex Books, Inc. v. City of Indianapolis*, 103CV00918SEBTAB, 2011 WL 13305341, at *3 (S.D. Ind. Feb. 18, 2011) (holding that the court would not rewrite a party's discovery requests where the party had the opportunity to draft a more narrowly tailored request at the time the request was drafted "and during the Local Rule 37.1 resolution efforts"); *JJCO, Inc. v. Isuzu Motors Am., Inc.*, Civ. No. 08–00419 SOM/LEK, 2009 WL 3569600, at *10 (D. Haw. Oct. 30, 2009) (stating that the Magistrate Judge is not obligated to rewrite a discovery request to narrow it, or to parse an overly broad request").

Here, the Court should *decline* to rewrite plaintiff's discovery request to narrow it to specific information from a personnel file that it intuits the plaintiff might believe is relevant to a claim or defense. Refusing to rewrite the discovery request will assist the Court in a much broader fashion by encouraging parties to narrow unreasonably broad requests as part of the informal discovery dispute resolution process and thereby reduce the need for discovery motions. If parties know that they can stand on overly broad requests and only face the narrowing of them if the court rewrites them, they have no incentive to tailor their requests and ever incentive to "shoot for the moon."

**Request for Production No. 9:** Plaintiff complains that the spreadsheet provided to it is not accurate with respect to this particular request. That spreadsheet identified 79 distinct documents that were responsive to Request No. 9, but plaintiff complains that 38 of the documents are non-responsive and ignores the remaining 41 documents (and seemingly argues that OPTIS identified no responsive documents). As plaintiff is well-aware, due to (1) the sheer breadth of plaintiff's discovery demands and

(2) the volume of emails and other documents generated over the course of Canning's involvement in the WAPA propane facilities (consisting of over 18,300 pages of documents), it was necessary to engage a computerized discovery vendor to process the documents, identify potential search terms and code those terms to various document requests, and then search the documents for responses to those terms. To avoid omitting potentially responsive requests, the computer-generated queries were necessarily overinclusive and used wildcards in the search terms that create a potential for identifying documents that are not directly responsive to the request. But OPTIS has fully responded to the document request and erred on the side of caution—there is nothing for the Court to compel.

**Request for Production No. 10**: Plaintiff claims that defendant "did not produce a single document responsive to this Demand for Production according to the 'Key'." It is not clear why plaintiff makes this claim. The "key" is an Excel spreadsheet. By using the filter function in Excel, it is a simple matter to filter by the various responses that incorporate "RFP010." Doing so yields 153 records that were identified in the key as being responsive to Request No. 10. There is nothing to compel here.

**Request for Production No. 29:** Plaintiff sought copies of all communications between OPTIS and its insurer. OPTIS responded that it was withholding all documents responsive to the request on that all such communications "contain the mental impressions of OPTIS's counsel or his legal advice as to the claims and defenses in the case." Plaintiff moves to compel a more specific privilege log, apparently under the mistaken belief that a privilege log must identify each document withheld. The

11

federal rules do not require a "log" per se and, indeed, do not even use the term "log." Contrary to plaintiff's belief, Fed. R. Civ. P. 26(b)(5)(A) merely requires that the claim of privilege be expressly made and that it "describe the *nature* of the documents . . . in a manner that . . . will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii) (emphasis added).

In this case, OPTIS has identified the nature of the documents as consisting solely of communications that contain its counsel's mental impressions or his legal advice. This sufficiently identifies the *nature* of the communications in question such that it is possible to ascertain the basis for the privilege. Plaintiff speculates that "reporting a claim" and the "insurance companies' regular communication as to that claim are not privileged but offers no evidence to support the argument. This is not a situation where there was, for example, an auto accident where the insured calls the insurance company to report it before litigation has ensued. It is important to recognize that in this case OPTIS was brought into this claim long after the litigation began. A communication from an attorney that describes the attorney's mental impressions and legal advice is still privileged even if it is the first report to the insurer of the claim. OPTIS has appropriately described the nature of the communications that are subject to the privilege and thus has fulfilled its obligation under Rule 26.

**Request for Production No. 32:** Plaintiff seeks the production of any joint defense agreement to which OPTIS is a party. OPTIS objected on the grounds that the request was overly broad, not relevant to the claim or defense of any party, subject to the "community of interest privilege" and not discoverable. OPTIS then followed the

teachings of *Ford Motor Co. v. Edgewood Properties, Inc.*, 237 F.R.D. 418, 428 (D.N.J. 2009) and disclosed that it is a party to a "Common Interest and Confidentiality Agreement, the effective date of same, the date it joined same, and the other parties to it. Thus, this gives the plaintiff all of the information it needs to attack the credibility of the parties, which is the ostensible basis for which plaintiff claims the need to see the actual document.

The agreement in question contains standard boilerplate language and the only language specific to the litigation contains a generalized description of the allegations of plaintiff's complaint. Consequently, there is nothing relevant to the claims or defenses of the parties and is not discoverable. OPTIS has no objection to submitting the document for in camera review by the Court in the manner that was done in *Ford Motor*.

**Request for Production No. 33:** As stated in its response to this request, OPTIS has produced all documents that contain an indemnification agreement. There is nothing to compel.

**Request for Production No. 34:** The first amended complaint in this matter consists of 89 paragraphs and OPTIS admitted 12 of those paragraphs. In a single blunderbuss request for production, plaintiff seeks every single document that supports the denials of any of the remaining 77 paragraphs of the complaint. This is naked discovery abuse. Canning has nevertheless responded that it has produced all such documents. Plaintiff asserts that it is "entitled to receive any documents which support Defendant's denial of allegations or affirmative defenses. OPTIS has done so.

13

There is nothing to compel.

**Request for Production Nos. 35–37:** OPTIS will supplement its response to these requests in the light of the *Livingston v. Blue Source* decision.

## CONCLUSION

For the foregoing reasons, plaintiff's motion to compel should be denied.

                Respectfully submitted,

                **ANDREW C. SIMPSON, P.C.,**
                Counsel for OPTIS Europe, Ltd.

Dated: May 30, 2023

                /s/ Andrew C. Simpson
                By: Andrew C. Simpson, Esq.
                VI Bar No. 451
                ANDREW C. SIMPSON, P.C.
                2191 Church Street, Suite 5
                Christiansted, VI 00820
                Tel: 340.719.3900
                asimpson@coralbrief.com