IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC, VITOL US HOLDING II CO., VITOL VIRGIN ISLANDS CORP, ANDREW CANNING, OPTIS EUROPE, LTD., VTTI and VITOL, INC.,<br><br>　　　　　Defendants. | CASE NO. 1:21-CV-00312<br><br>**BREACH OF CONTRACT**<br><br><u>JURY TRIAL DEMANDED</u> |

## SECOND AMENDED COMPLAINT

**COMES NOW** Plaintiff, **PETRO INDUSTRIAL SOLUTIONS, LLC, (PETRO)**, by and through undersigned counsel, and files its Second Amended Complaint against Defendants **ISLAND PROJECT AND OPERATING SERVICES, LLC, (IPOS), VITOL US HOLDING II CO., VITOL VIRGIN ISLANDS CORPS, (VVIC), ANDREW CANNING, OPTIS EUROPE, LTD, (OPTIS), VTTI, AND VITOL, INC.**, and alleges the following:

1. This Court has jurisdiction over this matter pursuant to the diversity of the parties and the fact that the amount in controversy exceeds $75,000.00

2. Plaintiff. Petro Industrial Solutions, LLC, (Petro), is a Virgin Islands limited liability corporation.

3. Defendant, Island Project and Operating Services, LLC, (IPOS), is a Virgin Islands limited liability corporation.

4. Defendant IPOS was a wholly owned subsidiary of VTTI.

**LEE J. ROHN AND ASSOCIATES, LLC**
1108 King St, Ste 3
Christiansted, VI 00820
Tel: 340.778.8855
Fax: 340.773.2954
lee@rohnlaw.com

**EXHIBIT 2**

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 2

5. For all intents and purposes IPOS no longer exists and its employees and assets, if any, appear to have been subsumed by VTTI.

6. Defendant VTTI is co-owned by VITOL Group, IFM. It operates out of Rotterdam, Netherlands.

7. In discovery, it has been learned that it was actually VTTI that conducted the investigation of Plaintiff as to cancelling Plaintiff's contract with IPOS.

8. In discovery, it has been learned that the decision to cancel IPOS' contract with Plaintiff was made by VTTI.

9. Defendant, VITOL US Holding II Co., (VITOL), is, upon information, incorporated in Delaware, with its principle place of business in Texas, and, which does business in the U.S. Virgin Islands.

10. Defendant, Vitol, Inc., is a subsidiary of VITOL US Holding II Co.

11. Through discovery, it has been determined that VITOL US Holding, Inc, while owning Vitol Virgin Islands that owns and controls the propane facilities, it is Vitol, Inc that manages Vitol Virgin Islands.

12. In discovery, it has been learned that it was the employees of Vitol, Inc., who took the actions on behalf of Vitol Virgin Islands Corp, as to demanding documents, investigating false allegations against Plaintiff, withholding payments.

13. In discovery, it has been learned that it was Vitol, Inc., who participated in the investigation of Plaintiff.

14. In discovery, it has been determined that it was Vitol, Inc that participated in

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 3

terminating Plaintiff's contract.

15. In discovery, it has been determined that it was Vitol, Inc, that made the defamatory statements.

16. In discovery, it has been determined that it was VTTI, Vitol, Inc., and Vitol Virgin Islands that facilitated and turned a blind eye and failed to properly supervise OPTIS and Canning as to their discriminatory actions.

17. IPOS was the company operating the propane facility in the Virgin Islands for WAPA, at St. Croix and St. Thomas in conjunction with VTTI.

18. Defendant, Andrew Canning, is, upon information a citizen of the United Kingdom, and is a consulting engineer for VITOL Defendants, through a contract between OPTIS Europe, Ltd. (OPTIS), and, upon information, also reports to Defendant VVIC, Defendant VITOL US Holding II Co., VTTI, and Vitol, Inc.

19. VITOL Virgin Islands Corp, (VVIC), is, upon information, a Delaware corporation, and one of the wholly own and controlled subsidiaries of VITOL US Holding II Co.

