<div style="border:1px solid">

**DISTRICT COURT OF THE VIRGIN ISLANDS**

**DIVISION OF ST. CROIX**

</div>

**PETRO INDUSTRIAL
SOLUTIONS, LLC,**

    **Plaintiff,**

  **v.**

**ISLAND PROJECT & OPERATING
SERVICES, LLC, VITOL US
HOLDING II, CO., VITOL VIRGIN
ISLANDS CORP., ANDREW
CANNING, OPTIS EUROPE, LTD.,**

    **Defendants.**

      **1:21-cv-00312-WAL-EAH**

TO:  **Lee J. Rohn, Esq.**
    *On behalf of Plaintiff*
    **Simone D. Francis, Esq.**
    *On behalf of Island Project & Operating*
    **Andrew Kaplan, Esq.**
    **Gloria Park, Esq.**
    **Sarah Hannigan, Esq.**
    **Carl A. Beckstedt, III, Esq.**
    *On behalf of Vitol US Holding and Vitol VI*
    **Andrew C. Simpson, Esq.**
    *On behalf of Andrew Canning & OPTIS Europe*

## <u>ORDER</u>

  **THIS MATTER** comes before the Court on the Motion to Compel OPTIS Europe, Ltd.
to Supplement Its Responses to Plaintiff's Written Discovery, Dkt. No. 199, filed by Plaintiff,
Petro Industrial Solutions, LLC ("Petro"). OPTIS filed an opposition, Dkt. No. 207, and Petro
filed a reply, Dkt. No. 210. For the reasons that follow, the Court will grant in part and deny
in part the motion to compel.

## BACKGROUND

In October 2022, Petro filed a First Amended Complaint against Island Project & Operating Services, LLC ("IPOS"), Vitol US Holding II, Co., Vitol Virgin Islands Corp. ("VVIC"), Andrew Canning, and OPTIS. Dkt. No. 112. OPTIS entered into a consulting agreement with VVIC to manage, in conjunction with IPOS, the operation of the Randolph Power Plant (on St. Thomas) and the Richmond Power Plant (on St. Croix) by implementing maintenance activities and special projects. *Id.* ¶ 11. OPTIS was the "direct employer" of Canning, *id.* ¶ 12, who was described as a "consulting engineer for VITOL Defendants through a contract between [sic] Optis Europe, Ltd." *Id.* ¶ 6. Petro was "a company made up of all local West Indian or local Hispanic employees, as are its management team and owners." *Id.* ¶ 14.

Petro and IPOS entered into a contract in September 2019 for Petro to perform preventive and remedial maintenance, scheduled projects, and provide equipment rentals and material procurement. *Id.* ¶ 17. Canning had to approve budgets and actions of Petro. *Id.* ¶ 20. He held a racist attitude toward Petro and, when Petro employees pointed out that his decisions were in error, he became enraged, retaliatory and made false accusations so that IPOS and the Vitol Defendants would cancel the contract. *Id.* ¶¶ 21, 22. Canning prevented Petro from receiving a particular bid, *id.* ¶ 32, and starting in January 2021, the Vitol Defendants, through Canning, began to withhold payments on Petro's account receivables and kept it from being paid, *id.* ¶ 37. Numerous disputes erupted, including one over the certification of Petro's welders, *id.* ¶¶ 63-69, which led to IPOS cancelling its service contract with Petro, at the insistence of Vitol and Canning, in July 2021, *id.* ¶ 70. In August 2021, IPOS

cancelled Petro's equipment rental contract. *Id.* ¶ 74. The Amended Complaint charges that OPTIS tortiously interfered with Petro's contract with IPOS and defamed Petro. Dkt. No. 112 ¶¶ 85, 88. It also alleges a violation of the Virgin Islands discrimination statutes, tortious interference, and defamation against Canning, *id*. at ¶¶ 6, 82, 85, 88.

On January 25, 2023, Petro propounded its first set of interrogatories and its first demand for production of documents on Defendant OPTIS. Dkt. Nos. 140, 141; Dkt. No. 199-1. On March 1, 2023, Petro's counsel wrote to OPTIS's counsel detailing Petro's view that certain interrogatory and request for production responses were insufficient. Dkt. No. 199-2. On March 9, OPTIS's counsel responded that it would supplement its discovery responses by March 16. Dkt. No. 199-3. Not having received the supplemental responses, Petro's counsel wrote OPTIS's counsel on March 24 requesting the supplemental responses or dates to meet and confer. *Id.* On March 27, OPTIS indicated that it was working to provide the supplemental responses. When Petro did not receive those responses, it wrote the Court on April 6, 2023 stating that it had reached an impasse with the OPTIS discovery responses and requesting an informal conference for the Court to assist in resolving these issues.

The Court held the informal conference on May 12, 2023. Some of the outstanding interrogatory and demand for production issues were resolved and others were to be resolved through supplementation by OPTIS. However, the majority of the requests for production and interrogatories about which Petro had requested the Court's intercessions in resolving were not resolved. Petro stated that it would file a motion to compel. The Court

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 4

provided briefing deadlines. Dkt. No. 196. Petro then filed the instant motion to compel, Dkt.

No. 199, OPTIS filed an opposition, Dkt. No. 207, and Petro filed a reply, Dkt. No. 210.

## DISCUSSION

### I.   Applicable Standards

#### A.   Discovery Under Rule 26

Federal Rule of Civil Procedure 26(b)(1), concerning discovery scope and limits,

provides, inter alia:

> Unless otherwise limited by court order, the scope of discovery is as follows:
> Parties may obtain discovery regarding any nonprivileged matter that is relevant
> to any party's claim or defense and proportional to the needs of the case,
> considering the importance of the issues at stake in the action, the amount in
> controversy, the parties' relative access to relevant information, the parties'
> resources, the importance of the discovery in resolving the issues, and whether
> the burden or expense of the proposed discovery outweighs its likely benefit.
> Information within this scope of discovery need not be admissible in evidence to
> be discoverable.

Fed. R. Civ. P. 26(b)(1). Matters of discovery are committed to the broad discretion of the

court, *United States v. Washington*, 869 F.3d 193, 220 (3d Cir. 2017). The Third Circuit

recently described the Rule's relevancy standard as "undemanding," noting that courts

"employ a liberal and broad discovery-type standard which requires only the probability

that the desired information is relevant." *Crozer Chester Med. Ctr. v. Nat'l Lab. Rels. Bd.,* No.

