IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>　　　　　PLAINTIFF,<br><br>　　v.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), ET AL.,<br><br>　　　　　DEFENDANTS. | CASE NO. 1:21-CV-00312 |

### DEFENDANTS OPTIS EUROPE, LTD., AND ANDREW CANNING STATEMENT OF UNDISPUTED MATERIAL FACTS

**NOW COMES** Defendants OPTIS Europe, Ltd. ("OPTIS") and Andrew Canning ("Canning") and submit this statement of undisputed material facts in support of their motion for summary judgment.

1. At all relevant times, Petro was a legal entity organized under the laws of the Territory and not a natural person. *See* Second Amended Complaint ("SAC"), ¶1.[1]

2. At all relevant times, IPOS was under contract with Vitol Virgin Islands Corp. (VVIC) to manage and operate the WAPA Propane Facilities on St. Thomas and St. Croix (the "WAPA Facilities"). SAC, ¶17.

---

[1] For purposes of summary judgment only, OPTIS and Canning accept the allegations of the SAC that are cited in this Statement of Undisputed Material Facts as true.

3. At all relevant times, VVIC owned the propane facilities adjacent to WAPA's Randolph Harvey Power Plant (STT) and Richmond Power Plant (STX). SAC ¶20.[2]

4. From September 2016 until October 31, 2020, OPTIS, through Andrew Canning, provided operational support consulting services relating to the WAPA Facilities to IPOS. *See* Exh. A, Canning Declaration, ¶¶4-6.; *see also* SAC ¶¶24-26.

5. From November 1, 2020, until November 20, 2022, OPTIS had a consulting agreement with Vitol Virgin Islands Corp. for similar operational support consulting services relating to the WAPA Facilities. Exh. A, Canning Declaration, ¶5; *see also* SAC ¶¶18, 24-25.

6. At all relevant times, Defendant Andrew Canning ("Canning") was an employee of OPTIS. *See* SAC ¶26; see also Exh. A, Canning Declaration, ¶6.

7. Canning is a mechanical engineer and was the individual who provided OPTIS's operational support consulting services relating to the WAPA Facilities. *See* Exh. D, Canning Response to Interrogatories # 1 – 3; *see also* Exh. E; SAC ¶¶24-25.

8. As part of Canning's job duties, Canning would report observations to IPOS General Management regarding maintenance and repair work and asset

---

[2] The allegations of the SAC state that the propane facilities are "known as the Randolph Harvey Power Plant and Richmond Power Plant." It is more accurate to state that VVIC owned the propane facilities *adjacent to* those power plants. This error is not material to the motion for summary judgment and OPTIS/Canning have corrected it for accuracy purposes only.

improvement activities (projects). Canning's duties included reporting on issues of safety and integrity and offering technical support as needed. Exh. D, Resp. to Interrogatories # 5.

9. In April 2018, IPOS and Petro entered a maintenance support contract that specified that it was terminable for any reason, including "convenience," with 30-days' written notice. *See* Ex. B ("the First IPOS-Petro Contract").

10. Canning was aware of and had read the First IPOS-Petro Contract. *See* Ex. A, Canning Declaration, ¶7.

11. On or about September 1, 2019, IPOS and Petro replaced the First IPOS-Petro Contract with a new contract that was not terminable-at-will and which had a minimum initial term of five years. *See* Ex. C ("the Second IPOS-Petro Contract").

12. Neither Canning nor OPTIS were aware of, or had ever seen, the Second IPOS-Petro Contract until it was produced in this litigation, long after IPOS had terminated its contractual relationship with Petro. Both Canning and OPTIS believed that the First IPOS-Petro Contract remained in full force and effect up until the time that IPOS terminated its contract with Petro on July 28, 2021. *See* Ex. A, Canning Declaration, ¶¶8-9.

13. Neither OPTIS nor Canning were parties to the maintenance support contract between IPOS and Petro. *See* Ex. B & C.

14. Neither OPTIS nor Canning had any approval or decision-making authority over the bidding or selection process for projects at the WAPA Facilities. See Exh. D, Resp. to Interrogatory No. 5

15. Neither OPTIS nor Canning had any approval or decision-making authority over the payment of Petro invoices. Exh. D, Resp. to Interrogatory Nos. 5 and 16.

16. Canning's alleged false claim in Paragraph 43 of the SAC (alleging that Canning falsely claimed Petro had stolen valuable information from Plaintiff's supplier, Traeger Brothers). was actually a criticism leveled at Traeger Brothers for *it* improperly providing information to Petro and how such information could unfairly compromise the bidding process. Exh. A, Canning Declaration, ¶10; *see also* Exh. D, Resp. to Interrogatory No. 14.

17. Canning never made the claim described in Paragraph 43 of the SAC and specifically never accused Petro of stealing anything from Traeger Brothers. Exh. A, Canning Declaration, ¶11; *see also* Exh. D, Resp. to Interrogatory No. 14.

