Agreement No: IPOS-11-150533

## SERVICES AGREEMENT

This SERVICES AGREEMENT in effect as of the Effective Date stated below, is entered into, by Island Project and Operating Services, a limited liability company organized existing under the laws of the United States Virgin Islands with offices at 1 Penitentiary Lane, United States Virgin Islands, 00820 *("Company')* and Petro Industrial Solutions, a limited liability company organized and existing under the laws of the United States Virgin Islands with offices at One Estate Hope, Christiansted, VI 00820 *("Subcontractor")* (each a *"Party"* and collectively the *"Parties").*

In consideration of the mutual promises herein contained, Company and Subcontractor agree, promise, and obligate themselves as follows:

I. Subcontractor promises to provide the services described In Attachment A, attached hereto and incorporated herein, (the *"Work'}* in accordance with the Contract Documents (as defined below). Subcontractor shall undertake the Work only upon a receipt of a written Work Authorization signed by an authorized representative of Company and accepted in writing by Subcontractor. Company may initiate Work orally, but a written Work Authorization must follow within five (5) working days.

The general form of the Work Authorization may be in the form of a letter, purchase order or other like document. Any terms or conditions of any document submitted hereunder which is contrary to the terms of this Agreement and not expressly approved by Company and appended to this Agreement or specifically made part of a Work Authorization issued hereunder, shall be void and of no force and effect. No Work pursuant to this Subcontract Is authorized by Subcontractor in the absence of a validly issued Work Authorization from the Company and this Subcontract shall not commit or otherwise require Company to release any quantity of Work hereunder, the same being expressly denied.

II. For any Work Authorization released by Company, Company promises to pay Subcontractor for full, accurate, and timely performance of the Work the compensation provided in Attachment B, as otherwise set forth in the Contract Documents.

III. The *"Contract Documents"* (which may also be collectively referred to as the *"Subcontract"* or "Agreement") shall consist of this Subcontract' Agreement and the following documents. which are attached hereto and Incorporated herein or Incorporated by reference:

Attachment A – Scope of Work
Attachment B - Compensation
Attachment C - General Conditions
Attachment D - Additions / Special Terms      _(Mark with "X" if applicable)

The foregoing constitutes the entire contract between the parties regarding the Work, and supersedes all prior proposals, negotiations, agreements, awards, letters of intent and written or oral statements, representations, or agreements related thereto.

CONFIDENTIAL                                                                                    IPOS 004055

In the event of an inconsistency between provisions of the Contract Documents, tile inconsistency shall be resolved by giving precedence as follows: 1) the Subcontract Agreement, 2) any Additional/Special Terms, 3) the General Conditions, 4) the Work, and 5) any other Contract Document.

IV. The Effective Date set forth below is the date as to which all Contract Documents have reference for purposes of coordination of their meaning and effect. Any work commenced and any payments made pursuant to an award or letter of intent prior to the execution hereof shall be deemed to have been done and paid after the Effective Date and governed by the terms of the Contract Documents.

V. The undersigned individuals certify that they are competent and authorized to enter into this Agreement on behalf of the Party for whom he or she purports to sign.

IN WITNESS WHEREOF, the parties hereto have executed this Agreement as of the day and year first above written.

For and on behalf of
**ISLAND PROJECT AND OPERATING SERVICES LLC.**

By: David Smith
Title: General Manager

For and on behalf of
**PETRO INDUSTRIAL SOLUTIONS, LLC**

By: Adrian Melendez Jr.
Title: President

CONFIDENTIAL IPOS 004056

ATTACHMENT A
SCOPE OF WORK

**1.0 DESCRIPTION**

1.1 Except as otherwise expressly provided herein, during the term of the Agreement. Subcontractor shall furnish all labor, tools, supervision, and materials not furnished by others to perform maintenance, repair, electrical and instrumentation work from time to time at the Company project sites located at Randolph Harley Terminal in St. Thomas, U.S. Virgin Islands and Estate Richmond Terminal located in St. Croix, U.S. Virgin Islands, all as may be requested by Company under this Agreement.

