# CONSULTING AGREEMENT

**THIS CONSULTING AGREEMENT** (the "Agreement") is made and entered into as of November 1, 2020 (the "Effective Date"), by and between Vitol Virgin Islands Corp. whose principal office is located at 2925 Richmond Avenue, Suite 1100, Houston, TX 77098 (the "Company"), and OPTIS Europe Ltd, whose principal office is located at Europarc Innovation Centre, Innovation Way, Grimsby, NE Lincs DN37 9TT (the "Contractor"). Company and Contractor may be referred to individually as a "Party" or collectively as the "Parties".)

The parties agree as follows:

1. Contractor's Services. Contractor will provide the following services to Company with regard to the Randolph Harley Power Plant located on the island of Saint Thomas, US Virgin Islands and the Richmond Power Plant located on the island of Saint Croix, US Virgin Islands (the "Plants") (any one or more or all of which are the "Services"):

    a. Manage, in conjunction with Island Project and Operating Services LLC ("IPOS"), the operator of the Plants, the on-going operation of the Plants, including but not limited to, the implementation of maintenance activities and scheduled terminal outages and any other related activities as specified by the Company;

    b. Upon request from Company, assist in the technical interface with the Virgin Islands Water and Power Authority ("WAPA") and WAPA's contractors in activities related to the integration of new generation units into the Company's propane supply system at the Plants;

    c. Upon request from Company, shall manage and oversee capital projects that may arise from time to time; and

    d. Handle other responsibilities as identified and mutually agreed upon in writing by Company and Contractor.

2. Scope of Services.

    a. In performing the Services listed above, Contractor,

        i. Shall execute the Services with expedition and safety with all reasonable skill, care and diligence;

        ii. Shall comply with and adhere strictly to all written instructions given by the Company on any matter connected with the Services;

        iii. Shall take responsibility for the adequacy, stability and safety of all operations and methods of working in the Services it provides;

        iv. Shall comply with the rules of Company or IPOS applicable to the Plants and any health and safety requirements under applicable law, and shall ensure that its employees and the employees of its subcontractors so comply;

        v. Shall be responsible for the suitability and safety of any equipment hired to the Company, and no equipment shall be hired to the Company which may

1

           be unsuitable or unsafe or liable to cause damage or injury and without lessening the responsibility of Contractor in regard to such equipment, if in the opinion of the Company it is unsuitable, unsafe or liable to cause damage or injury it shall be replaced with the minimum of delay at Contractor's cost;

    vi. Shall not permit any person to visit the Plants whose presence is not necessary for the performance of the Services without the consent of the Company;

    vii. Shall not represent himself as an employee of Company to others; or

    viii. Shall not enter into any contracts or agreements, whether oral or written, on behalf of Company, except with the specific and advance written authorization of a Company officer.

b. With regard to any given capital project, Contractor will,

    i. Provide the appropriate level of detailed planning and design needed to develop the capital project;

    ii. Manage the capital project in accordance with the time, cost and quality parameters as mutually agreed with VIVIC;

    iii. As part of its management of the capital project, the Contractor shall ensure the accountability for the management control and project assurance for the duration of the capital project; the execution of tasks in line with the capital project plan; budget development and control; development, communication and management of the health and safety plan in coordination with IPOS; compliance with any applicable law, regulations or standards; and the involvement of the right personnel, contractors and other providers in the capital project;

    iv. Manage and interface with all external contractors and all other providers of services related to the capital project including but not limited to the engineering firm, equipment suppliers, installation and construction contractors and any other providers covering the stage gate review process and planning and permitting;

    v. Ensure compliance with all health, safety, security and environmental requirements under applicable law and IPOS policies in relation to the capital project;

    vi. Manage the procurement process for all phases of work in relation to the capital project;

    vii. Supervise the construction process during all phases of the capital project and ensure all aspects of constructability reviews and inspections are performed as needed to achieve the capital project;

    viii. Ensure all aspects of the commissioning activities are fully integrated to achieve the capital project and relevant design and build deliverables; and

CONFIDENTIAL          VITOL-000002

        ix.  Participate in weekly calls with VIVIC and IPOS to discuss progress on on-going capital project activities or other technical matters concerning contractor's scope of work.

    c.  In the case of any part of the Services that fail to conform to the written instructions of Company or any other specification for the Services for whatever reason, the Company shall have the right at any time to reject such Services and Contractor shall promptly rectify the rejected Services.

