IN THE DISTRICT COURT OF THE VIRGIN ISLANDS

DIVISION OF ST. CROIX

| | |
|---|---|
| PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),<br><br>PLAINTIFF,<br><br>V.<br><br>ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), ET AL.,<br><br>DEFENDANTS. | CASE NO. 1:21-CV-00312 |

**OPTIS EUROPE'S AND ANDREW CANNING'S REPLY
TO PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**

Plaintiff's opposition to the motion for summary judgment filed by OPTIS Europe and Andrew Canning ("Defendants") failed to comply with LRCi 56.1. That failure is prejudicial to Defendants because it makes it impossible for them to respond to the opposition to some of the issues Defendants raised in their summary judgment motion. Simultaneously with this Reply, Defendants have moved to strike Plaintiff's Response to the Statement of Uncontested Material Facts ("RSUMF") and deem their Statement of Uncontested Material Facts ("SUMF") uncontested. This reply memorandum will focus on two purely legal issues that Plaintiff was unable to obfuscate through the improper RSUMF.

## SUMMARY

The first pure legal issue is whether plaintiff can prove any economic damages based upon testimony from its principal, Adrian Melendez, Jr. Plaintiff has no other

1

evidence of damages and thus, if Melendez' testimony is inadmissible, then Plaintiff has no proof of damages and the entire case should be dismissed on summary judgment—mooting the need to resolve the other issues raised in Defendants' motion for summary judgment or their motion to strike the RSUMF.

The second pure legal issue is whether the potentially applicable discrimination statutes of the Virgin Islands apply to Petro, a limited liability corporation, when, by the express terms of those statutes, they apply solely to "natural persons" or "individuals." Resolution of that issue will result in the dismissal of Count II of the Second Amended Complaint.

The remaining issues, relating to proof of defamation and proof of intentional interference with a contract, should be resolved in Defendants' favor based upon the facts set forth in Defendants' SUMF, which should be deemed to be uncontested based upon the motion to strike the RSUMF. (Plaintiff did not submit a separate concise statement of any additional facts that it contends are material to the motion for summary judgment and as to which the Plaintiff contends there exists a genuine issue to be tried. Therefore, Plaintiff has *not* put at issue any facts outside of the SUMF.)

## ARGUMENT

### I. PLAINTIFF HAS NO ADMISSIBLE EVIDENCE OF DAMAGES

In their motion for summary judgment, Defendants pointed out that Plaintiff's Fed. R. Civ. P. 26(a)(iii) disclosures failed to itemize Plaintiff's alleged damages as required and instead deferred a calculation of damages to an expert witness to be named later. Subsequently, Plaintiff produced the expert report of Don Law, a certified public

2

accountant, only to withdraw the report after Defendants moved to exclude Mr. Law on Fed. R. Evid. 702 grounds. Plaintiff announced that it would instead rely upon the testimony of Petro's "founder, owner, and manager," Adrian Melendez, Jr. Doc. No. 296.

The issue raised on summary judgment was based upon the lack of admissible evidence to support Plaintiff's damage claim. Contrary to Plaintiff's assertion, Defendants did *not* argue in their motion that "expert testimony is required to prove economic damages." Doc. No. 304 at 19. Rather, Defendants made two independent arguments, each of which renders Mr. Melendez' testimony inadmissible and leaves Plaintiff without any evidence of its damages:

1. Based upon his own testimony, he lacks the knowledge necessary to allow him to testify; and

2. Plaintiff failed to provide the Rule 26(a)(2)(C) disclosure required of a "lay witness" who will offer testimony based upon "scientific, technical, or other specialized knowledge within the scope of Rule 702." *See* Fed. R. Evid. 701(c).

