IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. CROIX

PETRO INDUSTRIAL SOLUTIONS, LLC (PETRO),

    PLAINTIFF,

V.

ISLAND PROJECT AND OPERATING SERVICES, LLC (IPOS), ET AL.,

    DEFENDANTS.

CASE NO. 1:21-CV-00312

**DEFENDANTS' RESPONSE TO PLAINTIFFS' OBJECTIONS AND APPEAL OF MAGISTRATE JUDGE'S REPORT AND RECOMMENDATIONS**

The Magistrate Judge's meticulous recommendations (Doc. No. 314) were carefully thought out, rest on a solid foundation, and are eminently correct. In an effort to undermine the well-reasoned recommendations, Petro Industrial Services, LLC ("Petro") mischaracterizes them and raises new arguments that it failed to raise in either its opposition to the motion to strike or its opposition to the motion for summary judgment. For these reasons, and the other reasons raised in this response, Defendants Andrew Canning and OPTIS Europe, Ltd. ("Defendants") respectfully submit that this Court should adopt, in full, the Magistrate Judge's Report and Recommendations.

I. **A PARTY MAY NOT PRESENT NEW ARGUMENTS IN ITS OBJECTIONS THAT WERE NOT PRESENTED TO THE MAGISTRATE JUDGE.**

Although the review of a magistrate judge's report and recommendations on a dispositive issue is *de novo*,[1] the objection process does not allow the party seeking

---

[1] *De novo* review is limited to specific objections a party raises. Blanket or general objections are treated as a failure to object and are only considered in the

1

review to submit new arguments in the objections. A party is "not entitled to a *de novo* review of an argument never raised." *Borden v. Sec'y of Health & Hum. Servs.*, 836 F.2d 4, 6 (1st Cir. 1987). Parties must present to the magistrate judge, "not only their 'best shot' but all of their shots." *Singh v. Superintending School Committee*, 593 F. Supp. 1315, 1318 (D. Me.1984). The Fifth, Ninth, Tenth and Eleventh Circuits all agree with the First Circuit.[2]

As discussed in the sections that follow, Petro has raised new issues not presented to the Magistrate Judge in its objections relating to the Recommendations regarding the Motion to Strike as well as its objections to the Recommendations regarding the Motion for Summary Judgment. The Court should not consider these new arguments as part of its review of the Report and Recommendations.

---

context of the Court's review of a Report and Recommendation for clear error. *Carty v. Testamark*, Case No. CV 2023-0015, 2024 WL 3835583, at *4 (D.V.I. Aug. 15, 2024).

[2] *See Cupit v. Whitley*, 28 F.3d 532, 535 & n.5 (5th Cir.1994) (legal arguments raised for the first time in objections to a magistrate's report and recommendation may be waived); *Greenhow v. Sec'y of Health & Human Servs.*, 863 F.2d 633, 638 (9th Cir.1988) ("allowing parties to litigate fully their case before the magistrate and, if unsuccessful, to change their strategy and present a different theory to the district court would frustrate the purpose of the Magistrates Act"), overruled on other grounds by *United States v. Hardesty*, 977 F.2d 1347, 1348 (9th Cir.1992); *Marshall v. Chater*, 75 F.3d 1421, 1426 (10th Cir.1996) ("ruling that [i]ssues raised for the first time in objections to the magistrate judge's recommendation are deemed waived"); *Williams v. McNeil*, 557 F.3d 1287, 1292 (11th Cir. 2009) (district court had the discretion to refuse to consider arguments not presented to the magistrate judge). Of the Circuit Courts that have reached the issue, only the Fourth Circuit disagrees. *See United States v. George*, 971 F.2d 1113, 1118 (4th Cir.1992).

The Third Circuit has never decided the issue, but the courts within the circuit follow the majority rule. *See, e.g. Bowen v. Blaine*, 243 F. Supp.2d 296, 320 n.13 (E.D.Pa.2003); *Masimo Corp. v. Philips Elec. N. Am. Corp.*, 62 F. Supp. 3d 368, 377 (D. Del. 2014); *Lithuanian Commerce Corp., Ltd. v. Sara Lee Hosiery*, 177 F.R.D. 205 (1997).