20. VVIC is the owner of both propane facilities known as the Randolph Harvey Power Plant and Richmond Power Plant, for which VVIC entered into an agreement with WAPA to perform certain services.

21. VVIC operates though Vitol, Inc.

22. VITOL US Holding II Co., upon information, has many companies that do work for this parent company, including Vitol Virgin Islands, and Vitol, Inc.

23. Optis Europe, Ltd. (OPTIS), is, upon information, a Netherland Ltd. Company with its

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 4

principle place of business in the Netherlands.

24. OPTIS, upon information, entered into a consulting agreement with VVIC to manage in conjunction with IPOS, the operation of the Randolph Propane Plant and the Richmond Propane Plant in regard to, among other activities, the implementation of a maintenance activities, and special projects.

25. OPIS and Canning actually reported to and performed services for VTTI and Vitol, Inc., and assisted their efforts to maintain and run the Propane Facilities.

26. OPTIS, is the direct employer of Defendant Andrew Canning.

27. Petro Industrial Solutions, LLC, does maintenance and construction, and other services, and the Propane Facilities for IPOS and Vitol Defendants.

28. Petro is a company made up of all local West Indian or local Hispanic employees, as are its management team and owners.

29. Petro and IPOS with the agreement of VTTI discussed Petro doing business for IPOS, and Petro informed IPOS that, because Petro wanted a chance to do the business and show IPOS what it could do, it gave IPOS reduced rates on the initial contract in exchange for a minimum five-year contract.

30. In April 2018, Petro began doing business with IPOS.

31. On September 10, 2019, Petro and IPOS, upon information, with the approval of VTTI, entered into a contract for Petro to perform preventive maintenance, remedial maintenance, scheduled projects, and provide equipment rentals, and material procurement.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 5

32. The term of the contract was to commence on September 1, 2019, and could be terminated by either party giving sixty-days written notice to the other party after the first five-years.

33. Otherwise, the contract could only be cancelled for cause after one-year.

34. While Plaintiff's contract was with IPOS, Andrew Canning, of OPTIS with supervision by the VITOL Defendants, had to approve all budgets, and actions of Plaintiff.

35. Andrew Canning, through OPTIS, had a racist attitude toward Petro because its workers are of color, and predominantly West Indian, and he has the belief that as a result of their race, and national origin, they are less qualified, experienced and knowledgeable then stateside white employees, and companies that employed the same.

36. In addition, when experienced employees of Plaintiff would point out to Andrew Canning that his decisions as to operations were in error, or improper, Canning with the knowledge of IPOS, VTTI, and Vitol, Inc., would become enraged and retaliatory against Petro, and make false allegations against Petro to attempt to get IPOS, and the VITOL Defendants to cancel the contract.

37. Beginning in 2018, even before the contract negotiations were completed between Petro and IPOS, Canning would take innocent scriber errors as to times signed in by Plaintiff's employees, which VVIC, VTTI, and Vitol Inc. had independent documents as to actual start times which it relied on, and falsely accuse Plaintiff and its employees of engaging in forgeries or stealing time.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 6

38. Andrew Canning, through IPOS, clearly had it in for Plaintiff and would constantly make false criticisms, and comments as to Plaintiff, which were not properly investigated by Defendants.

39. In June 2020, a project for a one-inch vent line was put out for bid by VITOL Defendants, through Canning and David Nagle.

40. Petro had previously provided VITOL Defendants, through Canning, a budgetary estimate to do the work in late 2019, for the same project. At the VITOL Defendants request, that estimate included from "hell to dime", and construction that would minimize facility downtime.

41. Plaintiff reminded Canning that Petro had already bid the job earlier. Canning and OPTIS, took the position that the estimate was not an "official" bid and Plaintiff was too late to bid, which initially was supported by the Vitol Defendants.

42. Plaintiff convinced Merlin Figueroa, the then general manager of IPOS, that it would be in everyone's economic interest to allow IPOS to bid the project. Finally, the bid package, previously withheld by Canning, was given to IPOS to give to Plaintiff.