22-2608, 2023 WL 3018280, at *2 (3d Cir. Apr. 20, 2023); *see also Birl v. Ski Shawnee, Inc.,*

No. 3:22-cv-1598, 2023 WL 3743576, at *2 (M.D. Pa. May 31, 2023) (quoting *Jackson v. Beard*,

No. 11-1431, 2014 WL 3868228, at *5 (M.D. Pa. Aug. 6, 2014) for the proposition that

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 5

"[a]lthough the scope of relevance in discovery is far broader than that allowed for evidentiary purposes, it is not without its limits.") (internal quotation marks omitted)).[1]

Because assertion of a claim of privilege "may result in the withholding of relevant information and so may obstruct the search for truth," *In re Chevron Corp.*, 633 F.3d 153, 164 (3d Cir. 2011), it is well established that "'[t]he burden of proving that the . . . privilege applies is placed upon the party asserting the privilege.'" *Matter of Grand Jury Empanelled February 14, 1978*, 603 F.2d 469, 474 (3d Cir. 1979) (quoting *United States v. Landof*, 591 F.2d 36, 38 (9th Cir. 1978)); *see also Hydrojet Servs., Inc. v. Sentry Ins. Co.*, No. CV 20-4727-SWR, 2022 WL 2168655, at *2 (E.D. Pa. June 16, 2022) ("the party must specifically show how the asserted privilege applies."). Rule 26 requires the party withholding information on the basis of privilege to "describe the nature of the documents, communications, or tangible things not produced or disclosed—and do so in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). Failure to assert the privilege properly, in conformity with the Federal Rules, results in waiver of any and all objections based upon attorney-client privilege and/or

---

[1] OPTIS cites *In re Diisocyanates Antitrust Litig.*, No. MC 18-1001, 2023 WL 424186 (W.D. Pa. Jan. 26, 2023) for the proposition that the definition of relevance in the discovery rule is governed by Fed. R. Evid. 401. *See id.* at *3 ("Courts look to Federal Rule of Evidence 401 in determining relevance, which states that information is relevant if 'it has any tendency to make a fact more or less probable than it would be without the evidence; and, the fact is of consequence in determining the action.' Fed. R. Evid. 401."). This Court disagrees (as do other courts in that district, *see, e.g., Liberty Mutual Ins. Co. v. Gemma*, 2022 WL 1810701, at *3 (W.D. Pa. June 2, 2022)), given the case law cited above, which underscores that relevance for discovery purposes is broader than under Rule 401 and does not have to be admissible.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 6

attorney work-product doctrine. *Monterey Commc'ns, LLC v. Atl. Tele-Network Int'l, Inc.,* No. 1:19-cv-00015, 2021 WL 7707265, at *5 (D.V.I. Apr. 22, 2021).

The work product privilege "shelters the mental processes of the attorney, providing a privileged area within which he can analyze and prepare his client's case." *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 661-62 (3d Cir. 2003). It is governed by a uniform federal standard embodied in Federal Rule of Civil Procedure 26(b)(3). *United Coal Cos. v. Powell Const. Co.*, 839 F.2d 958, 966 (3d Cir. 1988). Work product is defined as "tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent)." Fed. R. Civ. P. 26(b)(3).

In a diversity action that raises state claims, such as this case, Virgin Islands law governs the applicability of the attorney-client privilege. Fed. R. Evid. 501; *Montgomery Cnty. v. MicroVote Corp.*, 175 F.3d 296, 301 (3d Cir. 1999).  Section 852 of Title 5 of the Virgin Islands Code governs attorney-client privilege in the Virgin Islands:

> A client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client (1) between the client or the client's representative and the client's lawyer or the lawyer's representative, (2) between the client's lawyer and the lawyer's representative, (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest, (4) between representatives of the client or between the client and a representative of the client, (5) among lawyers and their representatives representing the same client. This privilege exists whether the person/client actually retains the lawyer or law firm to render professional legal services to him or her.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 7

5 V.I.C. § 852. The burden of showing the existence of circumstances justifying the application of the attorney-client privilege rests with the party asserting the privilege, and "[b]ecause it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed." *Samuel v. Century Hill, Inc.*, No. ST-2018-cv-00441, 2021 VI SUPER 40U, ¶¶ 12-13, 2021 WL 1564723 (V.I. Super. Apr. 5, 2021).

Rule 26(e) governs the obligation of a party to supplement discovery. The Rule provides that a party must supplement a prior discovery response if it "learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional corrective information has not otherwise been made known to the other parties during the discovery process or in writing[.]" Fed. R. Civ. P. 26(e)(1)(A); *Williams v. Morton*, 343 F.3d 212, 222 (3d Cir. 2003)).

### B. Interrogatories

It is well established that "an answer to an interrogatory must be responsive to the question. It should be complete in itself and should not refer to the pleadings, or to depositions or other documents, or to other interrogatories[.]" *Russell v. FirstBank Puerto Rico*, Civ. No. 1:20-0077, 2021 WL 7709714, at *1 (D.V.I. Dec. 10, 2021) (internal quotation marks omitted). Courts have interpreted the requirement of answering each interrogatory "separately and fully in writing," Fed. R. Civ. P. 33(b)(3), as requiring a narrative response. *See, e.g.*, *Goddard Sys., Inc. v. Gould*, Civil Action No. 17-1003-CJB, 2018 WL 5919742, at *1 (D. Del. Nov. 9, 2018); *Developmental Techs., LLC v. Valmont Indus., Inc.*, Case No. 8:14-cv-2796-T-35JSS, 2016 WL 1271566, at *4 (M.D. Fla. Mar. 31, 2016). Rule 33 "contemplates objections

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 8

to interrogatories. According to the rule, a party objecting must state the grounds for each objection 'with *specificity.* Any ground not stated in a timely objection is waived unless the court, for good cause, excuses the failure.'" *Russell*, 2021 WL 7709714, at *2 (quoting Fed. R. Civ. P. 33(b)(4) (emphasis added)).

### C.  Production of Documents

Federal Rule of Civil Procedure Rule 34 governs the production of documents. With regard to responses to production requests, the rule provides, in pertinent part:

> **(B)** *Responding to Each Item.* For each item or category, the response must either state that inspection and related activities will be permitted as requested or state with specificity the grounds for objecting to the request, including the reasons. The responding party may state that it will produce copies of documents or of electronically stored information instead of permitting inspection. . . .
> **(C)** *Objections.* An objection must state whether any responsive materials are being withheld on the basis of that objection. An objection to part of a request must specify the part and permit inspection of the rest[.]

Fed. R. Civ. P. 34(b)(2)(B), and (C). As with all discovery, a party's requests may seek "any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The decision to find a waiver of objections under Rule 34 and compel production of documents are both within the sound discretion of the court. *Allen v. Banner Life Ins. Co*., 340 F.R.D. 232, 238 (D.N.J. 2022) (citing cases).