18. Canning did, in fact, fall through a platform at a WAPA Facility on February 11, 2021, that Petro was responsible for fabricating. ") *See* SAC ¶58; *see also* Exh. A, Canning Declaration, ¶12.

19. IPOS investigated the suitability and veracity of Petro's Welder Certificates, or WPS and WPQ, for compliance with Industry standards. *See* Exh. D, Resp. to Interrogatory Nos. 10 and 17; *see also* SAC ¶¶62-66, 74-75, 82-94.

20. After investigation, IPOS concluded Petro's Welder Certificates, or WPS and WPQ, did not meet Industry standards and were unacceptable. *See* Exh. D, Resp. to Interrogatories #10 & #17

21. Petro's deficient Welder Certificates were a breach of their agreement with IPOS. *See* Exh. C.

22. On July 20, 2021, Canning advised IPOS that "I am now as certain as I can be that the welders certification (WPQ) presented by Petro Industrial Services are not genuine." Exh. G, Bates # IPOS 007845.

23. Exhibit H, consisting of PIS000186 through PIS000192, are true copies of the WPQ records presented by Petro Industrial Services that Canning referred to in Exhibit G.

24. The WPQs referenced in Exh. H indicated that Guillermo Castro conducted the welding tests and that Acuren Inspection Services conducted the Mechanical Tests.

25. Canning spoke with Doug Rice of Acuren Inspection Services on or about July 20, 2021, and was advised that it had no record of Castro as a current or recent employee of Acuren. Exh. A, Canning Declaration, ¶14..

26. Petro now admits that Castro did not work for Acuren at the time he supposedly administered the welding tests. Exh. I, Deposition of Petro at 138:18-21.

27. Petro admits that at the time it received the WPQs referenced in Exh. H, it knew that Castro did not work for Acuren. Exh. I, Deposition of Petro at 146:2-6.

28. In responding to a subpoena dues tecum served by VVIC and Vitol US Holding, Co., Acuren's Doug Rice testified in a declaration that Acuren had no records of Petro ever being a client, it could not locate any records of conducting welding tests for Petro's welders, and Castro did not hold a Level III certification as depicted on the qualification testing records. Acuren further testified that the welder qualification testing records provided as exhibits to the subpoena did not originate from Acuren.[3] Exh. J (Declaration of Doug Rice).

29. Canning had begun looking into the welding certification of the Petro welders because of "the number of defects in the welds for the replacement 3-inch stainless steel vent lines from the WAPA gas turbines." Exh. G, IPOS 007846.

30. As Canning explained at the time, "the lack of quality assurance compromises the integrity of the asset not only for this work but all other fabrication undertaken by this particular team and possibly other previous fabrications undertaken by PIS 'certified welders.' Even worse is the potential affect [sic] on the supply of propane to WAPA which could require a full stoppage during the replacement of the compromised systems." *Id*.

---

[3] The welding testing records served with the subpoena duces tecum to Acuren are the records produced by Petro in discovery. *See* Exh. H.

31. After Canning informed IPOS of his concerns on July 20, 2021, he was informed by IPOS that it would investigate the matter. Ex. A, Canning Declaration, ¶13.

32. Canning had no involvement in IPOS's investigation. *Id.*, Canning Declaration, ¶¶13, 15.

33. IPOS did indeed investigate the concerns over the WQS. It began by asking Petro on July 22, 2021, to provide copies of the welding test records. *See* Exh. F at IPOS 006026.

34. Canning was not included in the email requesting the welding test records. *Id.*

35. Petro provided IPOS with copies of "welders' quals" on July 22, 2021, and did not copy Canning on the email forwarding the welders' quals. Exh, F at IPOS 006025—006026.

36. In response to Petro's email with the welders' quals, IPOS responded by informing Petro that its Global Technical Director was asking for detailed records consisting of:

    - Approved Welding Procedures (stamped by third party would be my recommendation —Notified Body in Europe —where ASME is followed the equivalent is Authorized Inspection Agency I think)
        - Welding procedures to be representative of the work that would be carried out
    - Submit Quality control documentation that they plan to follow during the project
        - Inspection and Test Plan (ITP)
        - Material certificates and traceability records
        - Daily records (for welding, fitting, visual inspection, pressure test etc)
        - Welding maps and welding monitoring and finished welding records

- Any internal inspections carried out (separate to the third party ones) —see previous to last bullet point below
- Record and Certificates for consumables (gases, electrodes etc)
- Documentation of Welding procedures utilized in the project and valid welder certificates for anyone on the site
- NDT reports received from third party
- Pressure testing report

*See* Exh. F at IPOS 006026; *see also* Exh. D, Resp. to Interrogatories #10.

37. Canning was not involved in preparing the above request for information and was not copied on the email from IPOS to Petro requesting that information. *See* Exh. F at IPOS 006026.