1.2 The Work shall include, but shall not necessarily be limited to, the following additional items:
- Preventative Maintenance;
- PLC and DCS systems support;
- Emergency call-out response;
- Routine work on facilities as requested by Company

1.3 Subcontractor (i) warrants and represents that it has (and its employees, agents, and representatives who will perform the work hereunder have) all appropriate qualifications (including training, certifications, Governmental Approvals, requisite experience, and all applicable requirements of the prime contract incorporated in the Agreement) required to perform the Work, and (ii) shall maintain (and shall ensure that its employees, agents, and representatives who will perform the work hereunder maintain) such qualifications at all times during the term of the Agreement.   For the purposes of this Agreement:

"Governmental Approval means any permit, license, approval, authorization, consent, waiver, exemption, variance, ruling, entitlement, certification or other order, decision, or authorization that is required under Applicable Law to be obtained or maintained by any person with respect to the performance of the Work.

*"Applicable Law"* means any applicable law, rule, code, regulation, Governmental Approval, consent decree, consent order, consent agreement, determination, judgment, or order issued by any Government Body.

*"Government Body"* means any legislative, executive, judicial, or administrative department, board, authority, commission, court, agency or other instrumentality of the Federal, state or local government, or any official thereof having jurisdiction.

Page 1 of 1

ATTACHMENT B

COMPENSATION
TIME AND MATERIAL BASIS

**1.0 SUBCONTRACT PRICE**

Company shall pay Subcontractor, on a time and material basis, for complete, satisfactory and timely performance of the Work in strict accordance with the requirements hereof, the following firm fixed unit prices, which include all applicable taxes and which are not subject to escalation other than expressly provided herein:

1.1  Labor

    1.1.1  Subcontractor will be reimbursed for labor used to perform the Work as set forth in the table below, as provided in this Attachment B.

| EMPLOYEE CLASSIFICATION | Straight Time* | Call Out Time** | Comments |
|---|---|---|---|
| Project Manager / Team leader (P.E) | | | Develop PM Program/Coordinate Implementation |
| DCS/PLC/Controls Specialists | | | Troubleshoot/Maintain System |
| Valve Specialists | | | Troubleshoot/Coordinate Maintenance Program |
| Valve Technician | | | Routine PM Maintenance/Repairs |
| Electrical Technician | | | Troubleshoot/Maintain System |
| Electrician NCCER Certified | | | Routine PM Maintenance/Repairs |
| Instrument Technician | | | Troubleshoot/Repairs |
| Mechanical Technician | | | Troubleshoot/Repairs |
| Analyzer Tech | | | Troubleshoot/Routine PM Maintenance/Repairs |
| QA/QC Tech | | | Inspection / Documentation |
| I&E & Mechanical Helper | | | Support I&E Technicians |
| Laborer | | | General |

\* Straight Time is based on an 8-hour day, 40-hour work week. Overtime rate is considered "time and half" or 1.5 times the rate.

\*\* Call Out rates are a minimum of four (4) hours.

1.1.2 Billing rates for this Agreement are inclusive of all taxes (including, but not limited to FICA, FUI, SUI, sales, use, excise, VAT, and GRT), all insurance (including, but not limited to, Workers Compensation and General Liability), all benefits, small tools, consumables, overhead, and profit.

1.1.3 The straight time hourly rates set forth in this Section 1.1 apply as required to be calculated under the labor laws of the USVI.

1.1.4 The overtime hourly rates set forth in this Section 1.1 apply (i) as required to be calculated under the labor laws of the U.S.V.I., and (ii) to all call out services pursuant to Section 3.1 of this Attachment B.

1.1.5 No overtime shall be worked without the prior written approval of Company.

1.1.6 In addition to the labor rates identified in this Section 1.1, Subcontractor will bill Company for the following expenses at Subcontractor's actual cost: (I) per diem/living expense, (ii) required substance abuse testing, (iii) required site-specific training at Subcontractor's cost.

1.1.7 Subcontractor will invoice Company bi-weekly for charges under Section 1.1.

1.2 Equipment

1.2.1 Subcontractor will be reimbursed for third party rental equipment used in the performance of the Work (other than small tools, which are included in the rates in Section 1.1) at Subcontractor's actual cost plus (I) fuel required for the Work performed with the equipment, (ii) actual maintenance charges directly arising out of Subcontractor's use of the equipment to perform the Work, and (iii) a fifteen percent (15%) mark-up to Subcontractor's actual cost.