3.    Compliance with Law. Contractor agrees that in the performance of the Services, it will comply with all applicable local, state, and federal laws and regulations and all applicable rules and requirements of IPOS or VIVIC in relation to the Plants, including but not limited to the rules and regulations contained in Exhibit 1.

4.    Independent Contractor. The parties agree that Contractor at all times during the Term will be an independent contractor engaged by the Company to perform Services and that this Agreement does not create any other relationship, including, but not limited to a partnership, agency, joint venture, joint enterprise, or employer-employee between Contractor and Company. During the Term of this Agreement, Contractor will have the right to devote Contractor's business day and working efforts to other business and professional opportunities that do not interfere with the rendering of Services to Company, subject to the confidentiality provisions of this Agreement. Contractor and Company hereby agree that Contractor will not provide similar Services to or become employed by a company which the Company deems to be a competitor of Company, and Company, in its sole discretion, shall determine whether such other company is a competitor.

Contractor will employ his own means and methods and exercise his own professional judgment in the performance of the Services. The sole concern of Company under this Agreement is that, regardless of the means selected, such Services are to be provided in a competent, efficient, and satisfactory manner in compliance with the accepted standards of the profession.

Contractor acknowledges and agrees that (i) Company will not withhold on behalf of Contractor any sums for income tax, unemployment insurance, social security, or any other withholding pursuant to any law or requirement of any governmental body relating to Contractor, or make available to Contractor, any of the benefits or compensation plans afforded to employees of Company; (ii) all liability for such payments, withholdings and benefits, if any, are the sole responsibility of Contractor; and (iii) in the event that the Internal Revenue Service should question or challenge the independent contractor status of Contractor, both Contractor and Company will have the right to participate in any discussion or negotiation occurring with the Internal Revenue Service or other federal, state, or local government agency, irrespective of whom or by whom such discussions or negotiations are initiated. Each party will be responsible for the payment of its own legal or accounting fees resulting from such a challenge.

5.    Term and Termination. This Agreement is effective for twelve (12) consecutive months, commencing as of the Effective Date. After the initial 12-month period, the Agreement may be extended on a "month-to-month" basis thereafter by mutual written consent of both Parties. The Parties may renew this Agreement by executing a written amendment to the Agreement which shall specify the term of any renewal. Notwithstanding the forgoing, the Company shall have the option to terminate this Agreement at any time for any reason with 30 days' written notice.

6.    Compensation.

CONFIDENTIAL                         VITOL-000003

a. <u>Fees</u>. Company agrees to pay Contractor a flat rate of £976.80 per day with a maximum billable time of twenty (22) days per calendar month. Contractor will invoice the Company on a monthly basis for the Services performed during the immediately preceding month. Company will pay Contractor within fourteen (14) days of its receipt of Contractor's invoice. Subsistence and sundry expenses are to be consolidated in a daily per-diem payment of $50 per day. Travel time between the UK and USVI is chargeable (at normal day rate) as per diem. Work rotation is up to 90 site days [subject to immigration time limits] with an average of 8 to 10 hours and day 6 days per week chargeable at the agreed day rate, with 7 to 14 days field break time (outside of the US / USVI as required by immigration rules). To max 22 days per month.

b. <u>Expenses</u>. Company will reimburse Contractor for the reasonable out-of-pocket expenses incurred in providing Services to the Company under this Agreement. Contractor will provide an itemized list of such expenses and submit copies of receipts for expenses to Company with each monthly invoice. Expenses in excess of $1000 shall be discussed with and approved by Company in advance. Company shall not be obligated to provide reimbursement of any expenses without a receipt or other supporting documentation sufficient to document the expense.

The following itemized expenses have been negotiated as per the below.

-Accommodation costs at STX are reimbursable (private rental) and do not require monthly approval.

-Accommodation costs at STT provided are in a shared house with the IPOS GM who was based on STX and do not require monthly approval.

-Rental vehicle cost on STT is a long term rental agreement to be rented when consultant is on the island. On St Croix, a car will be provided by the Vitol and do not require monthly approval.