### A. MR. MELENDEZ LACKS SUFFICIENT KNOWLEDGE TO TESTIFY AS TO PLAINTIFF'S ALLEGED DAMAGES.

Plaintiff makes absolutely no effort to demonstrate that Mr. Melendez has the requisite knowledge regarding his company's damages. The evidentiary record is void of any such evidence. Instead, Plaintiff appears to rely solely upon Mr. Melendez' status as the company's "founder, owner and manager"—as if possessing a title automatically imbues the title holder with the knowledge that the title might suggest the title holder possesses. In contrast, Defendants demonstrated that Mr. Melendez

3

lacked such knowledge, citing the following passages from the 30(b)(6) deposition of Petro Industrial at which Mr. Melendez was the corporate designee:

> Q. Right. But if I want to know what your labor cost is for each project, that's not reflected anywhere in your interrogatories in any of these budget breakdowns?
>
> MS. ROHN: You need to redo the chart to show what profits you're making off the labor and the equipment.
>
> A. The equipment, absolutely. The equipment is the cost, and I just have to add 15 percent to it. The only thing is the labor.
>
> MS. ROHN: Okay. Well, then, you have to put that in your chart.
>
> A. Okay. I understand.

Exhibit I, 194:4–14 (Doc. No. 299-9, p.62).[1]

> MS. ROHN: Wait, wait. I think what he's saying, is your base, when you talk about what your base cost is for the employee, you have to factor in that – whatever the labor costs are when you're making that chart.
>
> A. Okay.
>
> MS. ROHN: Correct?
>
> MR. KAPLAN: Correct.
>
> A. Correct.
>
> Q. (Mr. Kaplan) When you say, "total profit plus tax of 15 percent" -- excuse me, 5 percent. You're saying of that 15 percent, you're saying that's profit on top of whatever profit you're making on the difference between what you're paying your employees and what you're getting under the contract, correct?

---

[1] When the deposition was filed as an exhibit to the SUMF, the Court's ECF system obscured the page numbers of the deposition. Accordingly, Defendants are including cross-references to the ECF page numbering system for the Court's convenience.

    A. That's correct.

    Q. And that 5-percent tax, that is the gross receipts tax that you're talking about?

    A. That's correct.

    Q. Okay.

    MS. ROHN: But that's not including -- but that wouldn't be -- then, but in your labor costs, you're going to have to do your -- whatever workmans' comp, whatever percentage of that.

    A. Insurance.

    MR. KAPLAN: All -- all -- all your taxes and cost of employment need to be reflected and deducted --

    MS. ROHN: Right.

    MR. KAPLAN  -- from whatever you're calculating on your profit --

    ==MS. ROHN: And you'll probably need an accountant to do that.==

Exhibit I, 197:24–199:4 (Doc. No. 299-9, pp.65-67).

Thus, Petro's own attorney, after hearing Mr. Melendez testify and realizing that he lacked the requisite knowledge to allow him to competently testify as to the damages his company claims to have suffered, acknowledged that he needed an accountant to provide *competent* evidence of such damages. (Mr. Law, the withdrawn expert, is an accountant.)

Plaintiff cites *Donlin v. Philips Lighting N. Am. Corp.*, 581 F.3d 73, 81-82 (3d Cir. Pa. 2009) in support of the concept that the owner of a business can testify as to its alleged business losses. But, the *Donlin* court explained "we have consistently required that lay testimony requiring future projections of a business or operation come from

5

someone who has *intimate and thorough knowledge of the business* gathered from either a lengthy tenure or a position of authority." *Donlin*, 581 F. 3d at 81 (emphasis added). The *Donlin* court cited *Lightning Lube, Inc. v. Witco Corp.*, 4 F.3d 1153 (3d Cir.1993) and explained that in that case it had allowed "a company's founder and owner to testify regarding his lost future profits and harm to the value of his business" because "we found that the witness had adequate personal knowledge in light of his in-depth experience with the business's contracts, operating costs, and competition." *Donlin*, 581 F. 3d at 81. *Donlin* also explained that "[a] trial judge must rigorously examine the reliability of a layperson's opinion by ensuring that the witness possesses sufficient specialized knowledge or experience which is germane to the opinion offered." *Donlin*, 581 F.3d at 83.