## II. THE MAGISTRATE JUDGE'S RECOMMENDATIONS REGARDING THE MOTION TO STRIKE SHOULD BE ACCEPTED AND PETRO'S OBJECTIONS OVERRULED.

### A. COMPARISON OF ARGUMENTS MADE TO THE MAGISTRATE JUDGE IN OPPOSITION TO THE MOTION TO STRIKE AND ARGUMENTS MADE IN THE OBJECTIONS

#### 1. ARGUMENTS MADE IN THE OPPOSITION TO THE MOTION TO STRIKE.

In its opposition to the motion to strike, Petro made two fundamental arguments: (1) that it did not violate LRCi. 56.1 and (2) "striking is an 'extreme sanction'" (quoting *Mendez v. Puerto Rican Int'l Companies, Inc.*, Case No. 1:05-cv-199, 2013 WL 5295088, at *3 (D.V.I. Sept. 18, 2013) (which concluded that striking untimely responses to four dispositive motions for a "small delay" would be an extreme sanction)). Presumably because Petro was unwilling to concede that the Response to the Statement of Uncontested Material Facts ("SUMF") violated LRCi 56.1, Petro did not argue for any alternative sanction. The only "cure" Petro arguably proposed was to put the Defendants to the burden of filing a surreply. But, Petro did not even suggest that as a remedy and instead chided the Defendants for not moving for leave to file a surreply. Petro did not seek leave to refile a proper Response to the SUMF or leave to file a Counterstatement of Material Facts.[3] Thus, Petro's argument to the Magistrate Judge was that it committed no violation and, in any event, striking was too harsh and the fault lay with Defendants for not seeking leave to file a surreply.

#### 2. ARGUMENTS MADE IN THE OBJECTIONS TO THE MAGISTRATE JUDGE'S ORDER

While Petro's counsel still will not concede the responses to the SUMF were

---

[3] After filing its Objections, Petro moved for leave to file a counterstatement of material facts. *See* Doc. No. 316. Defendants will be filing an opposition to that motion.

3

improper,[4] Petro's Objections make no direct challenge to the Magistrate Judge's conclusion that the responses were improper. Thus, the Magistrate Judge's conclusion that most of the responses failed to comply with LRCi 56.1 is not the subject of the Objection and his conclusions on that issue should be adopted unless this Court finds that they were clearly erroneous. *Carty* at *4.

Petro continues to argue that the sanction of striking is too harsh. *That* argument is properly preserved for this Court's *de novo* review. But Petro also raises a new argument—that the Magistrate Judge's recommendation that various responses be stricken and deemed admitted is tantamount to a Rule 11 sanction "without the required 21-safe [sic] harbor." Objections at 6. Because this Rule 11 argument was not raised to the Magistrate Judge, it is waived and this Court should not consider it as part of its review (whether *de novo* or clear error).

### B. THE MAGISTRATE JUDGE'S RECOMMENDATIONS REGARDING THE MOTION TO STRIKE WERE PROPER AND WARRANTED.

Petro characterizes the striking of the improper portions of its responses and deeming certain facts admitted as an "extreme sanction." Doc. No. 315 at 1. However, the Magistrate Judge's order was not a wholesale striking of the Response to the SUMF—the remedy requested by Defendants; rather, the Magistrate Judge meticulously reviewed every single one of the fifty-three responses and placed them in five categories.

(1) Responses that are properly admitted (Responses to SUMF 9, 10, 13);

---

[4] "[W]hile Plaintiff's counsel disagrees that she violated LRCi 56.1(b), . . ." Objections at 4.

(2) Responses that are admitted but add non-responsive detail and argument that should be stricken (Responses to SUMF 5, 7, 11, 19, 22, 23, 27, 35, 37, 38, 40, 45, 47, 48, 49, 53);

(3) Responses that are properly denied (Responses to SUMF 3 and 32);

(4) Responses that are denied where part of the denial may stand and the rest of the text should be stricken (Responses to SUMF 14, 15, 18, and 41); and

(5) Responses that are denied but where the text should be stricken in full (Responses to SUMF 4, 6, 8, 12, 16, 17, 20, 21, 24, 25, 26, 28, 29, 30, 31, 33, 34, 36, 39, 42, 43, 44, 46, 50, 51, and 52).