43. Plaintiff submitted a bid that Canning admitted was competitive, but Canning then attempted to prevent Plaintiff from receiving the bid, by falsely claiming Plaintiff had stolen valuable information from Plaintiff's supplier, Traeger Brother.

44. Plaintiff was able to prove that Traeger Brothers had given Plaintiff the pricing on a bill of materials to be used for the bid.

45. Ultimately, the VITOL Defendants and OPTIS, through Canning, at IPOS's

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 7

encouragement, agreed Plaintiff had not done anything wrong in using the Traeger Brothers numbers.

46. Ultimately, Canning still prohibited Plaintiff from getting the bid, claiming a Florida company had already been awarded the bid, when in fact, no bid was awarded, and no money was exchanged until the end of 2020.

47. The Vitol Defendants and OPTIS failed to investigate Canning's actions and inactions as to Plaintiff to determine if they were as a result of racial animus.

48. On June 22, 2021, a representative of Traeger Brothers contacted Plaintiff to see if Plaintiff could provide it direct access to IPOS.

49. Traeger Brothers is a supplying company that both IPOS (through Canning), and VTTI and Vitol, Inc, and Plaintiff use for various materials and supplies.

50. IPOS authorized Plaintiff to bring in Traeger Brothers to meet and discuss business directly with IPOS.

51. During Traeger Brothers' meeting with IPOS, it informed IPOS that as a result of Canning and OPTIS, IPOS and the Vitol Defendants were missing critical information to move forward on projects that had been delayed for months and years, because Canning was the problem.

52. As a result, IPOS and the Vitol Defendants began doing projects with Plaintiff and Traeger brothers without Canning's involvement.

53. Starting on January 15, 2021, the VITOL Defendants, through Canning, began to hold payments on Plaintiff's accounts receivables, and kept invoices from being paid

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 8

for months.

54. On January 21, 2021, Plaintiff's crew was working on a job that Canning and engineer David Nagle were in charge of. The VITOL Defendants, through Canning purposefully delayed Plaintiff's crew from promptly doing the work, and then falsely blamed the delay on Plaintiff.

55. On that same job in January 2021, VITOL Defendants, through Canning, again falsely accused Plaintiff and its men to forging time sheets, and deliberately attempting to give false times. In fact, Plaintiff had called Canning that morning to confirm his crew would arrive two hours late.

56. As a result, Canning had Vitol Defendants bar three of Petro's Hispanic workers from being allowed on any Vitol Defendants jobsite.

57. Again, the Vitol Defendants and OPTIS failed to investigate Cannings actions, and whether they were as a result of racial animus.

58. On February 11, 2021, Canning fell through a platform. He then confronted one of Plaintiff's employees called Plaintiff's work "bull shit", and their welding "substandard", and he intended to sue Plaintiff and IPOS.

59. An investigation into the cause of the platform giving way was made, and found it had nothing to do with any welding, but rather the platform needed additional fastener clips.

60. When the employee and Plaintiff's safety man on the job went to explain to Andrew Canning what had occurred, Canning verbally attacked them, by calling the safety

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 9

man over, and saying, "Hey you, safety guy, I fell through a platform because of a bullshit work that Petro did. How could you guys consider yourself a welding company, when all your work is substandard". At one point, Canning was yelling at the safety man so loudly that the safety man told Canning, "I don't need this shit", and walked away to avoid a confrontation.

61. Further investigation revealed that when Canning fell through the platform it had been because he was jumping on the platform up and down to "check its integrity", and should not have been permitted into the area.

62. In the beginning of the work, Plaintiff provided IPOS with its Welder's Certificates (WPS and WPQ), which were proper and correct, and industry standard.

63. In February 2021, IPOS, through the Vitol Defendants, again asked for those welder's certificates.

64. On March 31, 2021, Canning questioned Plaintiff as to its welding procedures, stating he believed they should be VTTI procedures.

65. Plaintiff promptly responded and again attached the WPS for all types of welding for VTTI and IPOS, and reminded him, he already had those procedures, and was following them and his procedures had always met ASME regulations.