### D.  Motion to Compel

Rule 37 of the Federal Rules of Civil Procedure authorizes a party to move to compel a party to comply with discovery obligations and specifically provides that:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or

> party failing to make disclosure or discovery in an effort to obtain it without court action.

Fed. R. Civ. P. 37(a)(1). Under Rule 37, a court may issue an order compelling discovery where a party fails to answer an interrogatory under Rule 33 or fails to produce documents under Rule 34. Fed. R. Civ. P. 37(a)(3)(B)(iii), (iv). A party moving to compel discovery bears the initial burden of proving the relevance of the requested information. *Morrison v. Phila. Housing Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). "Once that initial burden is met, 'the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery (1) does not come within the broad scope of relevance as defined under Fed. R. Civ. P. 26(b)(1), or (2) is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure.'" *Prime Energy & Chem., LLC v. Tucker Arensber P.C.*, No. 2:18-CV-0345, 2022 WL 1642394, at *4 (W.D. Pa. May 24, 2022) (quoting *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573 (D. Kan. 2009)).

## II.    Interrogatories at Issue

Petro moves to compel OPTIS to supplement responses to Interrogatories 2, 3, 18, and 20-22. The Court will address each interrogatory in turn.

In <u>Interrogatory No. 2</u>, Petro asks OPTIS to "identify all your owners, members, executive officers, directors, board members, the date and place of your formation, and describe the nature of business you conduct." Dkt. No. 199 at 2. OPTIS objected that the request was "not relevant to the claim or defense of any party and is therefore beyond the scope of discovery. Further, it is not proportionate to the requirements of this case." *Id.*

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 10

Petro argues in its motion to compel that it is "clearly entitled" to learn who owns and manages OPTIS and suspects it may be Canning. Dkt. No. 199 at 2. This information, and the organizational structure, is relevant to understand the party and its potential relationship to other Defendants and witnesses in the case. *Id*. OPTIS responds that Petro has waived what it sought in the original interrogatory (seeking the identity of its owners, members, executive officers, directors, board members, the date and place of OPTIS's formation and a description of the business it conducts), as it seeks to compel only who owns and manages OPTIS. Dkt. No. 207 at 3. Further, Petro does not assert that the identity of OPTIS's owners and managers is relevant to the claims and defenses of a party; rather, it argued that it needed the information to understand who owned and controlled OPTIS, the organizational structure was relevant to understand the party and its potential relationship to other Defendants and witnesses in the case. But there are no allegations in the amended complaint or answer that makes the identity of the owners and managers relevant to the litigation. *Id.* at 3-4.

The Court will compel OPTIS to respond to this Interrogatory.  While Petro's motion to compel did refer to it being "clearly entitled" to learn who owns and manages OPTIS—and such a conclusory phrase would not support a motion to compel— Petro has made clear that the thrust of this Interrogatory is to determine whether Canning has an actual ownership interest in the company: that information is relevant to understand OPTIS and its potential relationship to witnesses and other Defendants—in particular, Canning—which may have a bearing on OPTIS's liability in this action not only as Canning's employer but if Canning is an

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 11

owner, director, or manager[2] with decision making authority. OPTIS's objection that Petro, in arguing relevance, did not invoke the terminology that its relevance was tied to "a claim or defense in this action" is, in the Court's view, a hypertechnical reading of the interrogatory. Petro argued why the information may be relevant, which comports with the Third Circuit's liberal approach in *Crozer Chester Med. Ctr.*, 2023 WL 3018280, at *2.

The Court will grant Petro's motion to compel a response to Interrogatory 2.

In Interrogatory 3, Petro asks OPTIS to detail all relationships that exist or existed between OPTIS and Canning, including the terms and conditions of his employment/agency/ contract/agreement with OPTIS, the date he was hired/retained, each position held, his assigned job duties, identify the persons he reported to in each position, and the date and reason for separation or termination, if applicable. In response, OPTIS provided Canning's job title from 2000 to December 2022, his various assignments, supervisors, and duties from 2005 to 2022. It did not object to any part of this interrogatory.

Petro asserts in its motion to compel that OPTIS provided an incomplete answer, as (1) Canning has some ownership interest and management authority with OPTIS; (2) OPTIS did not respond as to the terms of the employment or contract (and refused to produce the contract and employment documents in its response to the Demand for Production of Documents); and (3) OPTIS failed to answer that part of its request seeking OPTIS's post-

---

[2] Although OPTIS notes that there is "no issue in this case in dispute as to Canning's ability to act for OPTIS or OPTIS' responsibility for Canning's alleged actions," Dkt. No. 207 at 8, this is a legal conclusion and does not specify the facts showing in what way or ways Canning's behavior may be imputed to OPTIS, thereby making it liable.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 12

December 2022 relationship with Canning. Accordingly, OPTIS should supplement its response. Dkt. No. 199 at 4. OPTIS objects, noting that its response indicated that Canning was employed as a Technical Director from "2000 to present," thereby responding to the inquiry concerning Canning's post-2022 relationship with OPTIS; and Petro did not attempt to establish the relevancy of the terms and conditions of Canning's employment, given that the claims or defenses in this case do not involve that issue but rather the role, if any, that Canning or OPTIS played in terminating Petro's contract with IPOS. Dkt. No. 207 at 4.

Whether Canning has an ownership interest or management authority with OPTIS will be answered in OPTIS's response to Interrogatory 2. Contrary to Petro's assertion, OPTIS has responded to Canning's role with OPTIS post-2022. As to Petro's remaining inquiry concerning the terms of Canning's employment or contract with OPTIS, OPTIS did not object to the relevancy of this interrogatory in any way. Rather, it submitted its response. It cannot raise an objection now on the basis of relevancy without good cause to do so, and the Court cannot find good cause. *See Monterey Commc'ns LLC*, 2021 WL 7707265, at n.4 (quoting *Brown v. Warden Ross Corr. Inst.*, Civ. No. 2:10-cv-822, 20111 WL 1877706, at *2 (S.D. Ohio May 16, 2011) ("Rule 33 provides that any ground for objecting to an interrogatory not stated in a timely objection is waived unless the court, for good cause, excuses the failure.")).

The Court will grant the motion to compel a supplemental response to Interrogatory 3, with the limitation that OPTIS has already responded to Canning's post-2022 role with OPTIS.

In <u>Interrogatory 18</u>, Petro asked OPTIS to "describe all work done between you and any Vitol company from 2018 to the present, including the type of work, the amount of payment for the work, the scope of any such contract, and if any such contract has been terminated, the date of the termination of the work and what you believe is the reason for the termination and the names and address of persons with knowledge as to the reasons for termination." Dkt. No. 199 at 5. OPTIS objected that the interrogatory was not relevant to the claim or defense of any party and was not proportionate to the requirements of the litigation.