38. On July 23, 2021, IPOS informed Petro that its Global Technical Director was reviewing the documentation Petro had provided and that he would be following up with requests for more specific information. Canning was not included in this email. Exh. F, at IPOS 006024.

39. On July 26, 2021, IPOS informed Petro that its Global Technical Director was still awaiting the "Full inspection and test plan"; "Daily records (for welding, fitting, visual inspection)"; and "Welding and mechanical tests of WPQs." Exh. F at IPOS 006023.

40. Canning had not been involved in preparing the above request for information and was not copied on the email from IPOS to Petro requesting the information that IPOS's Global Technical Director was "still awaiting." *See* Exh. A, Canning Declaration ¶17.

41. That same day, Petro responded and admitted that it did not have the requested records but offered that "All welders could be re-qualified under IPOS/VTTI supervision via X-ray or PAUT if need be." Exh. F, IPOS 006023.

42. On July 27, 2021, IPOS requested alternative information in lieu of the information that Petro had indicated on July 26, 2021 it could not provide. Exh. F at IPOS 006022—006023.

43. The alternative information included a request that since Petro's Adrian Melendez had signed the WPQs on behalf of Acuren/Castro, Petro provide the report/certification/document from Acuren/Castro that allowed Melendez to sign the WPQs. Exh. F at IPOS 006022.

44. Petro's response to the request for proof that Melendez was authorized to sign was to provide an unsigned letter from Castro. Exh. F at IPOS 006022.

45. As IPOS noted internally, "Interestingly the Letter is not signed, even so the test records weren't saved. In my view, the Letter does not support WPQ provided. On the Welding Procedures I am not sure why those weren't attached if they had them." Exh. F at IPOS 006021.

46. On July 28, 2021, IPOS's Global Technical Director wrote in an internal IPOS email, "We gave opportunities for [Petro] to come forward with the required documentation. They have not done so. Believe we should exclude them from future pipe modification and repair works." Exh. F at IPOS 006021.

47. The Global Technical Director identified his concerns and concluded that IPOS should "start working immediately in securing a competent electromechanical contractor." Exh. F at IPOS 006021.

48. IPOS's David Smith responded to the Global Technical Director on July 28, 2021, indicating that IPOS "had reached consensus agreement already yesterday." Exh. F at IPOS 006021.

49. IPOS terminated its contractual relationship with Petro on July 28, 2021, relying upon paragraph 6 of the Second IPOS-Petro Contract. *See* Exh. C, IPOS 000003-000004.

50. Canning was not aware that IPOS intended to terminate the contract with Petro until after IPOS had informed Petro that it was terminating the contract. *See* Exh. A, Canning Declaration, ¶16..

51. Canning had no involvement in the discussions within IPOS, or in IPOS's communications with Petro, from July 21, 2021, through July 28, 2021 relating to the investigation done by IPOS or the decision to terminate Petro. *See* Exh. A, Canning Declaration, ¶¶17-18.

52. Canning did not learn of the internal communications within IPOS or of the communications between IPOS and Petro relating to IPOS's inquiry into the welding qualifications from July 21, 2021 through July 28, 2021 until seeing copies of the communications produced in discovery in this case. *See* Exh. A, Canning Declaration, ¶18.

53. In Petro's initial disclosures, it stated it would retain an economist to calculate its damages. Exh. K (initial disclosures).

Respectfully submitted,

Dated: February 15, 2024, /s/ Andrew C. Simpson
Andrew C. Simpson, Esq. (VI Bar # 451)
2191 Church Street, Ste. 5,
Christiansted, VI 00820
Telephone: (340) 719-3900
asimpson@coralbrief.com

## LIST OF EXHIBITS TO THE STATEMENT OF MATERIAL FACTS

Exhibit A – Declaration of Andrew Canning
Exhibit B – Undated IPOS/ Petro Service Agreement, April 2018 (Bates # IPOS 004055 - 004066)
Exhibit C – IPOS/ Petro Maintenance Contract, September 1, 2019 (Bates # PIS000002 – PIS000007).
Exhibit D – Andrew Canning's Responses to Petro Industrial Solutions, LLC's First Set of Interrogatories
Exhibit E – Consulting Agreement between VVIC and OPTIS
Exhibit F – IPOS Welding Certificates Investigation (Bates # IPOS 006021 - 006026)
Exhibit G – Canning emails regarding Petro Welding Certificates (WPQ) and quality of work (Bates # IPOS 007845 - 007846).
Exhibit H – Petro Welding Certificate (WPQ) records (Bates # PIS000186 - PIS000192)
Exhibit I – Petro 30(b)(6) Deposition Transcript (Excerpts)
Exhibit J – Declaration of Acuren (Bates # VITOL-000043 – VITOL-000063)
Exhibit K – Petro's initial Rule 26 disclosures