1.2.2 Subcontractor will be reimbursed for Subcontractor-owned equipment used in performance of the work (other than small tools, which are included In the rates in Section 1.1) at the rates set forth in Exhibit 1 to this Attachment B (Equipment Rental Rates) plus actual freight charges.

1.3 Materials

1.3.1 Subcontractor will be reimbursed for materials used in the performance of the Work (other than consumables, which are included in the rates In Section 1.1) at Subcontractor's actual cost plus (i) actual freight charges for the material(s), (ii) actual sales taxes, and (iii) a fifteen percent (15%) mark-up to Subcontractor's actual cost.

1.3.2 Funding Limitation. Unless otherwise agreed between authorized representatives of each Party in writing, the Funding Limitation for materials under this Agreement will be as provided in the applicable approved written quote.

 

1.4 Other Services

1.4.1 Subcontractor will be reimbursed for other services required to perform the Work for which Subcontractor is required to subcontract with a third party at Subcontractors actual cost plus a fifteen percent (15%) mark-up to Subcontractor's actual cost; provided, however, that Subcontractor is required to obtain prior written approval from Company as a condition precedent to Subcontractor subcontracting any of the Work hereunder to any third party, and further provided that Subcontractor shall ensure that each and every subcontractor it may use to perform the Work hereunder meets and maintains all requirements and obligations of the Agreement that Subcontractor is obligated to meet and maintain.

1.5 The rates and other charges set forth in Section's 1.1 through 1.4 include all of Subcontractor's indirect costs, including but not necessarily limited to such items as both home office and field office general and administrative expenses, home office management (support services, planning, scheduling, etc.). travel expense incurred by Subcontractor's home office personnel, accounting costs, temporary site facilities, (including office furniture. expendable office supplies, communication and reproduction equipment, computer hardware and software, expenses and supplies), equipment, tools, insurance, taxes, profit and any and all other labor or expenses which are not specifically listed herein.

## 2.0 INVOICES

2.1 Subcontractor's invoices shall be submitted to Company for approval. Payment will be made In accordance with Article 3.0 of Attachment C.

2.2   2   Subcontractor's invoice shall:

* Reflect the Subcontract Number.

* Be numbered sequentially.

* Be accompanied by such supporting documentation as Company may reasonably require.

## 3.1 MISCELLANEOUS

3.2 Minimum Call Out. In the event Company contacts Subcontractor for "call out" services, Subcontractor will be reimbursed at four (4) hours minimum per person, at the applicable overtime rate identified in Section 1.1.1, above.

3.3 Subcontractor may request increases to the rates identified in Section 1.1 thru Section 1.4 in the event of a reasonably unforeseen (at the time of original quotation being submitted to Company) material change in (i) applicable labor and commodity prices, (ii) sales and use taxes, or (iii) statutory increases in taxes or insurance.



Agreement No: IPOS-11-150533

## ATTACHMENT C
## GENERAL CONDITIONS

1. WORK OF THE SUBCONTRACTOR -All Work shall be performed in accordance with sound and generally accepted trade and industry practices and standards by competent practitioners fully qualified (and licensed. if required by law) in their respective disciplines. Subcontractor's Work shall conform to all applicable codes, standards, statutes, rules, and regulations, and the Project criteria and definition, as *may* be contained in the Scope of Work.

2. SCHEDULE AND DELAYS -Time is of the essence in this Subcontract. Subcontractor agrees to commence the Work promptly when directed by Company and to prosecute the Work diligently to completion. Subcontractor shall schedule Hs services in compliance with Company's directions and consistent with the project schedule. The schedule for the Work shall be subject to revision by Company to coordinate the overall project progress. In the event the Work is delayed by the Subcontractor, Company may direct the Subcontractor to supplement its labor force, add equipment, or work overtime at Subcontractor's expense in order to alleviate any delay, provided, however, that such requests for Subcontractor to supplement its labor force, add equipment, or work overtime resulting from delays caused by Company, its Client, or other Company subcontractors at the Client's site will be eligible for equitable adjustment in the Subcontractor's compensation, subject to Company's prior written approval.