-Flights costs between STX & STT are reimbursable

-Travel expenses between home location and the airport are reimbursable

-Return business class flights between the UK and USVI are reimbursable on a nominal 90 day basis to meet immigration time limits to be arranged and paid for by Vitol.

7. <u>Confidential Information</u>

a. "Confidential Information" as used in this Agreement will mean any and all technical and business information including patent, copyright, trade secret, and proprietary information, techniques, models, inventions, know-how, processes, apparatus, equipment, algorithms, software programs, and formulae related to the past, current, future and proposed products and services of Company and/or its customers, including, without limitation, information concerning product or process research and development, design details and specifications, engineering, financial data, manufacturing, customer lists, business forecasts and strategies, sales and merchandising, and trading/marketing plans.

b. Contractor acknowledges that in the performance of this Agreement it may be supplied with Confidential Information of Company. Contractor shall treat, protect, and safeguard as proprietary and confidential this Agreement and all Confidential Information disclosed by Company under this Agreement using at least as great a degree of care as used to maintain the confidentiality of its own most Confidential Information, but in no event less than a reasonable degree of care. All information shared by Company is deemed to be Confidential Information, whether or not marked or identified as such; provided, however Confidential Information shall not include (i) information that becomes generally

4

available to the public or persons within the energy trading business, other than as a result of unauthorized disclosure by Contractor or persons to whom Company has made the information available on a confidential basis, or (ii) such information can be shown by written documentation to have been received by Contractor on a non-confidential basis, prior to delivery by Company, from a third party whom Contractor in good faith believed was lawfully possessing and lawfully entitled to disclose such material to it.

    c.    Subject to subsection (d), Contractor shall not disclose, disseminate, publish or use, either directly or indirectly, any of the Confidential Information other than for the purpose for which it has been disclosed in connection with this Agreement without the specific prior written authorization of Company. Contractor shall not use any of the Confidential Information to the detriment of the Company. Contractor agrees that it will disclose the Confidential Information only to its employees who need to know such information, provided that such employees are bound by terms and conditions protecting such Confidential Information substantially similar to those of this Agreement. Contractor will give prompt notice to the Company of any unauthorized use, disclosure or copying of the Confidential Information, and will co-operate in the Company's efforts to prevent or seek damages as a result of any such acts.

    d.    In the event Contractor is requested or required (by court or administrative order, or by deposition, interrogatories, requests for information or documents in legal proceedings, subpoena, civil investigative demand or other similar process) to disclose any of the Confidential Information, it shall (to the extent legally permissible and time permits) provide the Company with prompt written notice of any such request or requirement, and take all reasonable efforts to limit disclosure and keep the other Party Company advised of the same. If, in the absence of a protective order, Contractor is nonetheless, in the opinion of counsel, legally compelled to disclose the Confidential Information, it may, without liability hereunder, disclose such portion of the Confidential Information which counsel advises is legally required to be disclosed after providing prior written notice to the Company and using all reasonable efforts to limit disclosure.

    e.    Contractor shall return or destroy all Confidential Information, including all paper, electronic and digital copies thereof, upon written notice or instruction from Company to do so. The confidentiality requirements of this Section 7 shall survive termination or completion of the Agreement and remain in effect for a period of two (2) years after the Effective Date.

8.    <u>Property and Intellectual Property.</u>

    a.    The property, and all other intellectual property rights in all information provided by the Company to Contractor in connection with this Agreement shall remain with the Company.

    b.    The property and all intellectual property in all information provided by Contractor to the Company under the Agreement for the Services shall belong to the Contractor absolutely. The agreed exception to the forgoing sentence is standard Contractor documentation and other proprietary information not prepared specifically for the performance of the Services, but the Company shall be entitled to use free of charge or license fee, such standard Contractor documentation for the purposes of its internal business in relation to the Services. Where the standard Contractor documentation and other proprietary information has been modified specifically in order to carry out the services then the property and the intellectual property in such documentation and information shall belong to the Company.

    c.    Inventions, software and/or designs made by Contractor or by its employees, agents or sub-contractors in the performance of the Services under the Contract and all intellectual property rights in such inventions, software and/or designs shall belong to the Company absolutely. Contractor shall give or procure the giving of such assistance, including the execution of all necessary documents as shall be