Mr. Melendez demonstrated in his deposition that he lacked adequate personal knowledge to be able to testify as a lay witness as to his company's alleged losses. And in opposing summary judgment, Plaintiff made no effort to rehabilitate Mr. Melendez or demonstrate a question of fact as to his knowledge. On the state of this uncontested evidentiary record, and applying the "rigorous[] examin[ation] mandated by *Donlin*, there is only one possible conclusion: Mr. Melendez is not competent to testify as to his company's alleged damage irrespective of his position within his company as founder, owner, and manager.

### B. PLAINTIFF FAILED TO PROVIDE THE WRITTEN DISCLOSURE REQUIRED OF A LAY WITNESS WHO OFFERS TESTIMONY BASED UPON "SCIENTIFIC, TECHNICAL, OR OTHER SPECIALIZED KNOWLEDGE WITHIN THE SCOPE OF RULE 702." *SEE* FED. R. EVID. 701(C).

A true lay witness may testify as to its rationally based perceptions if not based upon scientific, technical or otherwise specialized knowledge. Fed. R. Civ. P. 26(a)(2)(A). But, if the lay witness testimony strays into the realm of scientific, technical or otherwise specialized knowledge and the witness is not "retained or specially employed to provide expert testimony," (Fed. R. Civ. P. 26(a)(2)(B)), then, although the witness need not produce a full expert report, there still must be a written disclosure as set forth in Fed. R. Civ. P. 26(a)(2)(C). *See generally Bank of China, New York Branch v. NBM LLC*, 359 F.3d 171, 182 n.13 (2d Cir. 2004) and *Dobbins v. Greyhound Lines, Inc.*, 336 F.R.D. 144, 147 (E.D. Mich. 2020) (discussing requirement that a treating physician must provide the "summary disclosures" set forth in Rule 26(a)(2)(C); whereas, if the physician had been specially retained for litigation, the more fulsome disclosure requirements of Rule 26(a)(2)(B) would apply).

As set forth in the above quotations from the 30(b)(6) deposition of Plaintiff, by the admission of *Plaintiff's-own attorney*, Mr. Melendez needed the assistance of an accountant to calculate his company's alleged damages—specialized knowledge. Thus, even assuming that Mr. Melendez had demonstrated that he had the requisite knowledge, because the calculation of *this plaintiff's* alleged damages required specialized knowledge, a written disclosure under Fed. R. Civ. P. 26(a)(2)(C) was

required.² Plaintiff failed to produce such a disclosure and there is no admissible evidence to support the claim for damages.

## II. PLAINTIFF FAILED TO DEMONSTRATE THAT THE APPLICABLE DISCRIMINATION LAWS OF THE VIRGIN ISLANDS APPLY TO IT, REQUIRING DISMISSAL OF COUNT II.

### A. PLAINTIFF'S WAIVER/FORFEITURE ARGUMENTS ARE UNSUPPORTED AND WITHOUT MERIT.

To oppose summary judgment on its discrimination claim, Plaintiff argues that Defendants were required to assert an affirmative defense of lack of standing but failed to do so and that the V.I. Civil Rights Act includes business entities within the protected class under the Act. Plaintiff is wrong on all grounds.

#### 1. A PLAINTIFF ALWAYS BEARS THE BURDEN OF PROVING THAT IT COMES UNDER THE PROTECTION OF A STATUTE—INCLUDING THAT IT FALLS WITHIN THE CLASS PROTECTED BY THE STATUTE. LACK OF STANDING IS A NEGATIVE DEFENSE THAT NEED NOT BE PLED.