As can be seen, the Magistrate Judge did not strike all of Petro's response: 19 statements that Petro admitted remain "admitted," but with improper commentary stricken; six statements that Petro denied remain "denied" (but with improper commentary stricken); and less than half—26 of the 53 Responses—are deemed admitted with the response stricken. It bears repeating that Petro does not challenge a single part of the Magistrate Judge's analysis of any of the 53 responses. Rather, Petro merely objects that the recommended treatment of the deeming admitted 26 of the 53 responses is an extreme sanction—even though it is less than the sanction specifically authorized by LRCi 56.1(d).

The Magistrate Judge meticulously detailed Petro's numerous violations, including adding non-responsive detail and argument, incorporating other responses improperly, and changing the premise of Defendants' statements of fact. These violations were not isolated incidents, but a pattern of obfuscation that hindered the Court's ability to identify disputed facts. The Magistrate Judge correctly noted that Petro's approach was

5

an attempt at an "end-run" around page limits and made a "mockery of the process."Doc. No. 314 at 29.

Petro's Objections rely upon cases involving untimely disclosures or minor procedural errors, rather than cases dealing with the issue at hand. That reliance is misplaced. The Magistrate Judge's order was not based upon a technicality, but upon Petro's substantial and repeated failure to comply with the rules governing summary judgment practice. The Magistrate Judge's detailed analysis of Petro's responses demonstrates the extent of the non-compliance, which far exceeds the "slight deviation" found in the cases cited by Petro. Doc. No. 315 at 2.

Petro argues that a less drastic solution would be to allow it to file a Counterstatement of Material Facts (CSOF). However, it never argued for a lesser sanction in response to the Motion to Strike and the Magistrate Judge correctly noted that Petro's counsel has a history of similar violations and "the Court's repeated exercise of discretion [by allowing Petro's counsel to file corrected documents rather than deeming improper responses admitted] has not deterred Petro's counsel from violating LRCi 56.1(b) once again." Doc. No. 314 at 30.

The Magistrate Judge's recommendation to selectively deem responses to the SUMF admitted and to strike portions of responses that failed to comply with LRCi 56.1(b) was a reasonable exercise of discretion, particularly given the extensive nature of the violations in this case. Furthermore, as the Magistrate Judge recognized, allowing a CSOF at this stage would unfairly prejudice Defendants, who have already incurred significant expense responding to Petro's improper filings:

6

> To permit Petro a "second bite of the apple" to submit a proper response and likely a counter-statement of facts, would be tantamount to having Defendants underwrite Petro's violations by requiring them to respond to an entirely reconstituted opposition with the concomitant time and expense involved, where the entire exercise could have been avoided if Petro had followed the Local Rule to begin with.

Doc. No. 314 at 31.

The Magistrate Judge also considered Petro's argument that the Defendants should have moved to file a sur-reply but noted that this would prejudice the Defendants as they would "shoulder more effort and expense that could and should have been avoided. And as Defendants point out, Petro's Responses are so convoluted that filing a sur-reply would not be feasible." *Id.*

Petro cites Third Circuit case law in other areas, such as exclusion of expert witnesses, striking of untimely filings, and entry of default judgement, for the proposition that the Third Circuit favors resolution of disputes on the merits. Petro also downplays (without disputing) the prejudice Defendants would incur if, as an alternative to deeming the improper responses admitted, the Magistrate Judge instead recommended that Petro be given a "do-over" and be allowed to file a Counter-Statement of Material Facts. But the Magistrate Judge recognized that alternative solutions "such as permitting plaintiff to revise its noncompliant response to a SUMF" have "not worked" in the past and "effectively gave the plaintiff a second bite at the apple, and delayed the proceedings. Doc. No. 314 at 10. Indeed, the Magistrate Judge concluded that such an approach in this case "is particularly ill-advised" because "on numerous occasions" the Court has permitted Petro's counsel to submit compliant responses after being called on the carpet for failing to comply with LRCi 56.1, Doc. No.