66. In March 2021, Plaintiff provided those certificates again.

67. Andrew Canning also questioned the method of welding on some pipes.

68. Plaintiff explained that the cable wrapping Canning was referring to was most likely done in the fitting and tacking phase of the weld, so no purge was needed. Once the

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 10

root is started, the line is purged, and the ground clamp is attached directly to the pipe.

69. Plaintiff further reminded Canning that Site Supervisor, Javier Vazquez, was on site every minute of every day, and could answer his questions about the welding questions Canning had on site.

70. Canning also falsely claimed that he could find no evidence that the root welds were being inspected.

71. Plaintiff promptly responded that at 2:00 p.m. that day, (Cannings' email was sent at 4:33 p.m. that same day), the PT technician from Versa Inspection, an independent welding inspector, paid for by Plaintiff, had been on site, performed the NDT inspection on all sixteen completed welds, and marked each of those welds as, "PT OK", with his initials. He further advised Canning that a NDT report would be prepared by Versa and provided once all the welds were completed at Plaintiff's expense.

72. Canning also inquired, at that time, how final weld inspection would be undertaken, and what percentage of welds would be inspected.

73. Plaintiff promptly explained to him that Versa Inspections, per industry standards, will perform PAUT, (Phase Array Ultrasound), on 10% of all welds.

74. IPOS, through the Vitol Defendants, confirmed that it had received all of Plaintiff's welders' certificates on April 15, 2021, but inquired where the Data Sheets on the welding consumables were.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 11

75. On April 19, 2021, Plaintiff provided IPOS the MTR for the welding rods, and pictures of the labels as requested.

76. On April 15, 2021, it was decided that Andrew Canning should not have direct dealings with Plaintiff and an email was sent by IPOS acknowledging that he should not want to have any direct communications with Plaintiff.

77. OPTIS Defendants, through Canning, became even further enraged and determined to get rid of Plaintiff for having participated in IPOS speaking to Traeger Brothers directly, and for convincing the Vitol Defendant to do work without Canning's involvement.

78. At that point Merlin Figueroa, General Manager of IPOS, set a meeting for a week later to meet with Plaintiff, as to how to move forward with projects without impediment of VITOL Defendants and Canning.

79. There are multiple other examples of Canning taking unreasonable false positions against Plaintiff, in order to try and get IPOS and the Vitol Defendants to withdraw the contract, and not give the bid work to Plaintiff. For example, VITOL Defendants still had an old rule that certain materials could not be manufactured in China, however, several years ago that industry standard changed, and currently the majority of those materials in the industry come from China, as the preferred source. Plaintiff obtained materials unbeknownst to it, from China on a project for IPOS and Vitol Defendants, which was fine with IPOS. Canning, on behalf of VITOL Defendants, required Plaintiff to replace all those materials, at great expense for no

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 12

supportable reason.

80. VITOL Defendants, through Canning and on their own, consistently interjected themselves between Plaintiff and IPOS, who it had actually contracted with, on Plaintiff's work, Martin Figueroa, General Manager for IPOS instructed Canning to allow Plaintiff to work directly with IPOS on two projects of (1) inspecting propane vessels and (2) a critical well tie into an existing propane piping.

81. Canning, on behalf of VITOL Defendants, was enraged and angry, and attempted to impair that work, and relationship.

82. On July 5, 2021, VITOL Defendants, including IPOS again requested the same welding certificates they had repeatedly requested and been given.,

83. Plaintiff provided them the Welder Certificates, or and WPS and WPQ, which are Industry Standard Certificates were given.

84. Canning falsely informed the Vitol Defendants that the Welder Certificates were" forged" and had anomalies that verified that the certificates were not genuine.

85. The Vitol Defendants particularly VTTI and Vitol, Inc failed to properly investigate the allegations of Canning/IPOS, and instead accepted the false allegations, and falsely repeated them.

86. In response, on July 29, 2021, Plaintiff provided Defendants with the letter from the certifier of the welders, that the welders were properly certified, and that if it was requested, he would come to St. Croix to personally retest them, and recertify them, if necessary, and verified that the listing certifications attached to his letter were valid

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 13

and not forged.