Petro argues in its motion to compel that this question goes to "the issue of bias and motive for testimony because of economic ties to Defendant and is discoverable." *Id.* OPTIS opposes, asserting that the bases Petro seeks this information (bias and motive) are not relevant to a claim or defense, but rather serve as impeachment evidence, and cites Rule 26(a)(1)(A)(1) and case law that impeachment matters are exempt from discovery. Dkt. No. 207 at 5. It also argues that the question is not proportional because there is no allegation that Canning or OPTIS took any action to curry favor with the Vitol Defendants; rather, Petro alleged that Canning and thus OPTIS took actions out of racial animus. *Id.* at 5-6.

Petro's explanation that the work done between the Vitol Defendants and OPTIS went to "the issue of bias and motive for testimony because of economic ties to Defendant" is hard to follow. It is unclear whose bias and economic ties, and which Defendant, is being referred to. The Court assumes Petro means that this information will show OPTIS's bias given its economic ties to Vitol. But the question is: bias regarding what? Petro's summary and conclusory rationale in support of its motion to compel does not shed any light on the

interrogatory. Apparently, Petro believes that one Defendant company's economic ties to another Defendant company suffices to show bias. But this general theory is not particularized to the claims in this case and thus is speculative.

The Court will deny the motion to compel a response to Interrogatory 18.

In <u>Interrogatory 20,</u> Petro asks OPTIS to "identify fully all facts" that support its Affirmative Defense C—that "Canning's actions and communications with other defendants were privileged and/or legally justified such that plaintiff has no cause of action" against Canning or OPTIS. Further, identify the "privileged and/or legally justified actions and communications" to which OPTIS refers, explain how and why the actions and communications were privileged and/or legally justified, and identify all persons with knowledge and provide all relevant dates. Dkt. No. 199 at 5. OPTIS objected on the grounds that this was a contention interrogatory[3] and thus premature; the request was overly broad and unduly burdensome; and as a consultant, it had a "qualified privilege[] to communicate observations and concerns to the party employing it and that party's agent, employees, and contractors without being subject to a claim for defamation." *Id.* at 5-6.

In its motion to compel, Petro argues that in the Virgin Islands, there is no such qualified privilege, citing 5 V.I.C. §§ 851-863. Further, OPTIS must identify all facts supporting this affirmative defense, not legal issues, pointing to, inter alia, *Felix v. Am. Airlines, Inc.*, No. 97-cv-0020, 2003 WL 21466922, at *2 (D.V.I. June 16, 2003) (citing Rule

---

[3] At the May 12, 2023 informal conference, OPTIS withdrew all objections based on contention interrogatories in light of *Livingston v. Bluesource LLC*, No. 19-cv-0012, 2022 WL 613277 (D.V.I. Mar. 1, 2023).

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 15

26(b)(1) for proposition that parties "are entitled to know the factual basis of the claim, defenses, or denials of their opponents"). *Id.* at 6-7. In its opposition, OPTIS contends that, as a consultant to IPOS, all of its communications with IPOS alleged to be defamatory are covered by the privilege to communicate with the company that engaged it as a consultant, and it identified the facts with particularity to show the privilege exists. Dkt. No. 207 at 6. Further, although Petro disputes that this privilege exists under Virgin Islands law, that disagreement did not mean that OPTIS had not sufficiently explained the basis for its affirmative defense, and Petro could move for summary judgment based on its understanding of the law. *Id.* At that time, OPTIS would rely on Virgin Islands cases recognizing privileges in defamation cases that go beyond those listed in the statutes. *Id.*

OPTIS focuses only on the first part of Petro's interrogatory—to identify all facts supporting its affirmative defense based on privilege, and states that it provided those facts: it was a consultant to IPOS and thus its communications with IPOS alleged to be defamatory were covered by that privilege. Dkt. No. 207 at 6. It then contends that the parties' disagreement as to the state of the VI law on this privilege may be resolved on summary judgment. *Id.* OPTIS never addresses the second part of the interrogatory—to identify the privileged communications, explain how they were privileged or legally justified, and identify the persons with knowledge.

The Court rejects OPTIS's objection. It never even identifies the "qualified privilege" it is relying on. Other courts have termed the privilege OPTIS describes as a "consultant's privilege," defined as "the privilege of a consultant or other advisor, to offer good-faith advice

to a client without fear of liability should the client act on that advice to the harm of a third person." *J.D. Edwards & Co. v. Podany*, 168 F.3d 1020, 1022 (7th Cir. 1999). It is a qualified privilege in that it is (1) "limited to advice given within the scope of the consultant's engagement" and (2) if the consultant "uses his engagement to hurt other people exclusively for his own benefit (or out of dislike of his victim) rather than for the benefit of his client— he forfeits the privilege." *Id.* at 1022, 1023. Because this case is premised on diversity, the Virgin Islands law of privilege applies. *United Coal Cos.*, 839 F.2d at 965. The section of the Virgin Islands Code that sets forth a number of different privileges does not refer to the consultant's privilege, and there are no Virgin Islands cases recognizing such a privilege. The one case cited by OPTIS—*Atl. Hum. Res. Advisors, LLC v. Espersen*, 2022 V.I. 11 ¶45 (2022)— is inapposite as it does not refer to the consultant's privilege but discusses a situation where an employer, who was required by law to publish a defamatory matter, was absolutely privileged to publish it; the case had nothing to do with discovery issues.

The Court concludes that the consultant's privilege is not recognized in the Virgin Islands and thus OPTIS cannot rely on it. But even if it were recognized, OPTIS provides no basis for the Court to find that its work for IPOS, and whatever allegedly privileged statements it was alleged to have made (which OPTIS did not specify), fell under the privilege, which is not absolute but is only qualified.

Accordingly, the Court will grant Petro's motion to compel OPTIS's response to Interrogatory 20.

In <u>Interrogatory 21</u>, Petro asks OPTIS to identify all facts supporting its Affirmative Defense F—"Plaintiff's own conduct may bar its causes of action and/or it from recovering any damages." It asks OPTIS to describe the conduct in detail, identify all persons with knowledge, and provide relevant dates. Dkt. No. 199 at 7. In <u>Interrogatory 22</u>, Petro asks OPTIS to identify all facts supporting Affirmative Defense G—"Plaintiff's claims may be barred by fraud"—and identify all persons with knowledge and relevant dates. *Id.* at 8. Although Petro included these two interrogatories in its motion to compel, and OPTIS opposed, OPTIS stated during the informal discovery conference on May 12, 2023 that it would supplement the responses to these interrogatories by June 1, 2023. That position was memorialized in the Order issued on May 15, 2023. Dkt. No. 196. The Court will therefore deny the motion to compel as to these two interrogatories as moot. However, given that the parties are litigating these two interrogatories, it is not clear whether OPTIS had in fact supplemented its responses to these Interrogatories by the June 1, 2023 deadline. If OPTIS has not done so, it must respond by *specifically identifying* the relevant facts by June 9, 2023.