3. APPROVALS/REVIEWS- Review and approval by Company of Subcontractor's drawings, samples, or other representations shall not relieve Subcontractor of the obligation to complete the entire Work in strict compliance with the requirements of this Subcontract

4. . PRICES -Reference Attachment 8, subject to all provisions of this Subcontract.

5. CHARGES AND PAYMENT CONDITIONS -Unless otherwise agreed between the parties in writing, Company shall pay Subcontractor the amount of each Invoice within thirty (30) days of the date of Company's receipt of such invoice, provided Subcontractor agrees to provide such supporting documentation for each invoice as Company may reasonably require, and the timeframe under this Section 5 may be extended the same number of business days as the difference in days between Company's receipt of an invoice and Company's receipt of such reasonably requested supporting documentation. Payment of any Invoice by Company shall not imply inspection, approval, or acceptance of the Work by Company or Client.

6. INDEPENDENTCONTRACTOR- Subcontractor shall perform the work as an independent contractor with exclusive control of the manner and means of performing the work in accordance with the requirements of this Subcontract, Subcontractor has no authority to act or make any agreements or representations on behalf of Company or Company's Client and no contractual relationship exists between Subcontractor and Client. This Subcontract is not intended to create, and shall not be construed as creating, between Company and Subcontractor, the relationship of principal and agent, joint venture, copartners or any other such relationship, the existence of which is hereby expressly denied. No employee or agent engaged by Subcontractor shall be, or shall be deemed to be, an employee or agent of Company or Client.

7. SAFETY -Subcontractor shall comply with all applicable laws, rules and regulations relating to health and safety, including, but not limited to, those set forth in the Occupational Health and Safety Act, as amended (OSHA). If this Subcontract involves trucking or other commercial use of vehicles, Subcontractor shall comply with all laws, rules, and regulations within the jurisdiction of the Department of Transportation and demonstrate to Company compliance with all such prescriptions and proscriptions.

8. WORK PREREQUISITES AND REQUIREMENTS - Subcontractor shall provide all permits, licenses, materials, equipment, utilities, fuel, supplies and labor necessary to complete all assigned work. All discoveries, inventions, patents. Know-how, trade secrets, computer programs, or other proprietary information generated hereunder shall be the property of Company and Subcontractor will take appropriate action to assign and transfer the same to Company.

9. AUDIT -Authorized representatives of Company and its Client shall have access, at all

Page 1 of 5



reasonable times, to Subcontractor's personnel job descriptions, books, records, correspondence, instructions, plans, drawings, receipts, vouchers, electronic data, and memoranda of every description pertaining to cost reimbursable Work, for the purpose of verifying the accuracy of costs and hours relating to the Work.

10. INDEMNIFICATION To the comparative extent of Company's or Subcontractor's negligence, fault, or cause each party shall indemnify, defend, and hold harmless the other party, its officers, directors, managers, employees and agents from and against any and all suits, actions, claims, demands, damages. liabilities, interest reasonable attorney's fees, costs, and expenses of whatsoever kind (including, without limitation, those arising out of bodily injury, disease, or death) of a third party directly or indirectly caused, occasioned, or contributed to in whole or in part, by reason of any act, omission, fault, or negligence, whether active or passive of the indemnifying party or of anyone acting under its direction or control. Nothing in this Subcontract shall be construed to subject either party to liability for indirect, punitive or consequential damages. The indemnities provided for herein shall survive the termination or expiration of this Subcontract, for whatever reason.

11. INSURANCE -Subcontractor shall purchase and maintain, at its own expense, throughout the term of this Subcontract, insurance described in the following paragraphs:

    (a) Worker's Compensation insurance in the amounts required by law and Employer's Liability insurance with limits of not less than $1,000,000 each accident or disease.

    (b) Commercial General liability insurance which shall be in an "occurrence" form and shall include coverage for all operations including contractual liability, bodily injury and property damage and coverage for punitive or exemplary damages. Such insurance shall have limits of not less than $2,000,000 combined single limit per occurrence.

    (c) Business Automobile Liability Insurance shall cover all owned, non-owned, hired or rented motorized equipment used in the performance of the Work. It shall provide for coverage for bodily injury and property damage in the amount of $1,000,000 combined single limit per occurrence.

    (d) Subcontractor shall maintain any other insurance required by law. In addition, Subcontractor shall maintain, at Company's expense, such additional insurance as Company may from time to time require.