CONFIDENTIAL

VITOL-000005

necessary, to procure the vesting of all intellectual property rights for such inventions, software and/or designs in the Company as absolute owner.

    d.    To the extent that Services are to be executed to Contractor's or its subcontractors' designs and specifications, Contractors shall be responsible for providing all drawings, specifications, calculations and other information necessary for the execution of such Services. Contractor shall be responsible for any errors or omissions in drawings, specifications, calculations or other information provided by it whether the same have been approved by Company or not and Contractor shall rectify all errors and omissions. Contractor shall be responsible for the cost of such rectification of the Services as shall be necessitated thereby unless the errors and omissions are due to inaccurate information provided in writing by, or on behalf of, the Company, save insofar as any inaccuracy shall have been reasonably apparent to an experienced Contractor or shall have been detected by Contractor and Contractor fails to bring it promptly to the attention of the Company.

    e.    Contractor shall indemnify the Company against any claim for infringement of letters patent, registered design, trade mark or copyright in connection with the Services and against all costs and damages which the Company may incur in any action for such infringement or for which the Company may become liable in any such action. Provided always that this indemnity shall not apply to any infringement which is due to Contractor having followed a design or instruction furnished or given by the Company or to the use of such Services in a manner, or for a purpose, not specified by or disclosed to Contractor and provided also that this indemnity is conditional on the Company giving to Contractor the earliest possible notice in writing of any claim being made or action threatened or brought against the Company, and on the Company permitting Contractor at Contractor's own expense to conduct any litigation that may ensue and all negotiations for a settlement of the claim.

9.    <u>Liability for Damage or Injury and Limitation of Liability</u>.

    a.    Contractor shall take full responsibility for any permanently installed or applied materials arising from the execution of any of the Services and shall make good to the reasonable satisfaction of the Company any damage thereto however caused as a result of any act or omission of Contractor.

    b.    Company and its affiliates, including Vitol Inc., shall bear no liability to Contractor for any reason, including for personal injury or damage to property resulting from Contractor's provision of the Services regardless of the reason for the injury or damage and even if due to the negligence or willful misconduct of Company, or its affiliates, including Vitol Inc., subcontractors or agents.

    c.    In no event shall Contractor's, Company's, and Company's affiliates' (including Vitol Inc.) liability to the other party in the aggregate for each year of the Agreement, beginning on the Effective Date and extending for 12 months and each 12 month period thereafter, exceed the Annual Fees.

    d.    Except with regard to Contractor as provided in this Section 9, Contractor, Company, and Company's affiliates (including Vitol Inc.) shall not be liable for consequential, incidental or special damages or loss of profits.

10.    <u>Insurance</u>.

Contractor shall maintain the following insurance coverage during the Agreement and if requested by Company, shall produce certificates of insurance providing proof of such coverage:

    a.    Professional indemnity cover limited to £1m aggregate; and

CONFIDENTIAL

VITOL-000006

b.  Business travel accident policy covering occupational and non-occupational medical and other expenses.

11. General Provisions.

(a) Entire Agreement and Governing Law. This Agreement sets forth the entire agreement and understanding of the parties relating to its subject matter, and supersedes all prior agreements, arrangements and understandings, written or oral, relating to its subject matter. This Agreement is governed in accordance with and interpreted under the laws of the State of Texas without giving effect to its choice of law provisions. Exclusive jurisdiction for any litigation arising out of, relating to, or in connection with this Agreement or its subject matter shall only be any federal or state court in Harris County, Texas, to whose jurisdiction the parties hereby subject themselves. In any such proceeding the parties hereby waive any objection to forum including, without limitation, any objection based on lack of personal jurisdiction, improper venue, or inconvenient forum. EACH PARTY HEREBY IRREVOCABLY AND UNCONDITIONALLY WAIVES ITS RIGHT TO A TRIAL BY JURY IN ANY LEGAL ACTION OR PROCEEDING RELATING TO, ARISING OUT OF, OR IN CONNECTION WITH THIS AGREEMENT.