An affirmative defense is a defense for which the *defendant* bears the burden of proof at trial. This is to be distinguished from a "negative defense." A negative defense is one that attacks the plaintiff's *prima facie* case. *Gen. Auto. Parts Co. v. Genuine Parts Co.*, Case No. 04-CV-379, 2007 WL 704121, at *6 (D. Idaho Mar. 5, 2007); *Hubbell v. World Kitchen, LLC*, 688 F. Supp. 2d 401, 422–23 (W.D. Pa. 2010) ("a so called 'negative defense' directly challenges the substance of the plaintiff's allegations . . ."). Thus, "[a] defense which demonstrates that plaintiff has not met its burden of

---

² It bears repeating that Defendants do not argue that a company representative can never testify as a lay witness as to the company's damages. Rather, to do so, the representative must have more than a mere title and also possess the requisite knowledge.

proof as to an element plaintiff is required to prove is not an affirmative defense." *Zivkovic v. S. Cal. Edison Co.*, 302 F.3d 1080, 1088 (9th Cir. 2002).

As the United States Supreme Court recognizes, a plaintiff must prove not only Article III standing, "but also that his 'complaint fall[s] within the zone of interests protected by the law' he invokes." *Bank of America Corp. v. City of Miami, Fla.,* 581 U.S. 189, 205 (2017) (quoting *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 128 (2014)); *accord UPS Worldwide Forwarding, Inc. v. U.S. Postal Serv.*, 66 F.3d 621, 627 (3d Cir. 1995) (stating that "a plaintiff must demonstrate the interest he seeks to vindicate is arguably within the zone of interests to be protected or regulated by the statute in question") (cleaned up); *Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir.2013) ("Every party that comes before a federal court must establish that it has standing to pursue its claims."). Because a plaintiff bears the burden of proving that the statute applies to it, standing is a negative defense. Consequently, as the Superior Court of the Virgin Islands recently held, "Standing need not be pled in an answer." *Erbey Holding Corporation v. Blackrock Fin. Mgmt., Inc.*, 2023 VI SUPER 75, ¶ 35, 2023 WL 8432847 at *71 (Dec. 4, 2023).[3]

---

[3] Plaintiff cites non-binding case law from the Second, Fourth, and Eleventh Circuits for the proposition that statutory standing must be asserted as an affirmative defense in the answer or the defense is considered waived. *See* Plt's Opposition, pg. 2. A closer examination of Plaintiff's authority indicates that the case law is describing waiver at the appellate level when the legal theory is not preserved in the lower court.

For example, Plaintiff relies upon *Kansas v. SourceAmerica,* 826 Fed.Appx. 272, 283 (4th Cir. 2020) for the proposition that statutory standing is waivable. However, the court in *Kansas* was examining whether or not an argument for statutory standing was properly asserted during arguments for summary judgment. *Id.* at 284. The Court found that they were not and then held that a failure to raise an argument at the lower

9

> **2. IF A PLAINTIFF LACKS STATUTORY STANDING, IT HAS FAILED TO STATE A CLAIM UPON WHICH RELIEF MAY BE GRANTED. DEFENDANTS PLED FAILURE TO STATE A CLAIM IN THEIR ANSWERS TO THE SECOND AMENDED COMPLAINT. THUS, EVEN IF STANDING WAS AN AFFIRMATIVE DEFENSE, DEFENDANTS PROPERLY ASSERTED IT.**

In their Amended Answers to Plaintiff's second amended complaint, Defendants asserted "Affirmative and Negative Defenses" A through J. In each amended answer, Defense "A" asserted, "Plaintiff fails to state a claim against this defendant upon which relief may be granted." *See* Doc. No. 265, p.17 (Canning) and Doc. No. 266, p.17 (OPTIS).

In the Third Circuit, lack of standing may be challenged via a motion to dismiss for failure to state a claim: "Statutory standing goes to whether Congress has accorded a particular plaintiff the right to sue under a statute, but it does not limit the power of the court to adjudicate the case. [Citation omitted.] As a result, '[a] dismissal for lack of statutory standing is effectively the same as a dismissal for failure to state a claim.'" *Leyse v. Bank of Am. Nat. Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015) (quoting *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011); *accord Vaughn v. Bay Env't Mgmt., Inc.*, 567 F.3d 1021, 1022 (9th Cir. 2009) ("Although the district court dismissed the case for lack of subject matter jurisdiction, a dismissal for lack of statutory standing is properly viewed as a dismissal for failure to state a claim rather than a dismissal for lack of subject matter jurisdiction.").