7

314 at 29-30 (citing past cases), yet "the Court's repeated exercise of discretion has not deterred Petro's counsel from violating LRCi 56.1(b) once again." *Id.* at 30. The Magistrate Judge also recognized that giving Petro a second bite of the apple "would be tantamount to having Defendants underwrite Petro's violations by requiring them to respond to an entirely reconstituted opposition with the concomitant time and expense involved where the entire exercise could have been avoided if Petro had followed the Local Rule to begin with." *Id.* at 31.

Although the Magistrate Judge's finding of prejudice is not challenged by Petro, it is important to recognize that a showing of prejudice is not required when considering a violation of LRCi 56.1. Notably absent from Petro's Objections is any discussion of the three Third Circuit cases cited by the Magistrate Judge that specifically deal with district court efforts to regulate summary judgment practice through rules similar to LRCi 56.1. In *Romero v. Twp. of Tobyhanna*, Case No. 21-2886, 2023 WL 2728829, at *2 (3d Cir. Mar. 31, 2023), the Third Circuit reviewed—for abuse of discretion—and upheld a district court decision to strike the plaintiff's statement of facts and deem the defendants' statement of facts admitted. Prejudice to Romero was not considered by the court in its review. Likewise, in *Rau v. Allstate Fire & Cas. Ins. Co.*, 793 Fed. App'x 84, 87 (3d Cir. 2019), the Circuit found no abuse of discretion in the district court's deeming improper responses to a SUMF to be admissions to the facts set forth in the SUMF. Once again, prejudice to either party was not a consideration in the Circuit's analysis. Finally, in *Weitzner v. Sanofi Pasteur Inc.*, 909 F.3d 604, 613 (3d Cir. 2018), the Circuit was confronted with the plaintiffs' argument—similar to that made by Petro—that the district court should have employed a lesser sanction. But the Third

8

Circuit rejected this argument, noting that "the District Court's decision to employ any given sanction—out of the many possible sanctions available to it—is fully within the discretion of that Court." *Id.* at 613–14. And, continuing, the Court found that the district court's decision to strike the portions it concluded were noncompliant, rather than choosing to employ a more forgiving sanction, did *not* constitute an abuse of discretion. Once again, no consideration was given to the prejudice to either party as part of the analysis.[5]

Petro also fails to identify the binding Third Circuit authority, cited by Defendants in their Reply to the Opposition to the Motion to Strike, that defeats its argument. That authority, which arose out of this jurisdiction, affirmatively states that a showing of prejudice to the movant was not required when enforcing this Court's predecessor to LRCi 56.1 because, "the objective of the rule would be defeated if the district court had to stop and investigate such matters before acting." *Anchorage Assocs. v. Virgin Islands Bd. of Tax Rev.*, 922 F.2d 168, 174 (3d Cir. 1990).

In summary, the Third Circuit has never required a showing of prejudice to the party moving for summary judgment before a district court may enforce its version of LRCi 56.1 by deeming improper responses admitted and striking improper commentary.

---

[5] The only mention of prejudice in *Weitzner* was when the Court observed that even if the district court had improperly applied the local rule, such error would have been harmless because the plaintiffs failed to identify any "prejudicial error." *Id.* at 614 n.12.

### C. THE MAGISTRATE JUDGE'S RECOMMENDATION FOR DEALING WITH THE IMPROPER RESPONSE TO THE SUMF WAS NOT A DISGUISED RULE 11 SANCTION.

Petro contends that the Magistrate Judge's order bears the hallmarks of a Rule 11 sanction without the required safe harbor. This argument is without merit. The Magistrate Judge's order was a direct application of LRCi 56.1(d), which explicitly allows the Court to deem facts admitted for failure to respond properly.

Rule 11 is employed when an attorney has signed a pleading that

(1)   is presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;

(2)   includes claims, defenses, and other legal contentions that are unwarranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;

(3)   includes factual contentions that lack evidentiary support; or

(4)   includes denials of factual contentions that are unwarranted on the evidence.

Fed. R. Civ. P. 11(b).

Any reasoned review of the Magistrate Judge's Report and Recommendations can only conclude that Rule 11 was not a consideration and that the Magistrate Judge was relying upon LRCi 56.1(d) (as specifically cited in the Report and Recommendations) and not upon Rule 11. Further, to the extent that Petro is arguing that Defendants had a duty to give it a "safe harbor" before filing the motion to strike (under the theory that it was a Rule 11 motion in disguise), Petro failed to make any such argument in its opposition to the motion to strike and thus the argument is waived.