87. Canning, on his own, and on behalf of Vitol, Inc and VTTI, then made the ridiculous request for the actual test results. But those tests are done in-person by the applicant as to actual welds that are then certified as properly done, and then a certification given, listing what testing was done.

88. In addition, after the fact, Defendants began requesting additional welding records not just on the three-vent line job, but other jobs that had previously been accepted, which were responded to, as follows:

   a. Full inspection and test plan. Plaintiff pointed out that no such reports had been required by Defendants in the job specifications, and, therefore, they did not exist.

   b. Daily records (for welding fitting, visual inspection). No such records had been specified in the job specifications, but Plaintiff provided weld logs with all NDT, which includes VT on all welds done by a third-party certifier.

   c. Welding and mechanical tests of WPQ's. Plaintiff explained that the actual welder's qualification certificate was given to Plaintiff in lieu of a PAUT report. Each welder was tested on four different positioned coupons, which were phase arrayed, inspected, and passed. Certification was then approved, accepted, and signed by Petro.

89. In response, VTTI and Vitol, Inc. had IPOS request-the following:

   a. In place of the ITP and daily records that Plaintiff share the internal welding

Case: 1:21-cv-00312-WAL-EAH   Document #: 212-2   Filed: 06/06/23   Page 14 of 19

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 14

procedures. Plaintiff applied for GT17 and GT20.

    b. As to the PAUT report, it needed a report/certificate/document from Acuren Castro for Plaintiff to sign the WPQ.

90. The same day, July 27, 2021, Plaintiff provided the welding procedures, confirmed they were ASME approved, and that those procedures were used at Limetree Bay, IPOS, Diageo and Cruzan Rum since 2018. In response to the second issue, Plaintiff provided the report from Mr. Castro confirming the independent testing.

91. Vitol, Inc designated VTTI to investigate the matter.

92. Vitol, Inc and VTTI allowed Canning to participate in that investigation.

93. Vitol, Inc. and VTTI, through David Smith, and instructions for Vitol, Inc, instructed IPOS to cancel Plaintiff's contract.

94. On July 28, 2021, Plaintiff received a certified letter from IPOS wrongfully cancelling the Plaintiff's service contract with IPOS, at the insistence of the VITOL Defendants and Canning. Defendants did so without providing Plaintiff any opportunity to recertify the welds, or take any other reasonable actions.

95. Plaintiff's work on the 3" vent line was correctly done and met industry standards.

96. Despite that fact, Defendants VTTI and Vitol, Inc, through IPOS, hired Versa to x-ray every weld.

97. That procedure was not required by industry standards.

98. Despite the fact that Plaintiff offered to repair or correct any deficient welds for free, Vitol Defendants issued a non-bid contract to correct the welds for hundreds of

Case: 1:21-cv-00312-WAL-EAH   Document #: 212-2   Filed: 06/06/23   Page 15 of 19

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 15

thousands of dollars.

99. Defendants then attempted to claim Plaintiff was responsible to pay for the work done by Versa and the weld repairs.

100. The Defendants never informed its client WAPA of those actions even though WAPA ultimately paid for the same.

101. The Defendants failed to approve payment for Plaintiff on the 3' vent line even though WAPA accepted the job, and it is in use, and WAPA never requested nor required the supposedly missing paperwork from Plaintiff.

102. The Defendants are now in the process of selling the propane facilities, including the 3" vent lines, back to WAPA without the supposedly required paperwork.

103. Canning/OPTIS as part of their racial animus would refuse to approve the entire invoice of Plaintiff because of a disagreement as to minor items.

104. Canning/OPTIS did not to bring those minor differences, such as how many hours an employee worked, or why an employee was assigned to a job until months after receiving the invoices.

105. In order to get paid, Plaintiff would simply have to agree with Canning/OPTIS in order to get paid.

106. Upon information, Canning/OPTIS would falsely represent to Vitol Defendants that he and OPTIS "caught" Plaintiff with false claims and Plaintiff had admitted they were wrong.

107. Defendants failed to supervise of investigate whether Canning's actions were

Case: 1:21-cv-00312-WAL-EAH   Document #: 212-2   Filed: 06/06/23   Page 16 of 19

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 16

proper, or the result of racial animus.