### III. Demands for Production at Issue

Petro moves to compel Defendant OPTIS to supplement responses to its Demands for Production 2, 6, 7, 9, 10, 29, 32-37. The Court will address each demand in turn.

In <u>Demand for Production 2</u>, Petro seeks a copy of OPTIS's organization documents. Dkt. No. 199 at 8. OPTIS objected that this was not relevant to the claim or defense of any party. *Id.* Petro argues in its motion to compel that it is entitled to learn what kind of organization OPTIS is, the chain of command of who Canning reported to and who reported

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 18

to him, citing case law on relevance and full and fair discovery. Dkt. No. 199 at 9. OPTIS objects that its organizational chart is not relevant to a claim or defense and incorporates its response to Interrogatory 2.

For the same reasons the Court granted the motion to compel a response to Interrogatory 2, the Court will also grant the motion to compel a response to Demand for Production 2 regarding OPTIS's organizational chart, as it is relevant to Canning's decision-making authority on behalf of OPTIS and both OPTIS's and Canning's liability on all of the claims.[4] In addition, the Court notes that discovery of organizational charts is frequently allowed. *See Hartsock v. Goodyear Dunlop Tires N. Am. Ltd.*, No. 2:13-CV-00419-PMD, 2013 WL 6919715, at *9 (D.S.C. Nov. 22, 2013), *aff'd sub nom. Hartsock v. Goodyear Tire & Rubber Co.*, No. 2:13-CV-00419-PMD, 2014 WL 51237 (D.S.C. Jan. 7, 2014) (citing cases).

In Demand for Production 6, Petro seeks copies of all contracts and/or agreements between OPTIS and Canning. OPTIS objects that it is not relevant to the claim or defense of any party. Dkt. No. 199 at 9. In its motion to compel, Petro argues that the contract between OPTIS and Canning is "relevant as to the contractual relationship as to actions taken by Canning and what authority he had, [and] what his duties were." *Id.* at 10. OPTIS opposes, referring to Interrogatory No. 3 that acknowledged Canning was employed by OPTIS as a Technical Director from 2000, and in that capacity provided consulting services to IPOS and Vitol VI Corp. Dkt. No. 207 at 8. Accordingly, "there is no issue. . . in dispute as to Canning's

---

[4] Although the Demand for Production seeks OPTIS's organizational "documents," which to the Court would mean its by-laws and articles of incorporation, that is not what Petro is actually seeking, as shown in its motion to compel.

ability to act for OPTIS or OPTIS' responsibility for Canning's alleged actions." *Id.* Further, to

the extent Petro argues that a lack of a dispute over a claim does not make the evidence less

relevant, then proportionality rules take over, where nothing is served and Rule 1 is violated,

by compelling a party to respond to discovery on an issue not in dispute. *Id.*

The Court concludes that OPTIS's contract with Canning is relevant, as it would set

forth, as Petro says, Canning's duties, his authority on behalf of OPTIS, and responsibilities,

which may clarify the liability for both Defendants for particular claims. The fact that OPTIS

acknowledges that there is no dispute regarding Canning's ability to act for OPTIS is beside

the point: that is OPTIS's legal conclusion and is not responsive to a discovery request

seeking relevant documents. Petro is entitled to discover the facts upon which OPTIS's

conclusion is based. OPTIS provides no case law to support its position that an alleged

violation of Fed. R. Civ. P. 1 is sufficient to deny a request for discovery/motion to compel

and does not explain how "proportionality" comes into play, particularly when this is a very

discrete inquiry.

The Court grants Petro's motion to compel a response to Demand for Production 6.

In Demand for Production 7, Petro seeks a copy of Canning's personnel file. OPTIS

objects that it is not relevant and contains information of a personal nature irrelevant to the

claim or defense of any party. Dkt. No. 199 at 10. In its motion to compel, Petro argues that

OPTIS is being sued as the employer of Canning, who was discriminatory towards Petro,

interfered with Petro's contract, and defamed Petro. The amount of supervision and what

prior notice OPTIS had is relevant as is the personnel file. Petro adds that at the informal

discovery conference regarding Canning's refusal to produce these documents, Canning

suggested they should be obtained from OPTIS, and now OPTIS refuses to provide it. *Id.*

OPTIS objects, stating that Petro failed to show how Canning's personnel file is relevant to

its claims for interference with contract and defamation against OPTIS, particularly given

privacy concerns relating to personnel files. Dkt. No. 207 at 8. OPTIS posits that Petro could

have fashioned a narrower request for categories of documents in the file, but it is not

OPTIS's or the Court's obligation to do so. *Id.* at 9-10.

> Case law is clear that

>> [a]lthough personnel files are discoverable, they contain confidential information and discovery of them should be limited. *See, e.g., Reagan-Touhy v. Walgreen Co.,* 526 F.3d 641, 648 (10th Cir. 2008) ("Personnel files often contain sensitive personal information . . . and it is not unreasonable to be cautious about ordering their entire contents disclosed willy-nilly. . . . This is not to say personnel files are categorically out-of-bounds."); *Miles v. Boeing Co.,* 154 F.R.D. 112, 115 (E.D. Pa. 1994) ("[P]ersonnel files are confidential and discovery should be limited.").

*Bakhtiari v. United States*, No. 3:18-CV-38, 2018 WL 11472382, at *1–2 (M.D. Pa. July 31,

2018). Often, litigation surrounds whether personnel files of *non-parties* are discoverable,

but that is not the case here where the requested discovery concerns the file of a *party*. The

Court agrees that it is relevant to OPTIS's knowledge of Canning's behavior over the years,

and whether he exhibited behavior that was relevant to the claims at issue here. While OPTIS

objected that unspecified information of a personal nature contained in the file was not

relevant—a point with which the Court agrees—it did not initially object that the request for

the file was not so narrowly tailored that the Court would have to essentially rewrite Petro's

discovery request.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 21

The Court will grant the Demand for Production 7, with the caveat that OPTIS shall redact information of a personal nature (for example, health insurance information, tax withholding information, doctor's notes justifying absences—items that OPTIS noted contained irrelevant and/or confidential information) that has no bearing on any of the claims against either OPTIS or Canning in this action.