    Subcontractor shall provide Company with thirty (30) days written notice prior to cancellation or material change, and shall name Company and its Client as additional insureds with respect to the Commercial General Liability and Business Automobile liability Insurance policies. Subcontractor shall provide Company certificates of insurance evidencing the above required insurance coverages prior to commencement of any work under this Subcontract. All insurance maintained by Subcontractor shall be primary to any insurance maintained by Company and/or its Client. Each Party shall waive its and its insurer(s) rights of subrogation as respects any claims covered, or which should have been covered, by valid and collectible insurance Including any deductibles or self-Insurance maintained thereunder, except each Party expressly agrees not to cause itself or its insurer(s) to waive any rights of subrogation and/or contribution against the other party under any workers' compensation and employers' liability insurance, or similar social insurance in accordance with law wl'1ich may be applicable.

12. STANDARD OF CARE AND WARRANTY- Subcontractor guarantees and warrants that all Subcontractor-furnished materials and Subcontractor's workmanship shall comply with the drawings, specifications, and other requirements of the Subcontract and shall be free of defects for a period of one year after completion and written acceptance of the Work by Company.

13. TERMINATION- ==Either party may, by thirty (30) days written notice, terminate this Subcontract in whole or part for any reason, including solely for its convenience.== Additionally, in the event of termination or expiration of the Prime Contract prior to the earlier of (i) expiration of this Subcontract or (ii) termination of this Subcontract for convenience pursuant to the preceding sentence, this Subcontract will terminate effective as of such termination date of the Prime Contract. Subcontractor will be paid the appropriately prorated amount for all Work successfully performed up to and through the date of such termination, less any payments already paid by Company. No money will be paid for interruption of business *or* loss of business opportunities, for overhead and profit on Work not completed, or for any other intangible costs. In no event shall the total sums

CONFIDENTIAL

IPOS 004062

paid Subcontractor exceed the Subcontract Price.

14. LIMITATION OF LIABILITY. To the fullest extent permitted by law and notwithstanding any other provision of this Agreement, each party's liability for performance or non-performance of any obligation arising under the Agreement (whether arising under breach of contract, tort, strict liability, or any other theory of law or equity) shall be limited to an amount not to exceed the Subcontract Price. The limitation of liability provided for herein shall survive the termination or expiration of this Subcontract, for whatever reason. Nothing in this provision is intended to limit the Subcontractor's compensation earned for Work performed in accordance with this Agreement (including such additional compensation as may be (i) approved by Company-issued change orders, or (ii) provided for herein related to impacts caused by the Company.

15. DISPUTE RESOLUTION. Subcontractor shall adopt a written dispute resolution program which shall require, at minimum, that any and all disputes (including but not limited to personal injury claims not subject to workers' compensation insurance, claims for wages or compensation. claims for breach of contract or covenant, tort claims, claims for wrongful discharge, claims for discrimination (of any type or grounds) and claims for violation of laws, rules and privileges and immunities) involving any employee of, or applicant for employment with, Subcontractor arising out of or related to his or her employment (or prospective employment) by Subcontractor for work or services rendered (or to be rendered) to Company (or its Client) hereunder or his or her presence at any premises owned or controlled by Client, or his or her contact with any employee or applicant of Company or Client, shall be submitted to final and binding arbitration for resolution. Subcontractor's program shall provide expressly that Company and Client (inclusive of their respective members, managers, owners, subsidiaries, other related entitles, directors, employees and agents, as well as any other entity or person having a contract to perform services on Client's premises and/or who has employees working on Clients premises) are intended third-party beneficiaries, and therefore any disputes between any employee or applicant of Subcontractor and such intended third-party beneficiaries shall likewise be submitted to binding arbitration pursuant to Subcontractor's dispute resolution program. The material provisions of Subcontractor's dispute resolution program shall be subject to confirmation by Company and/or Client that the required provisions have been included. Subcontractor shall require that all applicants and employees agree, in writing, to participate in its dispute resolution program as a condition of employment with respect to work performed under this Agreement or at any Client premises.