(b) Joint Participation in Preparation of Agreement. This Agreement is a commercial contract between businesses, not a consumer agreement. The Parties hereto participated jointly in the negotiation and preparation of this Agreement, and each Party has had the opportunity to seek the advice of legal counsel to review, comment upon, and redraft this Agreement. Accordingly, it is agreed that no rule of construction shall apply against any Party or in favor of any Party. This Agreement shall be construed as if the Parties jointly prepared this Agreement, and any uncertainty or ambiguity shall not be interpreted against any one Party and in favor of the other.

(c) Amendment. This Agreement sets forth the entire agreement and understanding between the Parties with respect to the subject matter and merges all prior discussion between them herein. No representations, statements, or inducements, oral or written, not contained herein shall bind either Party. Any changes to this Agreement must be in writing in the form of an amendment mutually agreed upon and duly executed by both parties.

(d) Assignment. Except as may be herein specifically provided to the contrary, this Agreement shall inure to the benefit of and be binding upon the Parties hereto and their respective legal representatives, successors, and assigns; provided, however, that no assignment of this Agreement or the rights and obligations hereunder by Contractor will be valid without the specific written consent of Company, and any such unauthorized attempted assignment will be void and of no further force and effect. Company, however, does have the right to assign this Agreement and the rights and obligations hereunder to an entity that is controlled by, under common control with, or that controls Company, or that is formed as the result of an internal restructuring of Company and/or its affiliates. Any such assignment by Company is effective without the need for any action on the part of the Contractor.

(e) Multiple Counterparts. This Agreement may be executed in multiple counterparts, each of which so executed is deemed to be an original, but all such counterparts together constitute but one and the same instrument.

(f) Notices. All notices, invoices, requests, and other communications required hereunder must be in writing and will be deemed to have been given when presented personally or mailed by mail, return receipt requested, or via email, return receipt requested to:

For Company:

7

Sebastian Moretti
srm@Vitol.com
2925 Richmond Avenue, Suite 1100
Houston, Texas 77098

With copy to:

Ernie Kohnke, General Counsel
ewk@Vitol.com
2925 Richmond Avenue, Suite 1100
Houston, TX 77098

For Contractor:

Jeffrey Regan, Managing Director
jeff.regan@optis.co.uk
Europarc Innovation Centre, Innovation Way,
Grimsby, NE Lincs
DN37 9TT

provided, however, that either party may notify the other party of a change in its notice information by providing the other party notice of that change in accordance with this section.

(g)     Severability. The invalidity or unenforceability of any provision or portion of any provision of this Agreement will not affect the validity or enforceability of the remainder of the same provision or any other provision of this Agreement and each provision hereof or portion of such will be enforced to the fullest extent permitted by applicable law.

Executed and acknowledged by the undersigned, as the duly authorized representatives of the parties hereto, as of the Effective Date.

**Vitol Inc.:**

By: _____

Name: _____

Title: _____

**Contractor:**

By: _[signature]_

Name: Jeffrey Regan

Title: Managing Director

Date: 10th November 2020

8

CONFIDENTIAL
VITOL-000008

Exhibit 1

## HEALTH, SAFETY, SECURITY AND THE ENVIRONMENT (HSE0) Rules

Vitol Health, Safety, Security and Environmental (HSSE) requirements within terms of contract require that that CONTRACTOR shall at all times comply with:

(i).     All relevant Health, Safety and Environmental Laws, Health and Safety regulations and codes of practice that have been enacted by the USA and by the USVI at federal and state level.
(ii).    All relevant and appropriate guidance and good working practices, as published or accepted by OSHA, the EPA, professional/trade bodies or other similar organizations.
(iii).   His/her own HSSE policy, HSSE systems and procedures. Notwithstanding this, all CONTRACTORs shall ensure that their employees comply at all times with VITOL HSSE policy (available on request) and WAPA's HSE policy in so far as it is relevant to the contract and meets the standards and requirements set out in the VITOL HSSE management system.
(iv).    While moving across the site, that CONTRACTOR shall comply with all rules and procedures as described during the site induction and include requirements for control of sources of ignition, wearing high visibility clothing and identifying where and under what conditions further levels of personal protection is required. The company has adopted a strict drugs and alcohol policy and reserve the right to stop and search any person (including their stores, lockers or vehicles) suspected of possessing illegal substances or materials.
(v).     Any conditions stipulated by VITOL. Such conditions will override details contained in that CONTRACTOR's internal documentation but will ensure that HSSE standards will be maintained or improved.
(vi).    Any requests for the provision of health and safety documentation.