---

court acts as a waiver of the argument *on appeal. Id.* The holding in *Kansas* was not a prohibition against raising statutory standing in summary judgment; rather, it was an examination of whether the argument was properly preserved for the purpose of review on appeal.

Here, because Defendants asserted failure to state a claim as a defense to the second amended complaint, even if standing was an affirmative defense that had to be raised in the answer, Defendants did so and effectively preserved the defense. [4]

### B. PLAINTIFF'S STATUTORY ARGUMENTS TO SUPPORT THE APPLICATION OF THE VIRGIN ISLANDS DISCRIMINATION LAWS TO IT ARE MISPLACED AND UNAVAILING.

Defendants' summary judgment argument with respect to Count II is that Plaintiff is neither a "natural person" for purposes of 10 V.I.C. § 3(a) nor an "individual" for purposes of 10 V.I.C. § 61. Status as a "natural person" is a critical element of a claim under Chapter 1 of the Virgin Islands Civil Rights Act (VICRA). And status as an "individual" is a critical element of a claim under Chapter 5 of VICRA. Because Plaintiff is neither a natural person nor an individual, it is not protected under either Chapter 1 or Chapter 5 of VICRA.

It is Plaintiff's burden to prove it meets the definition of a "natural person" or "individual." In their motion for summary judgment, Defendants demonstrated, as a matter of law, that a limited liability company is neither a natural person nor an individual and therefore, Plaintiff is not a member of the protected class. Consequently, Plaintiff had failed to establish a critical element of its claim, requiring dismissal of Count II.

Plaintiff's opposition conflates "person" with "natural person" or "individual" (the terms used in VICRA). That a limited liability company is granted *powers* of a "*person*"

---

[4] In any event, unlike affirmative defenses, failure to state a claim is *not* waived if not raised early in the litigation. The federal rules allow it to be raised as late as at trial. *See* Fed. R. Civ. P. 12(h)(2)(C).

11

under the Virgin Islands Uniform Limited Liability Act (ULLA) does not transform a business entity into a "*natural person*" or an "*individual.*" A limited liability company under the ULLA is a legal fiction given personhood status for limited statutory purposes, specifically to "do all things necessary or convenient to carry on its business or affairs[.]" 13 V.I.C. § 1113. A limited liability company has no sex, no race, no religious affiliation, and no national origin or other attributes of a "natural person" or "individual."

Plaintiff's reference to 1 V.I.C. § 41 to support its argument that it is a "person" is also misplaced. The definition of "person" in Section 41 applies to references to "person" elsewhere in the V.I. Code "unless it is otherwise provided or the context requires a different construction[.]". 1 V.I.C. § 41. But the very definition of "person" in 1 V.I.C. § 41 defeats Plaintiff's argument, because it clearly distinguishes between "individuals" and corporate entities. The definition provides: "'person' and 'whoever' respectively include corporations, companies, associations, joint stock companies, firms, partnerships, and societies, *as well as individuals.*" 1 V.I.C. § 41 (emphasis added).

*If* either Chapter 1 or Chapter 5 of VICRA applied to "persons" rather than "natural persons" or "individuals," Plaintiff's argument might have some legs to it. But the Legislature has proven quite capable of distinguishing between "persons" (which include natural persons or individuals as well as corporate entities) and "natural persons" or "individuals"—which are clearly distinct from business entities throughout the Virgin Islands Code.

If the Court were to adopt Plaintiff's argument, then a limited liability company

12

could receive a "Virgin Islands Disabled Person Card," which is made available only to "any natural person." 3 V.I.C. § 233(a) or a Virgin Islands Identification Card. 21 V.I.C. § 372a. Further, statutory provisions providing for service of process upon a "natural person" differ from those for service upon "a domestic or foreign corporation or upon a partnership or other unincorporated association." *See, e.g.,* 3 V.I.C. § 1224(b); 11 V.I.C. § 1510; 14 V.I.C. § 612. Plaintiffs attempt to include business entities under the rubric "natural persons" would render these statutes (and others throughout the Code) ambiguous.