### III. THE MAGISTRATE JUDGE'S RECOMMENDATION FOR DISMISSAL OF THE DISCRIMINATION CLAIM IS CORRECT AND SHOULD BE ACCEPTED.

#### A. THE MAGISTRATE JUDGE CORRECTLY DETERMINED THAT DEFENDANTS' ASSERTION OF THE AFFIRMATIVE DEFENSE OF FAILURE TO STATE A CLAIM PRESERVED THEIR CLAIM THAT THE DISCRIMINATION LAWS OF THE VIRGIN ISLANDS DO NOT AFFORD A REMEDY TO PETRO.

Petro argues, incorrectly, that Defendants waived the argument that Petro cannot obtain relief under the Virgin Islands Civil Rights Act ("VICRA"). Petro's theory is apparently partly based upon an argument that Defendants should have specifically referenced "lack of standing" rather than "failure to state a claim upon which relief may be granted" in their affirmative defenses.

Petro is wrong. The Third Circuit has expressly stated that a dismissal for lack of statutory standing is effectively the same as dismissal for failure to state a claim. *Leyse v. Bank of Am. Nat'l Ass'n*, 804 F.3d 316, 320 (3d Cir. 2015). Affirmative Defense "A" in each amended answer raises failure to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(h) specifies that the defense of failure to state a claim upon which relief may be granted may be raised "in any pleading allowed" under Rule 7(a) [such as in an answer]. Thus, Defendants properly preserved the defense.

#### B. A FAILURE TO STATE A CLAIM DEFENSE MAY BE ADJUDICATED ON A MOTION FOR SUMMARY JUDGMENT.

The next question implicated by Petro's argument is that the defense may *only* be asserted via one of the three ways listed in Rule 12(h): a pleading allowed under Rule 7(a); a motion under Rule 12(c); or at trial. In other words, Petro argues that the list is exclusive and there is no other way that it can be raised (such as by summary judgment). The courts that have considered this issue reject Petro's argument. *See, e.g.,*

11

*Martin v. Southwestern Va. Gas Co.*, 135 F.3d 307, 309 n. 1 (4th Cir.1998) ("[I]f defense of failure to state a claim is raised in defendant's Answer, the defense is not subject to waiver and may be asserted in any subsequent motion for summary judgment.") Moreover, "because the defense of failure to state a claim can be raised as an issue at a trial on the merits, the question of whether there is a genuine issue for trial with regard to that defense, is appropriately considered on a motion for summary judgment." *Kornblum v. St. Louis County, Mo.*, 48 F.3d 1031, 1038 (8th Cir.1995) (opinion vacated on other grounds).

Petro can quibble over semantics as to whether the portion of Defendants' motion relating to the discrimination count could have been characterized as a motion for judgment on the pleadings rather than a motion for summary judgment. But, the only functional difference between the two types of motions is the scope of evidence a court may consider in deciding the motion. Thus, "[a] motion for summary judgment may be made solely on the pleadings, [and] when it is so made it is functionally the same as a motion to dismiss or a motion for judgment on the pleadings." *Schwartz v. Compagnie Gen. Transatlantique*, 405 F.2d 270, 273 (2d Cir. 1968). A motion for judgment on the pleadings is limited to the pleadings, *A.D. Bedell Wholesale Co., Inc. v. Philip Morris, Inc.*, 263 F.3d 239, 266 (3d Cir.2001) whereas a motion for summary judgment may rely upon matters outside of the pleadings. Fed. R. Civ. P. 12(d). Regardless, both motions may only be granted if "the movant clearly establishes there are no material facts, and he is entitled to judgment as a matter of law." *Sikirica v. Nationwide Ins. Co.*, 416 F.3d 214, 220 (3d Cir. 2005) (judgment on the pleadings); *Compare* Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there

is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.") The Third Circuit is "not concerned with labels" when the standard of review is the same. *Rose v. Bartle*, 871 F.2d 331, 340 (3d Cir. 1989).

### C. THE MAGISTRATE JUDGE'S ANALYSIS OF POSSIBLE REASONS TO *DENY* SUMMARY JUDGMENT ON THE DISCRIMINATION CLAIM DID NOT RESULT IN THE *GRANT* OF SUMMARY JUDGMENT *SUA SPONTE* AGAINST PETRO.