108. Plaintiff complained on a number of incidents that Canning/OPTIS was engaging in illegal racial animus against Plaintiff and its employees.

109. Defendants, other than Canning, failed to properly investigate Plaintiff's complaints as to racial discrimination.

110. Defendants have failed to approve past due invoices for work done prior to the cancellation of the contract. As of August 24, 2021, the amount was $213,379.90.

111. Even if Defendants were correct on the Welder Certificates, which they are not, there was no basis to cancel the maintenance portion of the contract.

112. Defendants then contracted with Tampa Tank to do the same work out of Florida, and they hired the same employees, including maintenance and boilermakers that Plaintiff had used.

113. In August, IPOS at the instigation of VITOL Defendants, and Andrew Canning/OPTIS cancelled Plaintiff's equipment rental contract, and requested Plaintiff get an enormous amount of equipment off site in a short period of time.

114. Defendants have now made a demand for records never required, and documents that do not exist, as an excuse not to pay Plaintiff, even though WAPA has not required that documentation.

115. The Vitol Defendants then cancelled their contract with IPOS.

116. The Vitol Defendants finally realized Canning/IPOS were engaging in defamation motivated by racial animus and cancelled Canning/OPTIS contract.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 17

117. The Vitol Defendants have now contracted with Saintnals to perform or contract with others to perform the same work Plaintiff was performing.

118. Plaintiff made over a million dollars doing projects for IPOS and VITOL in the past year that Plaintiff has lost the opportunity to continue to do.

119. Plaintiff has lost funds, the ability to invest those funds, loss of opportunity, suffered loss of reputation and business opportunities.

## COUNT I

## (Breach of Contract as to IPOS)

120. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 119 above and incorporate same as if more fully set out herein.

121. Defendant IPOS breached its contract with Plaintiff.

122. As a result, Plaintiff suffered damages.

## COUNT II

## (Violation of the Discrimination Statutes of the Virgin Islands as to all Defendants)

123. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 122 above and incorporate same as if more fully set out herein.

124. VITOL Defendants, and Andrew Canning while in the course and scope of his employment with OPTIS, violated the discrimination statutes of the U.S. Virgin Islands.

125. As a result, Plaintiff suffered damages.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 18

## COUNT III

### (Tortious Interference and with Contract as to Canning/OPTIS, VITOL Defendants, VTTI, and Vitol, Inc.)

126. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 125 above and incorporates same as if more fully set out herein.

127. VITOL Defendants, OPTIS and Andrew Canning, tortiously interfered with Plaintiff's contract with IPOS.

128. As a result, Plaintiff suffered damages.

## COUNT V

### (Defamation as to Canning/OPTIS and VITOL Defendants)

129. Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 128 above and incorporate same as if more fully set out herein.

130. VITOL Defendants, OPTIS and Andrew Canning defamed Plaintiff to IPOS and others as to forging documents, causing incidents, doing shabby work, not following industry standards, not providing proper paperwork, providing false billings, all of which are not true.

131. As a result, Plaintiff suffered damages.

**WHEREFORE**, Plaintiff prays for damages as they may appear, and for pre and post judgment interest, and for costs and fees, and for such other relief as this court deems fair and just.

PETRO INDUSTRIAL SOLUTIONS, LLC V. ISLAND PROJECT AND OPERATING SERVICE, LLC, ET. AL., CASE NO. 1:21-CV-00312
**SECOND AMENDED COMPLAINT**
Page 19

                                        LEE J. ROHN AND ASSOCIATES, LLC
                                        Attorneys for Plaintiff

DATED: June 6, 2023          BY:   /s/ *Lee J. Rohn*
                                                Lee J. Rohn, Esq.
                                                VI Bar No. 52
                                                1108 King Street, Suite 3 (mailing)
                                                56 King Street, Third Floor (physical)
                                                Christiansted, St. Croix
                                                U.S. Virgin Islands 00820
                                                Telephone: (340) 778-8855
                                                lee@rohnlaw.com