In Demand for Production 9, Petro seeks all documents/communications between OPTIS or anyone on OPTIS's behalf and any Co-Defendant concerning the credentials or qualifications of Petro and/or its employees. OPTIS responded that "[a]ll such documents in the possession or control of OPTIS were previously produced by Andrew Canning." Dkt. No. 199 at 10. In its motion to compel, Petro asserts that, at the informal discovery conference between Petro and OPTIS, OPTIS indicated that it had produced a spreadsheet that identified the documents responsive to this demand. Petro asserts this was a "misrepresentation" and describes 619 documents, mostly relating to timesheets, and contends that none of them discussed the credentials or qualifications of Petro or its employees, and OPTIS should supplement its response. Dkt. No. 199 at 10-14.

OPTIS responds that its spreadsheet identified 79 responsive documents, but Petro complains that 38 were not responsive and ignores the remaining 41 documents. It engaged a computerized discovery vendor to process the large number of documents at issue in discovery who identified potential search terms and coded them to document requests. The computer-generated queries were necessarily overinclusive and used wildcards in search terms to identify documents not directly responsive to the request. But OPTIS fully

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 22

responded to the request, erring on the side of caution, and there is nothing to compel. Dkt. No. 207 at 11.

OPTIS never objected to producing documents responsive to this request, noting that they were produced by Canning. Its objection to the motion to compel is that it produced everything, even documents that may be overinclusive, given the coding used by its vendor. It does not respond to Petro's point that many of the documents are not responsive.[5] Moreover, this is the only discovery request that Petro singles out where the spreadsheet did not provide responsive documents. It appears to the Court that this is a coding problem, and OPTIS should require its discovery vendor to create different search terms such that the documents produced will be responsive.[6] Accordingly, the Court grants the motion to compel, and orders OPTIS to supplement its discovery response to Demand for Production 9 by producing documents responsive to this demand.

In <u>Demand for Production 10</u>, Petro seeks a "complete copy of any file maintained" by OPTIS concerning Petro. OPTIS objects that the request is overly broad and burdensome as any file containing Petro's name arguably "concerns" Petro, but that does not make the file relevant to the claim or defense of any party. Dkt. No. 199 at 14. In its motion to compel, Petro argues that, according to the spreadsheet, OPTIS did not produce a single document responsive to this demand. It also contends that boilerplate and blunderbuss objections are

---

[5] It is unclear to the Court how the parties can have such widely divergent numbers of documents that they each say the spreadsheet showed was responsive to this request.

[6] For example, OPTIS's explanation its responses were "overinclusive" does not cover blank documents.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 23

unacceptable, and the party must demonstrate specifically how each item is objectionable by offering evidence revealing the nature of the burden. *Id.* at 14-15. OPTIS objects that, by using the filter function on spreadsheet, 153 records were identified as responsive to this demand. Dkt. No. 207 at 11.

The Court accepts OPTIS's representation that the use of the filter function on the spreadsheet will yield its response to this demand and will deny the motion to compel a response to Demand for Production 10.

In <u>Demand for Production 29</u>, Petro seeks copies of "all communications between you and any insurance company concerning in any manner the claims and/or defenses in this matter, including any denial of coverage or reservation of rights letters." OPTIS objected to the extent that the demand "seeks communications between OPTIS's insurance company and either OPTIS or OPTIS's counsel that contain the mental impressions of OPTIS's counsel or his legal advice as to the claims and defenses in the case. OPTIS is withholding all such documents on the grounds of privilege." Dkt. No. 199 at 15. Petro argues in its motion to compel that OPTIS failed to provide a privilege log; reporting a claim and insurance companies' regular communication as to the claim is not privileged, whether or not an attorney reported the claim or told the Defendant to report the claim. In addition, courts require a detailed showing to withhold discovery on privilege grounds, and that failure to produce a privilege log may be deemed a waiver of the privilege (citing cases). *Id.* at 15-16. OPTIS responds that the Federal Rules "do not require a [privilege] 'log' per se" and do not even use the word "log": they merely require that the claim of privilege be expressly made

and that it describes the "nature of the documents" so that other parties can assess the claim. Dkt. No. 207 at 11-12 (quoting Fed. R. Civ. P. 26(b)(5)(A)(ii)). Here, OPTIS identified the nature of the documents, which contained counsel's mental impressions or legal advice, which "sufficiently identifies the nature of the communications in question such that it is possible to ascertain the basis for the privilege." *Id.* at 12. A communication from an attorney that describes the attorney's mental impressions and legal advice is still privileged even if it is a first report to the insurer of the claim. *Id.*

It appears that counsel is invoking the work-product privilege, given that his use of the term "mental impressions" hearkens to work-product, although "legal advice" would appear to invoke attorney-client privilege.[7]

In any event, OPTIS misstates the request: Petro was not asking for OPTIS to produce communications between OPTIS's insurance company and OPTIS's counsel, but only

---

[7] Conclusorily stating "legal advice," without any further description of the document sought to be protected, is not sufficient to invoke the attorney client privilege, which requires the privileged document to be "a communication made between privileged persons in confidence for the purpose of obtaining or providing legal assistance for the client*." Samuel v. Century ill, Inc.*, No. ST-2018-cv-00441, 2021 WL 1564723, at *3 (V.I. Super. Apr. 5, 2021). OPTIS not only did not name what possible documents may have been responsive, but did not explain how any such documents fit within the privilege. In addition, "attorney-client privilege does not shield documents merely because they were transferred to or routed through an attorney. What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." *SmithKline Beecham Corp. v. Apotex Corp.*, 232 F.R.D. 467, 478 (E.D. Pa. 2005) (internal quotation marks and citations omitted). To the extent OPTIS cited attorney-client privilege in opposition to this demand, the Court rejects its position.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 25

communications between the insurance company and OPTIS: in other words, business records. By equating all communications between OPTIS and its insurance company with communications between OPTIS's counsel and the insurance company, OPTIS has swept all communications under a privilege rug and has produced nothing. It has claimed privilege by stating that all the documents somehow passed through the attorney's review, without any attempt at differentiation. If that was sufficient to bar the production of documents, attorneys might be inclined to use such an all-encompassing approach to escape their discovery obligations.