16. DEFAULT. The occurrence of any one or more of the following matters shall constitute a default under this Agreement ("Default"): (i) failure by either party to observe and perform any material condition or agreement on its part to be observed or performed hereunder, provided failure of such party to promptly cure after notice by the other party; (ii) the Insolvency, dissolution or liquidation of either party, or the filing of a petition in bankruptcy by or against either party, or the adjudication of either party as bankrupt, or any general assignment by either party for the benefit of its creditors, or the application for, or consent to, the appointment of any receiver, trustee, custodian, or similar officer by either party; or (iii) failure (or admission in writing of inability or unwillingness) by one party hereunder to pay amounts due and payable to the other party hereunder, in which event termination may be immediate upon written notice to the defaulting party. Whenever any Default shall have occurred, the non-defaulting party may terminate this Agreement upon written notice to the other party and/or avail itself of any and all rights or remedies to which it is entitled hereunder, and at law and/or in equity. Notwithstanding anything herein, Subcontractor shall be given reasonable opportunity to cure before this Subcontract may be terminated under this Section 16.

17. **MUTUAL WAIVER OF CONSEQUENTIAL DAMAGES-** UNDER NO CIRCUMSTANCES SHALL EITHER PARTY BE LIABLE TO THE OTHER PARTY FOR ANY INCIDENTAL, CONSEQUENTIAL. SPECIAL, PUNITIVE. OR OTHER DAMAGES OF THE OTHER PARTY. PROVIDED, HOWEVER, THAT SUBCONTRACTOR SHALL BE RESPONSIBLE FOR THE PAYMENT OF ANY PENALTIES OR FINES LEVIED BY A GOVERNMENT BODY AND DIRECTLY CAUSED BY SUBCONTRACTOR NEGLIGENCE OR WILLFUL MISCONDUCT OR A BREACH OF THIS AGREEMENT. ANY PROTECTION AGAINST LIABILITY FOR LOSSES OR DAMAGES AFFORDED ANY



CONFIDENTIAL

INDIVIDUAL OR ENTITY BY THESE TERMS SHALL APPLY WHETHER THE ACTION IN WHICH RECOVERY OF DAMAGES IS SOUGHT IS BASED ON CONTRACT, TORT (INCLUDING SOLE, CONCURRENT OR OTHER NEGLIGENCE AND STRICT LIABILITY OF ANY PROTECTED INDIVIDUAL OR ENTITY), INDMENITY, STATUTE OR OTHERWISE. TO THE EXTENT PERMITIED BY LAW, ANY STATUTORY REMEDIES WHICH ARE INCONSISTENT WITH THESE TERMS ARE WAIVED.

18. FORCE MAJEURE. In the event either Party is rendered unable, wholly or in part, without fault or cause of its own, to carry out its respective obligations under this Agreement, except for any obligations to make payment, due to circumstances beyond Its reasonable control, including without limitation: (i) an act of God landslide, lightning, earthquake, tornado, flood, hurricane, blizzard, fire, explosion, failure to possess sufficient property rights, acts of the public enemy, war, blockade, sabotage, insurrection, riot or civil disturbance; (ii) delays. failures to act, or preliminary or final order of any Government Body; (iii) any Change of Law; (iv) nationwide or craft-wide labor disputes, strikes, work slowdowns or work stoppages (excluding labor disputes, strikes, work slowdowns or work stoppages by employees of Subcontractor); (v) loss of or inability to obtain service from a utility necessary to furnish power for the operation and maintenance of the Facility; (vi) acts of third parties (other than parties for whom Subcontractor is responsible, or its subcontractors), (collectively "Uncontrollable Circumstances"), then the affected obligations of such Party shall be suspended during the period of the Uncontrollable Circumstances, provided however, that the inability to pay any fees is not included In the definition of 'Uncontrollable Circumstances". Every reasonable effort shall be made by the Parties to avoid Uncontrollable Circumstances, and, to the extent practicable, overcome and limit any delays or other impacts resulting from Uncontrollable Circumstances. Capitalized terms used in this Agreement which are not otherwise defined herein shall have the meanings ascribed to such terms in the prime contract between Company and Client (see Exhibit D-1 to Attachment D of this Agreement)

19. **AMENDMENTS.** This Subcontract may not be amended in whole or in part, at any time except by written instrument setting forth such changes that is signed by both Parties.