That CONTRACTOR shall nominate a senior representative, to act as a coordinator between both parties for matters of HSSE arising out of the contract.

All work equipment used on the VITOL site shall be suitable for the work to be undertaken and may only be used by persons competent to undertake the work in a safe manner. Equipment must be suitably maintained, in good condition and if appropriate, certified for use in specific hazard areas. Sufficient notice must be given if supplies of electricity are required. All power cables are subject to inspection and certification prior to use. No connection to any VITOL services is permitted without the approval of an authorized officer of VITOL. No vehicle or associated equipment of that CONTRACTOR may enter the site without prior approval. Seat belts must be worn at all times.

All work will be subject to a specific risk assessment, which must be conducted to a standard which is compliant with applicable legislation. In increased hazard situations, work will be controlled via a permit to work, appropriate to the hazard type. This documented safe system will be issued by an authorized officer of VITOL and all contract workers will be required to sign this permit and fully comply with all the conditions it specifies.

Any injury or incident must be reported immediately to a VITOL site contact. That CONTRACTOR shall notify, in writing, VITOL authorized officers of all incidents which either could have lead or did lead to injury and/or damage. Where incidents are reportable under OSHA, a completed notification form must be supplied. All incidents must be fully investigated.

All CONTRACTORs requiring access to the site will be required to attend the appropriate level of induction and satisfactorily complete the induction assessment.

CONFIDENTIAL

VITOL-000009

CONTRACTORs are responsible for providing all the necessary Personal Protective Equipment (**PPE**) when working on site - the requirements should be identified as part of the pre-work risk assessment.

It is that CONTRACTOR's responsibility to ensure that necessary arrangements for the disposal of any waste are in place, that these are agreed with the VITOL representative prior to work commencing and are compliant with current legislation.

Other rules/work requirements will be fully communicated at site and local induction.

VITOL authorized officers and HSSE manager shall be empowered to suspend the provision of the service in the event of non-compliance by that CONTRACTOR with issues concerning health and safety matters. That CONTRACTOR shall not resume provision of the service until VITOL authorized officers and/or HSSE Manager are satisfied that the non-compliance has been rectified.

In respect of any such period of suspension and/or any major or consistent minor breaches of health and safety practice the default provisions as set out in these conditions may result in the enforcement of one or more of the following actions:

(i). Suspension and/or termination of the contract;
(ii). Restriction from working for VITOL on any contract, until improvements have been made and adequate and suitable evidence of such is provided;
(iii). Removal from the approved/select list.

CONFIDENTIAL                                                                                                    VITOL-000010

## VITOL PPE Requirements

CONTRACTOR shall conform to VITOL PPE requirements at its own cost, unless agreed on specific projects. CONTRACTOR shall ensure it is aware of and meet any VITOL revised PPE requirements before commencement of work on the VITOL site.

(iv).

| | | |
|---|---|---|
| Enhanced visibility overalls, Nomex type<br><br>Dark coloured overalls must be supplemented with a high visibility vest or coat. | As applicable | *EN340:2003*<br>EN ISO 11611:2007 Al class 1:50 washes<br>EN ISO 11612:2008 Al B1 E3 F1:50 washes<br>EN1149-5:2008<br>EN61482-1 class 1 |
| Safety Helmet (non-vented) | | EN397 |
| Clear Safety Spectacles | | EN166 1F KN |
| Arco Kevlar Gripz latex Gloves | As required | BSEN388:2003 Rating 2.2.4.4. |
| Buffalo Lined Drivers Gloves | | BSEN388:1994 – Rating 2.1.2.2. |
| E.A.R Classic Ear Plugs | As required | EN352-2 |
| E.A.R UltraFit Corded Ear Plugs | | EN352-2 |
| Howard Leight Laser Lite LL-1 Ear Plugs Connect S41 Baltic Ear Muff - Helmet Mount | | EN352-2<br>EN352-3 |
| Safety Boots Laced (ankle boots non rigger) | As required | EN ISO 20345 - 200 joule - S3 |
| Uvex Ladies Black Lace - Up Safety Boots | | EN ISO 20345 - 200 joule - S2 |

CONFIDENTIAL                                                                                          VITOL-000011