While the Code uses "natural person" interchangeably with "individual," *see* 9 V.I.C. § 383(d) ("The term 'individual' means a natural person"), it maintains a hard distinction between "person" and "natural person" as well as between "person" and "individual." For example, the Code frequently defines "person" as including both natural persons and business entities. *See, e.g.*, 11 V.I.C. § 1504; 12A V.I.C. § 302(16) ("'Person' shall include both natural and artificial persons"); 12A V.I.C. § 303(h); 13 V.I.C. § 2(a)(1) (requiring a corporate name to "be such as to indicate that it is a corporation as distinguished from a natural person or partnership"); 15 V.I.C. § 1091 (authorizing "a corporate as well as a natural person" to serve as a trustee). Similarly, a "person" will also be defined as encompassing both "individuals" and business entities. *See, e.g.*, 1 V.I.C. § 253(a) (instructing that "'Person' means an individual, partnership, corporation, association or public or private organization other than a governmental agency"); 3 V.I.C. § 274(f)(9) (authorizing Taxicab Commission to enter into contracts with any individual or business entities); 5 V.I.C. § 4101(j) ("'Person"

13

means . . . any individual, partnership, association, joint stock company, trust or corporation"); 20 V.I.C. § 352(e) ("Person—the term 'person' includes any individual, corporation, association, partnership, firm or other aggregation of individuals").

Since Plaintiff is neither a "natural person" nor an "individual" VICRA does not extend its protections to it.

## II. DEFENDANTS ARE UNABLE TO RESPOND TO THE REMAINDER OF PLAINTIFF'S OPPOSITION DUE TO PLAINTIFF'S GROSS VIOLATIONS OF 56.1(b).

Contemporaneously with this reply, Defendants have moved to strike Plaintiff's RSUMF and deem admitted their SUMF due to gross violations of LRCi 56.1(b). As more fully discussed in the motion, these violations make it unduly burdensome—impossible—to respond to the remainder of Plaintiff's opposition and greatly prejudice the Defendants. Plaintiff has inserted so many supplemental arguments in the RSUMF that it makes it nearly impossible to know what facts Plaintiff admits or denies or to respond to the arguments that should have been in Plaintiff's opposition to the motion for summary judgment. And by failing to file a separate statement of additional facts that Plaintiff contends are material and instead interspersing additional facts within its RSUMF , the Defendants have been deprived of the right given in LRCi 56.1(c) to respond to any additional facts Plaintiff might wish to bring to the Court's attention.

Furthermore, the bulk of the supplement arguments should have been asserted in its opposition memorandum and appear to be nothing more than an end run around the twenty-page limit of LRCi 7.1. Neither the Defendants nor the Court should be required to sift through pages of documents to divine what Plaintiff contends is

material or in dispute, particularly when the majority of Plaintiff's denials fail to comply with the format required by LRCi 56.1(b). Thus, Defendants request that. after striking the RSUMF, the Court deem the facts delineated in their SUMF as undisputed for purposes of summary judgment as provided for in LRCi 56.1(d) and grant summary judgment on the interference with contract claim and the defamation claim.

## CONCLUSION

Plaintiff has no admissible evidence to prove its alleged damages. That failure of proof warrants entry of summary judgment dismissing Plaintiff's claim in its entirety. Additionally, Plaintiff, a business entity, is not protected by the Virgin Islands laws against discrimination, which places "natural persons" or "individuals" within its zone of protection. Therefore, Count II of the Second Amended Complaint should be dismissed. Finally, Defendants' SUMF should be deemed uncontested; Plaintiff's RSUMF should be stricken; and when Counts III (interference with contract) and V (defamation) are reviewed in the light of those uncontested facts, summary judgment dismissing those two counts should also be granted.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Andrew Canning and OPTIS Europe, Ltd.

Dated: May 15, 2024

   /s/ Andrew C. Simpson
Andrew C. Simpson
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com