Petro also claims that "Defendants never argued that Petro failed to assert OPTIS or Canning were his employers as a defense to this claim." Objections at 10. It argues that the "Magistrate Judge erroneously raised this issue *sua sponte* as a reason why 10 V.I.C. § 64 and 24 V.I.C. § 451 would not apply here, with no opportunity for the plaintiff to respond or supply evidence." Doc. No. 315 at 10. But Defendants specifically stated in their Memorandum in Support of Motion for Summary Judgment that "Title 24, Chapter 17 of the Virgin Islands Code is inapplicable because it deals with discrimination in employment and Petro was not an employee of OPTIS/Canning." Doc. No. 298, at 6 n.4. Petro agreed: It explained in opposition to the motion for summary judgment that its claim was filed "under the Virgin Islands Civil Rights Act (VICRA)." Doc. No. 304 at 4. VICRA is found in Title 10 of the Virgin Islands Code, not Title 24.

With respect to 10 V.I.C. § 64, Defendants discussed the non-applicability of Title 10, Chapter 5 of the Virgin Islands Code (which includes 10 V.I.C. § 64) and explained that 10 V.I.C. § 61 of that chapter was limited in its application to individuals. Doc. No. 298 at 6–7. Defendants also pointed out that the application of 10 V.I.C. § 64(1)(a) was likewise limited to an "individual." *Id.* at 7. Thus, the issue was properly raised and Petro had every opportunity to argue in opposition to the motion for summary judgment that it was an employee of either Canning or OPTIS—but it did not do so.

13

With respect to Petro's criticism of the Recommendations on this issue, it is evident that the Magistrate Judge was simply being thorough in his approach to the discrimination claim when he discussed provisions of the Virgin Islands Code that deal with discrimination in employment even though Petro made no claim of discrimination in employment. As the Magistrate Judge noted (Doc. No. 314 at 34), Petro's discrimination claim was entitled "Violation of the Discrimination Statutes of the Virgin Islands" without specifying a particular statute.[6] Thus he reviewed Petro's complaint and observed, "Petro *has not claimed*, nor could it, that Canning and OPTIS were its 'employers,' and thus the provisions regarding discrimination in employment, 10 V.I.C. § 64 and 24 V.I.C. § 451, do not apply." *Id.* at 35 (emphasis added). In other words, nothing in the Second Amended Complaint plausibly alleged that Petro was an employee of either Canning or OPTIS and thus it did not "claim" to be an employee of Canning or OPTIS. Moreover, in the context of the discussion about Petro's status as an LLC, the comment that Petro "could not" claim to be an employee is eminently reasonable[7]—but whether or not it *could* make such a claim, the fact is it *did not* make such a claim. The Magistrate Judge should not be criticized or faulted for giving the benefit of the doubt to Petro and at least considering the possibility that Petro was claiming employee status before noting that Petro made no such claim.

---

[6] In Petro's opposition to the motion for summary judgment, it affirmatively stated that its claim was under VICRA. Doc. No. 304 at 4.

[7] For example, a corporate entity cannot pay into Social Security; collect unemployment, participate in a pension or retirement plan; or be injured on the job and collect worker's compensation.

### D. THE COURT SHOULD NOT CONSIDER PETRO'S NEW ARGUMENT BASED UPON AN UNPLED THEORY THAT WAS NEVER PRESENTED TO THE MAGISTRATE JUDGE.

In opposition to Defendants' motion for summary judgment, Petro insisted that as a corporate entity, it was a "an 'individual' and a 'person' [who] can sue Defendants for discrimination under VICRA. Doc. No. 304 at 5. Petro did not argue that it was an alter ego of its alleged sole member, Adrian Melendez, Jr. The Second Amended Complaint includes no allegations alleging that Petro was the alter ego of Melendez. Indeed, Melendez's name does not even appear in the Second Amended Complaint. Putting further end to the idea that Petro was pursuing an alter ego theory of discrimination, the Second Amended Complaint includes the following allegations regarding the racial motivation behind the Defendants alleged discrimination:

> 28. Petro is a company made up of all local West Indian or local Hispanic employees, as are its management team and owners.[8]
>
> 35. Andrew Canning, through OPTIS, had a racist attitude toward Petro *because its workers* are of color, and predominantly West Indian, . . .