But that is not what the law allows. The Third Circuit has cautioned courts to eschew any such categorical approach that either cloaks or rejects privilege in a wholesale fashion without regard to the specific content of particular documents. Instead, "claims of . . . privilege must be asserted document by document, rather than as a single, blanket assertion." *United States v. Rockwell Int'l,* 897 F.2d 1255, 1265 (3d Cir. 1990). While the Federal Rule governing work product does not explicitly require a privilege log, it does require that the party resisting production "describe the nature of the documents. . . in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the claim." Fed. R. Civ. P. 26(b)(5)(A)(ii). However, many courts in the Third Circuit "have always held that a privilege log is required to assert objections on the basis of privilege and that boilerplate or general obligations are disfavored and do not preserve an objection." *Reynolds v. Slippery Rock Univ. of PA*, No. 18-1571, 2021 WL 796029, at *5 (W.D. Pa. Mar. 2, 2021); *see Graham v. Progressive Direct Ins. Co.*, No. CV 09-969, 2010 WL

11469535, at *4 (W.D. Pa. Nov. 1, 2010) ("Rule 26(b)(5)(A)(ii) requires that a party raising

a privilege as a defense to production do so in a privilege log . . . . The purpose of the privilege

log is to allow opposing counsel and, if necessary, the court to determine the basis of the

claim.") (internal quotation marks and citations omitted). Cases uniformly hold that the

party asserting work product exemption from discovery must provide a "*detailed description*

of the materials in dispute and state specific and precise reasons for their claim of protection

from disclosure." *Monterey Communc'ns*, 2021 WL 7707265, at *3 (internal citations

omitted). The withheld documents should be identified in sufficient detail to "permit a

judgment as to whether the document is at least potentially protected from disclosure."

*Farkas v. Rich Coast Coffee, Corp.*, No. 1:14-CV-272, 2016 WL 4611427, at *4 (M.D. Pa. Sept. 6,

2016). That did not happen here. The Court rejects OPTIS's view that it need only give a

vague description that the communications withheld contain counsel's "mental impressions

or his legal advice" as being sufficient to describe the nature of the communications and thus

enables the opposing party to assess the claim.

      In a related context where parties have sought discovery of insurance files in a case,

courts balance the business exigencies with the legal aspects, as explained in *Solano-Sanchez

v. State Farm Mut. Auto Ins. Co.*, No. CV 19-4016, 2021 WL 229400 (E.D. Pa. Jan. 22, 2021).

With respect to such insurance files, it is well-settled that:

> [M]aterials prepared in the ordinary course of business are not protected. *See
> Martin v. Bally's Park Place Hotel & Casino*, 983 F.2d 1252, 1260 (3d Cir. 1993);
> *see also Mattison v. Imbesi*, 1998 WL 720061, at *2 (E.D. Pa. Oct. 6, 1998) ("it is
> equally clear that Rule 26(b)(3) was not intended to protect all insurance claim
> files from discovery") (citation and internal quotation marks omitted). Because
> insurance companies are required to evaluate claims made by their insureds in

the ordinary course of their business, "discovery disputes involving an insurance company's claims file often present problems for the parties." *Borgia v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 4375643, at *3 (E.D. Pa. Sept. 3, 2014)(citing *Garvey v. Nat'l Grange Mut. Ins. Co.*, 167 F.R.D. 391, 394 (E.D. Pa. 1996)). An insurance company "cannot reasonably argue that the entirety of its claims files are accumulated in anticipation of litigation when it has a duty to investigate, evaluate[,] and make a decision with respect to claims made on it[.]" *Shaffer v. State Farm Mut. Auto. Ins. Co.*, 2014 WL 931101, at *2 (M.D. Pa. Mar. 10, 2014) (citation omitted)[.]

*Id.* at *7. Here, OPTIS provided no basis for the Court to conclude that OPTIS's attorney prepared any materials relating to the insurance policy in anticipation of litigation. *In re Processed Egg Prod. Antitrust Litig.*, 278 F.R.D. 112, 119 (E.D. Pa. 2011). Having failed to carry its burden that the work product privilege applied, the Court will grant Petro's motion to compel Demand for Production 29.[8]

In <u>Demand for Production 32</u>, Petro requests "any and all joint defense agreements between [OPTIS] and Co-Defendants Island Project & Operating Services, LLC, Vitol US Holding Col, Vitol Virgin Islands Corp. and Andrew Canning applicable to this litigation." OPTIS objects that the request is overly broad, not relevant to any claim or defense, subject to the community of interest privilege, and is not discoverable. It disclosed that it is party to a "Common Interest and Confidentiality Agreement" effective September 28, 2021, which it joined on January 4, 2023. The other parties to the agreement are the two Vitol Defendants, IPOS, and Canning. Dkt. No. 199 at 16-17.

---

[8] In the alternative, the Court concludes that OPTIS waived protection of the privilege by failing to properly object. *Monterey Commc'ns,* 2021 WL 7707265, at *5

Petro argues in its motion to compel that it is entitled to the production of this agreement to "show bias and reasons for positions taken by Defendants," given that courts have found that "indemnification agreements" between co-defendants, including agreements regarding payment of defense fees and costs, are relevant to credibility issues and a proper subject of discovery (citing case law concerning indemnification agreements). *Id*. at 17. In its objection, OPTIS asserts that it followed the teachings of *Ford Motor Co. v. Edgewood Properties, Inc.*, 257 F.R.D. 418, 428 (D.N.J. 2008), disclosed that it was a party to such an agreement, the effective date, the date it joined, and the other parties, which gives Petro all the information it needs to attack the credibility of the parties. Dkt. No. 207 at 12-13. Further, the agreement contains "standard boilerplate language" and the only language specific to the litigation contains a "generalized description of the allegations" in the complaint. *Id*. at 13. OPTIS has no objection to submitting the document for in camera review by the Court, as was done in *Ford Motor Co*. *Id*.

Petro appears to conflate indemnification agreements (the subject of Request for Production 33) with joint defense agreements, given that the rationale and case law Petro cites in support of its position refer to indemnification agreements in which a party may agree to indemnify another party found liable for damages. Nevertheless, Petro's rationale that such an agreement may show bias and provide insight into the reasons the Defendants have taken certain positions does meet its burden to have the agreement produced. In *Teleglobe USA v. BCE, Inc. (In re Teleglobe Communications Corp.)*, 493 F.3d 345 (3d Cir 2007), the Third Circuit suggested that attorney participation was required to give effect to a

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 29

community of interest privilege (also termed a joint defense privilege), stating that this privilege "allows attorneys representing different clients with similar legal interests to share information without having to disclose it to others." *Id.* at 364. "To be eligible for continued protection, the communication must be shared with the *attorney* of the member of the community of interest." *Id.* The Circuit also reasoned that "[t]he attorney-sharing requirement helps prevent abuse by ensuring that the common-interest privilege only supplants the disclosure rule when attorneys, not clients, decide to share information in order to coordinate legal strategies." *Id.* at 365; *Sandoz Inc. v. Lannett Co., Inc.,* 570 F. Supp. 3d 258, 269 (E.D. Pa. 2021). Generally, to rely on the joint-defense privilege, a party must establish three elements: "(1) [T]he communications were made in the course of a joint defense effort, (2) the statements were designed to further the effort, and (3) the privilege has not been waived." *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 28 (1st Cir. 1989) (internal quotation marks and citation omitted).