20. **ASSIGNMENT-** Subcontractor shall not transfer or assign any of its rights or obligations under this Subcontract to any party without the prior written consent of Company. Subcontractor shall not subcontract any portion of the Work without the prior written approval by Company and without the prior written approval by Company of the form, terms and conditions of the lower-tier subcontract. No assignment or subcontracting, even with Company' approval, shall relieve Subcontractor of any obligation hereunder, or create any contractual relationship between such lower-tier subcontractor and Company or its Client.

21. **CHANGES** -Company reserves the right to make changes in the Work or the manner of its performance. No change shall be made by Subcontractor in the Work or its manner of performance, without prior instructions from Company, in a written Change Order specifying the change in plans, specifications, procedures, schedule, sequence, or other requirements of this Subcontract and specifying whether there is to be an adjustment in the price for performance and how any such adjustment shell be determined.

22. **COMPLIANCE WITH LAW-** Subcontractor shall comply with all applicable federal, state, and local laws, executive orders, rules, and regulations. This Subcontract shall be governed by and construed in accordance with the laws of the jurisdiction in which 1he Work is performed, without regard to conflicts of law principles.

23.. **CONSTRUCTION.** This Agreement will be construed as if prepared jointly by the Parties, and the Parties agree and stipulate that (i) the language used in this Agreement shall be deemed to be the language chosen by the parties to express their mutual intent, and OJ) they will not allow any uncertainty or ambiguity to be interpreted against either Party.

24.. **COUNTERPARTS.** This Agreement may be executed in one or more counterparts, each of which is deemed an original, and all of which taken together shall constitute one and the same Agreement.

25. **EMPLOYMENT PRACTICES** -Subcontractor shall not discriminate against any employee or applicant for employment or applicant for employment because of race, color, national origin, religion, sex, age or for any reason prohibited by law. To the extent applicable to the Work on this Project, Subcontractor shall comply with Executive Order 11246 or any amendment, replacement or counterpart thereof.

26. **ENTIRE AGREEMENT.** This Agreement

CONFIDENTIAL

IPOS 004064

represents the entire agreement between Company and Subcontractor related to the work hereunder, and supersedes all prior or contemporaneous negotiations, proposals, purchase orders, representations or agreements related to such work, whether written or oral.

27. **HEADINGS.** The descriptive headings at the beginning of the articles, sections, and subsections of this Agreement are provided for convenience only and do not affect the interpretation or construction of this Agreement.

28. **SEVERABILITY** - Any provisions of this Subcontract held in violation of any law or ordinance shall be deemed stricken and all remaining provisions shall continue to be valid and binding upon the parties. Company and Subcontractor shall in good faith attempt to replace any invalid or unenforceable provisions of this Subcontract with provisions that are valid and enforceable and that come as close as possible to expressing the intention of the original provisions.

29. **SURVIVABILITY.** Any provisions of this Agreement that by their nature continue shall survive the expiration or termination of this Agreement

CONFIDENTIAL

IPOS 004065

Agreement No: IPOS-11-150533

## ATTACHMENT D
## ADDITIONAL / SPECIAL TERMS

1.1   INCORPORATION OF CLAUSES

1.2 This Subcontract is subject to the additional specific provisions contained in the prime contract between Company and Water and Power Authority *("Client')* in effect as of the date of the execution of the prime contract, redacted and attached hereto as Exhibit D-1, and as may be amended during the term hereunder, all of which non-redacted provisions are incorporated herein by reference, and Subcontractor agrees to be bound thereby in the same manner as if Company was the Client and Subcontractor was Company under the prime contract The non-redacted provisions include, but are not limited to, the following:

<< Insert any non-redacted provisions here>>

1.3 SUBCONTRACTOR acknowledges, agrees, and stipulates that the provisions of the prime contract incorporated herein are, and will be treated by SUBCONTRACTOR as, Confidential Information.

2.0   COMMITMENT TO SUSTAINABILITY

Company favors sustainable development practices within the communities in which it does business. As a condition of receiving Company's business hereunder, Subcontractor hereby commits and agrees, to the extent practicable, to (i) foster sustainable business practices within its organization and (ii) take steps to encourage the same with its contractors and affiliates.

[Exhibit follows on next page}

CONFIDENTIAL