There is nothing in the Second Amended Complaint that suggests that Defendants discriminated against Petro because of the race or national origin of Melendez.[9]

---

[8] "Owners" is stated in the plural form in the Second Amended Complaint. In the Objections, Petro asserts that is is a single member LLC with the sole member being Adrian Melendez, Jr.

[9] In the 30(b)(6) deposition of Petro, Melendez testified that his racial identity is "Mexican American Hispanic." Doc. 305-1 at ECF p. 6 (deposition page 23, line 4). In the Objections, Petro implies that the company is a "local black-owned" business. Doc. No. 315 at 11.

15

Consistent with the Second Amended Complaint, Petro did not assert this alter ego theory in its opposition to the motion for summary judgment. Instead, it argued that a corporate entity itself is an individual or person (rather than the alter ego of an owner of the entity). It was only after the Magistrate Judge recommended summary judgment on the discrimination theory that Petro actually pled and advanced in opposing summary judgment that Petro decided to switch to a new theory.

This Court should not consider this new argument that was never presented to the Magistrate Judge and never pled. To do so would substantially undermine the process of referring dispositive motions to the Magistrate Judge for a Recommendation[10] because otherwise the mere act of referring the motion to the Magistrate Judge would create a two-bite-at-the-apple opportunity for parties opposing summary judgment —one at the initial Opposition Stage of summary judgment briefing and then, if not happy with the Magistrate Judge's recommendations, a second bite at the Objection Stage under a new theory.

Even if this Court were to consider Petro's new argument, it should reject the argument. As noted, it was not pled and is not a part of the case. Further, Plaintiff puts great emphasis on the Virgin Islands Supreme Court's decision in *Mosler v. Gerace*, 2024 V.I. 1, but *Mosler* was not a case involving the discrimination statutes of the Virgin Islands and instead raised a common law question as to whether the investors in a closely-held corporation could recover damages that were imprecisely identified

---

[10] It would also undermine the requirement that a complaint plausibly plead allegations sufficient to put the defendant on notice of the claims brought against it. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

16

as being either the corporation's or the investors' expenses. In *Mosler*, the evidence established that the individual shareholders in the S Corporation that owned a restaurant were "actively engaged in the company's day-to-day operations" and "constantly trying to fix" the restaurant, 2024 V.I. 1, ¶17 n.8; and that the individuals personally "spent over $40,000 in repairs, over $20,000 in equipment and $50,000 in promotions and advertising" for the restaurant, *id.* ¶17. The *Mosler* defendants argued that the corporation, not the individuals who had sued, has suffered the loss and the investors could not recover the money they put into the repair and operation of the restaurant. The Virgin Islands Supreme Court seemed doubtful of the defendants' theory and only after prefacing it conclusion with "[a]ssuming we agree," [with the defendants' argument], did it conclude that the investors' personal involvement was such that they were essentially the alter ego of the restaurant.

Here, there is no evidence of Melendez's involvement in the day-to-day operations of Petro. There is no evidence that he put personal funds into the day-to-day operation of the business. In short, there is no evidence that he treated Petro as an alter ego of himself. Perhaps most important, the issue here does not turn upon who is the proper party to recover damages invested by a shareholder but instead is whether a corporation falls within the plain language of VICRA. Because (and as the Magistrate Judge found) Petro does not fall within the scope of individuals protected by VICRA, it cannot prove a claim under VICRA.

**CONCLUSION**

For the foregoing reasons, Defendants respectfully submit that the Court should reject Petro's objections and adopt the Magistrate Judge's Report and Recommendations in their entirety.

Respectfully submitted,

**ANDREW C. SIMPSON, P.C.,**
Counsel for Andrew Canning and OPTIS Europe, Ltd.

Dated: October 17, 2024

  /s/ Andrew C. Simpson
Andrew C. Simpson
VI Bar No. 451
ANDREW C. SIMPSON, P.C.
2191 Church Street, Suite 5
Christiansted, VI 00820
Tel: 340.719.3900
asimpson@coralbrief.com