Other than invoking the privilege, OPTIS makes no assertions that the parties have similar legal interests, that only the attorneys have shared information with each other, that the communications were designed to further the joint defense effort, or that the privilege has not been waived. *Id.* It is thus impossible for the Court to determine whether the agreement in fact falls under the privilege. The Court will adopt OPTIS's suggestion that it submit the agreement in camera, similar to the procedure followed in *Ford Motor Co.* If the agreement contains "standard and boilerplate language," that is not discoverable because it is not relevant to any claim or defense. *Ford Motor Co.*, 257 F.R.D. at 428. Accordingly, the

Court will require OPTIS to forward a copy of the joint defense agreement to the Court's email box (Judge_Henderson_Chambers@vid.uscourts.gov) on or before **June 8, 2023** for in camera review).

In Demand for Production 33, Petro asks OPTIS to produce "any and all indemnification agreements" between OPTIS and all co-Defendants applicable to this litigation. OPTIS responds that, "[e]xcept to the extent that the contracts produced in response to Request No. 4[9] contain an indemnity agreement, there are no such documents." Dkt. No. 199 at 17. In its motion to compel, Petro argues that OPTIS is required to produce any indemnification agreement as it can be relevant to credibility issues, citing the case law set forth in its argument in Demand for Production 32. *Id.* at 18. OPTIS responds that it produced all documents containing an indemnification agreement. Dkt. No. 207 at 13.

Discovery of indemnification agreements is usually relevant in insurance actions or in actions where there is a question concerning who is paying a party's legal fees, as such agreements "may show potential bias or prejudice of adverse parties." *Concepcion v. City of New York,* No. 05-Civ-8501, 2006 WL 2254987, at * 4 (S.D.N.Y. Aug. 4, 2006). But even in *Concepcion*, the court required the defendants to produce only the paragraph entitled "Terms of Indemnity" from that agreement. *Id*. OPTIS states that it has produced any indemnification agreements in response to Request for Production 4. Petro has not moved

---

[9] In Demand for Production 4 (not at issue in the motion to compel), Petro sought copies of all contracts and agreements evidencing any relationships between OPTIS and co-Defendants concerning services at the Virgin Islands WAPA facilities. Dkt. No. 199-2 at 3.

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 31

to compel concerning that request. Accordingly, the Court will deny the motion to compel Demand for Production 33.

In <u>Demand for Production 34</u>, Petro asks OPTIS to "produce copies of all documents, communications, and demonstrative evidence which support your denial of any of the allegations in Plaintiff's Complaint." OPTIS objected that this was a premature contention interrogatory; Petro was "attempting to gain the benefit of Canning's counsel's evaluation of documents and such evaluation is privileged work product"; and any document Canning[10] produced as part of his disclosures were potentially supportive of his denials of the complaint's allegations and were equally available to Petro and its counsel for them to make their own assessment of the evidentiary value of each document. Dkt. No. 199 at 18.

In its motion to compel, Petro argues that parties are entitled to receive documents supporting OPTIS's denial of allegations or affirmative defenses. *Id.* at 19. Optis objects that the amended complaint contained 89 paragraphs, OPTIS admitted 12 of them and, "in a single blunderbuss request for production, plaintiff seeks every single document that supports the denials of any of the remaining 77 paragraphs of the complaint." Dkt. No. 207 at 13. It nevertheless produced all such documents. *Id.*

Petro does not acknowledge receipt of any documents in response to this Demand for Production, but merely asserts the general proposition that it is entitled to documents

---

[10] At the informal conference, OPTIS acknowledged this was an error; it meant to write OPTIS, not Canning.

supporting affirmative defenses. The Court accepts OPTIS's statement that it has produced

such documents. It therefore denies Petro's motion to compel Request for Production 34.

<u>Demands for Production 35, 36, 37:</u> In Demand for Production 35, Petro asks OPTIS

to produce "all documents, communications and demonstrative evidence" supporting its

Affirmative Defense C—that "Canning's actions and his communications with the other

defendants in this matter were privileged and or legally justified such that plaintiff has no

cause of action against Canning or against OPTIS." In Demand for Production 36, Petro asks

OPTIS to produce "documents, communications, and demonstrative evidence" that support

OPTIS's Affirmative Defense F—that "Plaintiff's own conduct may bar its causes of action

and/or it from recovering any damages." In Demand for Production 37, Petro asks OPTIS to

produce "all documents, communications, and demonstrative evidence" that support

OPTIS's Affirmative Defense G—that "Plaintiff's claims may be barred by fraud." Although

OPTIS objected on various grounds and Petro moved to compel, OPTIS has stated in its

Opposition to the Motion to Compel that it would "supplement its response to these requests

in the light of the *Livingston v. Blue Source* decision." Dkt. No. 207 at 14.

The Court considers the motion to compel responses to the Demands for Production

35-37 resolved, given that OPTIS has pledged to supplement, and will deny the motion as

moot with regard to these demands. The Court adds, however, that OPTIS's supplemental

responses must *specify* which documents are actually responsive to each demand.

## CONCLUSION

Accordingly, based on the reasoning above, it is hereby **ORDERED**:

*Petro Indus. Solutions v. IPOS*
1:21-cv-00312-WAL-EAH
Order
Page 33

1.  Plaintiff's Motion to Compel, Dkt. No. 199, is **GRANTED IN PART** and **DENIED IN PART**.

2.  The Motion to Compel is **GRANTED** as to Interrogatories 2, 3 (with a limitation), and 20, and Demands for Production 2, 6, 7 (with a limitation), 9, and 29.

3.  Plaintiff's Motion to Compel is **DENIED** as to Interrogatory 18, and Demands for Production 10, 33, and 34.

4.  The Motion to Compel is **DENIED AS MOOT** as to Interrogatories 21 and 22, and Demands for Production 35, 36, and 37. However, OPTIS's supplemental responses must *specifically identify* which facts and documents are responsive to which Interrogatories/Demands.

5.  OPTIS shall send the "Common Interest and Confidentiality Agreement," as set forth in Demand for Production 32, to the Court's Chambers email box, (Judge_Henderson_Chambers@vid.uscourts.gov) on or before **June 8, 2023** for in camera review).

6.  OPTIS shall produce responses or supplement its responses to the Interrogatories and Demands for Production that the Court has ordered it to produce, on or before **June 9, 2023**.

ENTER:

Dated: June 7, 2023

/s/ Emile A. Henderson III
EMILE A. HENDERSON III
U.S. MAGISTRATE JUDGE